IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVISON DESIGN &            )
DEVELOPMENT, INC.,          )
                            )
            Plaintiff,      )
                            )  No.
        v.                  )
                            )
MARIO SCORZA,               )
                            )
            Defendant.      )

**Exhibit 1**

**July 6, 2021 Plaintiff's Original Petition**

| | | | |
|---|---|---|---|
| **MARIO SCORZA,** | § | | |
| *Plaintiff*, | § | | |
| | § | | **American Arbitration Association** |
| **v.** | § | | **Case No. _____** |
| | § | | |
| **DAVISON DESIGN &** | § | | |
| **DEVELOPMENT, INC.,** | § | | |
| *Defendant*. | § | | |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW, Mario Scorza ("Plaintiff"), Plaintiff in the above-styled cause of action, and complains of Davison Design & Development, Inc. ("Defendant").  For good cause, and in support of same, Plaintiff would respectfully show this Court as follows:

## I
## PARTIES

1.      Plaintiff Mario Scorza is an individual residing in McLennan County, Texas.

2.      Defendant Davison Design & Development, Inc. (hereafter "Davison" or "DDD") is a Pennsylvania for-profit corporation doing business in McLennan County, Texas, as well as nationwide, and may be served with process through its President and registered agent, Frank Vescio, at its registered business address of 595 Alpha Drive, Pittsburgh, Pennsylvania 15238.

## II
## JURISDICTION AND VENUE

3.      Venue is proper in Allegheny County, Pennsylvania pursuant to the governing arbitration provision contained within the contractual agreement between the Parties on which this case is based.

4.      The applicable arbitration clause states the following:

"6. CHOICE OF LAW; ARBITRATION; CURE

A. This Agreement shall be governed by the Commonwealth of Pennsylvania and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. For any dispute, the parties agree to seek to resolve the dispute through good faith negotiation. For any disputes not resolved through good faith negotiation, the parties agree that all disputes shall ne resolved through arbitration before the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania using the Commercial Arbitration Rules in effect on the date that the claim is submitted to the AAA. Client agrees that any claim must be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

B. No Claim for breach of the Agreement shall be permitted unless Client has given Davison reasonably specific written notice of the alleged breach and has permitted Davison a reasonable opportunity to cure the alleged breach, which shall be no less than thirty days after Client gives his or her assent to the proposed cure."

5.      Jurisdiction is proper as the American Arbitration Association has complete authority and jurisdiction over this case pursuant to the governing arbitration provision contained within the contractual agreement between the Parties on which this case is based.

## III
## FACTUAL BACKGROUND

6.      On or about March 23, 2017, Plaintiff contracted with Defendant through a "New Product Sample Contract" (the "Agreement") for the further development, advertising and marketing of a unique invention designed by Plaintiff.  Pursuant to the Agreement, Plaintiff paid Defendant a total monetary fee of Twenty-Five Thousand Forty-Two and 00/100 dollars ($25,042.00), for which Defendant was to provide (1) "Creative Presentation Materials," consisting of development, troubleshooting, manufacturing, packaging, rendering, and marketing services; (2) "Creati[on of] The Product Sample," consisting of producing computer renderings, production drawings, and professional finishing imaging; (3) "Creati[on of] The Packaging Sample, consisting of supplying renderings and imaging related to product packaging; and (4) "Product Sample Finalization," consisting of creating a usable final sample of both Plaintiff's product and its developed packaging;

as well as (5) provide information related to provisional patent applications, marketing quotes and materials to be used in advertising, and a comprehensive summary of all services suggested, performed, and/or developed with regard to Plaintiff's unique invention.

7.      Despite Plaintiff's dutiful payment, delivered upon Defendant's request, the single service provided by Defendant (of the dozens that should have been provided, as contemplated and described above) was a single computer-generated image of the possible final form and appearance of Plaintiff's invention. To date, no "Presentation Materials", no "Product Sample" or prototype, no usable sample, no "Packaging Sample" and no information or assistance related to marketing, advertising or patenting has ever been received by Plaintiff.

8.      Although Plaintiff repeatedly attempted to contact Defendant in order to receive the services and materials Defendant promised to provide, Defendant never produced any further services nor provided any further materials regarding the continued development of Plaintiff's unique invention.  Moreover, Plaintiff was never contacted by a single company or even one individual assisting in the development, advertising, marketing or selling of Plaintiff's invention, contrary to the "hundreds or more" purportedly contracting companies working with and for DDD. Because Defendant kept Plaintiff waiting for years beyond when Defendant should have completed the preparations and assisting services that would have enabled Plaintiff to commercialize Plaintiff's invention, a separate inventor developed a similar product that intercepted and absorbed the marketspace that would have been rightfully filled by Plaintiff had Defendant performed the services that Defendant was contractually obligated to provide. In addition, this extended delay resulted in the loss of *all* rights to any patentable inventions that would not have occurred but for Plaintiff's reliance on Defendant's enticements, promises and directed incentives.

9.     Defendant purposefully induced Plaintiff to contract with Defendant for the purported services and materials contemplated and described herein in order to receive the contractual payments made to Defendant by Plaintiff.   Defendant falsely represented to Plaintiff that Defendant could quickly and competently perform development services that would enable Plaintiff to commercialize Plaintiff's invention, and that Defendant could further help to market, advertise, and even provide potential investors and promoters necessary to tender the costs of any further required development.   Plaintiff had no educational background or training in marketing, advertising, product development or intellectual property protection, so Plaintiff believed and relied on the promises made by Defendant that Defendant would and could help bring Plaintiff's invention to market and provide the contractual services paid for by Plaintiff.

10.    It is Plaintiff's reasonable contention that Defendant fleeced Plaintiff in order to receive Plaintiffs' payments, but then stalled the development of Plaintiff's product or the provision of any of the services Defendant promised to perform on Plaintiff behalf in the hope that Plaintiff would become exasperated and eventually cease any further enforcement of the Agreement.   Moreover, Defendant, knowing Plaintiff's age of 85, hoped to leverage Plaintiff's age against him, advantaging Defendant by drawing out any resolution on this matter past the life of Plaintiff. Ultimately, despite having delivered required legal demand to Defendant prior to the instant filing, as included in the Davison 'New Product Sample Agreement" (pertinent passages recounted in Section II above stating  whereas "Client has given Davison reasonably specific written notice of the alleged breach and has permitted Davison a reasonable opportunity to cure the alleged breach"), Defendant has refused to respond to same or otherwise contact Plaintiff.   Therefore, Plaintiff was forced to bring the instant action to protect the legal rights afforded to Plaintiff both at law and in equity.

**IV**
**CAUSES OF ACTION**

**A.  Breach of Contract**

11.     Plaintiff re-alleges the allegations contained in Paragraphs 1 through 9 of this Petition by reference as if set forth verbatim herein and requests relief for Plaintiff's breach of contract cause of action.

12.     The contract for the provision of Defendant's development services executed between Plaintiff and Defendant represents a valid, enforceable contract.   Plaintiff contracted with Defendant in order to receive the further development services necessary for Plaintiff to commercialize Plaintiff's unique invention in exchange for a certain sum of money.   Pursuant to the Agreement, Plaintiff tendered payment for Defendant's purported services.   However, Defendant wholly failed to provide the services for which Plaintiff contracted and tendered payment such that Plaintiff was unable to <u>ever</u> commercialize Plaintiff's unique invention, resulting in immense damages in lost opportunities, expired rights and profits.

13.     Plaintiff has requested payment of the amount representing Plaintiff's previous contractual payments from Defendants, which is, among other significant damages, currently owed to Plaintiff by same.   To date, Defendant has failed to pay same, or any other of Plaintiff's damages, to Plaintiff.   Defendant's actions constitute breach of contract and entitle Plaintiff to receive its requested relief.

**B.  Common-Law Fraud**

14.     Plaintiff re-alleges the allegations contained in the preceding Paragraphs of this Petition by reference as if set forth verbatim herein and requests relief from for Plaintiff's common-law fraud cause of action.

15.     Defendant made material, false representations to Plaintiff that Defendant would and could not only assist Plaintiff with the entire process of developing and finalizing Plaintiff's unique invention for commercialization, but the Defendant had the requisite training, knowledge, and acumen to do so.  At the time Defendant made the false representations to Plaintiff, Defendant either knew the representations were false or recklessly made the positive assertions without knowledge of their truth.  Defendant made the false representations to Plaintiff with the intent that Plaintiff enter into and execute the contract for Defendant's purported services and Plaintiff's lucrative payments to Defendant.  Plaintiff entered into and executed same in reliance on Defendant's false representations and was caused injury thereby.

16.     Plaintiff justifiably relied on Defendant's false representations, and through this reliance allowed Defendant several opportunities to perform Defendant's obligations pursuant to the Agreement.  Plaintiff would not have allowed Defendant the time consumed by these several opportunities had Plaintiff known Defendant's representations were false and that Defendant had no intention of developing and promoting Plaintiff's invention.  Plaintiff was further injured by allowing Defendant time to perform its obligations pursuant to the Agreement, time that Defendant lay idle, all while Plaintiff's market and intellectual property rights withered and expired.  Defendant's actions constitute common-law fraud and entitle Plaintiff to receive Plaintiff's requested relief.

**C.  Pennsylvania Unfair Trade Practices and Consumer Protection Law**

17.     Plaintiff re-alleges the allegations contained in the preceding Paragraphs of this Petition by reference as if set forth verbatim herein and requests relief for Plaintiff's claims for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

18.     Plaintiffs are consumers for the purposes of the UTPCPL because Plaintiff is an individual who sought and acquired goods or services by lease (and the Agreement is governed by Pennsylvania law).  Defendant is a company that has committed unlawful acts pursuant to the UTPCPL and may be sued pursuant to the UTPCPL.  Defendant violated the UTPCPL when Defendant committed the following unlawful actions.

    a.  Defendant engaged in "unfair or deceptive acts or practices" that Plaintiff relied on to Plaintiff's detriment.  Specifically, Defendant:

        i.  Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

        ii.  Represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

        iii.  Represented that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

        iv.  Did not promote goods or services with the intent of enlisting potential or prospective sellers and marketers (i.e., multiple listing corporations (MLCs)) as advertised;

        v.  Failed to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and

        vi.  Engaged in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

19.     Plaintiff gave Defendant notice of Defendant's violation of the Texas Deceptive Trade Practices Act, although such notice serves the same purpose of placing Defendant on notice of having violated the similar tenets of the UTPCPL.  Despite such notice, Defendant has not attempted to contact Plaintiff or resolve the current dispute in any regard.

20.     Defendant's wrongful conduct is the producing cause of Plaintiff's injury, which resulted in damages incurred for the payments made by Plaintiff to Defendant in reliance on Defendant's promises, as well as the lost opportunities, rights and profits that Plaintiff would have realized had Defendant even attempted to perform the services Defendant contractually promised to provide. As such, Plaintiff further seeks recovery of unliquidated damages that are within the jurisdictional limits of this arbitration.

**D.  Fraud by Non-Disclosure**

21.     Plaintiff re-alleges the allegations contained in the preceding Paragraphs of this Petition by reference as if set forth verbatim herein and requests relief for Plaintiff's fraud by nondisclosure cause of action.

22.     Defendant concealed or failed to disclose certain facts from Plaintiff, namely, that Defendant neither intended, nor had the requisite acumen, to provide the services for which Plaintiff contracted and tendered payment to Defendant.  Defendant, as merchants of the purported services advertised and represented by Defendant to Plaintiff, had a duty to disclose these facts to Plaintiff.  The facts were material as Plaintiff specifically inquired into these facts and contracted with Defendant for the specific performance of the services required to further develop and market Plaintiff's unique invention.  Defendant knew that Plaintiff was ignorant of the facts that Defendant neither could, nor would, provide the contractually obligated services contemplated and described within the Agreement.  Defendant was deliberately silent when Defendant had a duty to speak and

inform Plaintiff of Defendant's ability and intention to perform the services contracted for by Plaintiff.  By failing to disclose these facts, Defendant intended to induce Plaintiff to enter into and execute the Agreement and tender payment to Defendant.  Plaintiff only executed same due to Plaintiff's reliance on Defendant's non-disclosure, and Plaintiff was greatly injured as a result of acting without knowledge of the facts undisclosed by Defendant.

**E.  Negligent Misrepresentation**

23.    Plaintiff re-alleges the allegations contained in the preceding Paragraphs of this Petition by reference as if set forth verbatim herein and request relief for Plaintiff's negligent misrepresentation cause of action.

24.    Defendant made representations to Plaintiff in the course of Defendants' business, namely, purported development and advertising and/or marketing services, and in a transaction in which Defendant had a pecuniary interest.  Defendant supplied false information for Plaintiff's guidance in the form of false representations that Defendant would perform the services promised by Defendant in order to bring Plaintiff's unique invention to market.  Defendant failed to exercise reasonable care or competence in obtaining or communicating this information to Plaintiff. Plaintiff justifiably relied on Defendant's representations, and Defendant's negligent misrepresentations proximately caused Plaintiff's injury and continues to add injury to Plaintiff.

25.    Plaintiff brings this cause of action alternatively to Plaintiff's fraud-based causes of action, discussed previously herein.  Defendant's actions constitute negligent misrepresentation and entitle Plaintiff to receive the relief requested herein.

**V**
**ATTORNEY'S FEES**

26.    Defendant's wrongful actions have forced Plaintiff to retain the undersigned counsel to file this suit and represent Plaintiff with regard to same.  Plaintiff has presented its claims to Defendant

in writing and demanded payment from Defendant for same.  More than thirty (30) days have elapsed since Plaintiffs sent their written demand for payment.  Plaintiff should be entitled to recover reasonable attorney's fees for prosecuting this action.

**VI**
**DAMAGES**

27.     Plaintiff seeks the return of all funds previously paid to Defendant by Plaintiff due to Defendant's unlawful refusal to perform the service contracted for by Plaintiff.  Additionally, and alternatively to Plaintiff's claims for damages in association with Plaintiffs' UTPCPL causes of action, Plaintiff asserts that Defendant's unlawful actions are aggravated by that kind of willfulness, wantonness, and malice for which the law allows the imposition of exemplary damages.  The conduct of Defendant was intentional, willful, and wanton, was without justification or excuse, and is offensive to any sense of public justice.  Defendant acted with gross indifference to the rights and interest of Plaintiff.  Therefore, Plaintiff seeks punitive or exemplary damages from Defendant.  An award of exemplary damages will not only deter Defendant from again taking such wrongful actions but would also serve to warn and deter others who might consider such actions in the future.

**VII**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Mario Scorza respectfully requests that Defendant Davison Design & Development, Inc. be cited to appear and answer, and, upon final hearing, Plaintiff recover from Defendant the several damages discussed within this Petition.

Respectfully submitted,

KEARNEY, MCWILLIAMS & DAVIS, PLLC

*/s/Bradley A. Nevills*
Bradley A. Nevills
TXSBN: 24083561
bnevills@kmd.law
William "Trey" Yarbrough
TXSBN: 24051550
wyarbrough@kmd.law
55 Waugh Drive, Suite 150
Houston, Texas 77007
Tel: (713) 936-9620, ext. 116
Fax: (281) 206-0481
***Attorneys for Plaintiff***

COPY



March 23, 2017

**DAVISON**™

**NEW PRODUCT SAMPL**

This agreement ("Agreement") made and entered into th⁺                                        ⁻oment,
Inc. ("Davison"), a Pennsylvania Corporation, its succⁿ                                         ⁺ 595
Alpha Drive, Pittsburgh, Pennsylvania, and the Clien⁺



Name(s)                    Mario Scorza
Address                    612 Highlanⁿ
City, State, Zip           West, TX 7

Whereas, the Client has originated, dev
and

Whereas, the Client desires to retaⁿ
conditions hereinafter set forth.

NOW, THEREFORE, in conⁿ
herein, the Client and Davⁱⁿ

## 1. SERVICES PROVIDEⅮ

During the term of the Agreement, ⅾ                                              ome or all of
the following:

## A. Creating Presentation Materials:

i) Development Team Orientation: The Developmenⱼ                              ₊ed features and
functions of the Idea, if any, and the targeted corporatioⱼ                    .keting capabilities.

ii) Problem Identification: The Development Team will clearly ⅼ          ₊blem solved by the Idea,
thus insuring that the Idea's objective is clearly understood.

iii) The Development Team will review the Idea, the problem to be solveᴅ, and the targeted corporation's
manufacturing and marketing capabilities to begin the blending and integrating process. The Development
Team may conduct additional research concerning the Idea and the targeted corporation.

iv) Preliminary Product Design: Development Team "brainstorming" sessions will be held to uncover
product design solutions that blend with the targeted corporation's manufacturing capabilities. The
ergonomics and aesthetics of the product are also taken into consideration. This subjective process often
results in the Development Team making modifications and enhancements, which are sometimes

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



**DAVISON™**

substantial, to the proposed solution or the preliminary design submitted by Client, particularly if Client's proposed design is not a cost effective solution to solving the problem outlined by the client, does not reflect current manufacturing techniques or may be in conflict with products patented or on the market.

v) Preliminary Package Design: Package Development Team "brainstorming" sessions will be held to uncover package design solutions that resemble the targeted corporation's product line. The package's communication will also be considered to achieve quick product identification.

vi) Integrated Product Rendering: The product design and package design will be brought-to-life to look real in a virtual three dimensional environment. A full color spectrum print that resembles what the product sample will look like will be sent to the Client for approval, which shall not be unreasonably withheld by Client, before creating the physical product sample. Unless requested by a potential licensee, no changes will be made to the product and package designs after Client has approved them.

## B. Creating The Product Sample

i) Product Sample Orientation: The analysis of the project will be applied to create a cost efficient and effective production process. Our exclusive development process will ensure that the product attempts to reflect, as closely as reasonably possible, the targeted corporation's manufacturing methods.

ii) Production Drawings and/or CAD (Computer Aided Drawings) Illustrations: The product's manufacturing specifications will be entered into a computer program, if appropriate for this project. This will be used to generate production drawings for component quoting and/or for the targeted corporation's review. The drawings will be printed for review, analysis and use.

iii) Creation of STL,DXF or G-Code Files (Computer Software Developed): This is a sophisticated computer process that transfers production drawings and/or CAD drawings into a computer code to transfer the data to the code used by the shop's machinery to produce all or parts of the final product sample.

iv) Circuit Design Assembly: If applicable to your particular project, Davison will utilize a proprietary software circuit board design application for schematic capture, circuit simulation, PCB layout and autorouting. High quality software design tools can create more efficient use of limited board space and reduce overall production costs in the final design.

v) Machine Product Sample: This stage of development involves the process of building the product sample. It includes the machine set up, preparation of the raw materials and then machining or fabricating the necessary parts. Pre-manufactured components, known as Original Equipment Manufacturer ("OEM") components, may be purchased and used for a portion or all of the parts utilized in the sample. Davison is not required to produce production drawings, CAD drawings or G-code files for OEM parts.

vi) Parts Preparation/Finishing: The product sample will have a professional appearance with the

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



appropriate finishes applied. The finishing shop will address this issue and apply the finishes to the product sample.

vii) Product Sample Assembly: The finished or OEM parts will be assembled to create a complete product sample. The sample is for demonstration purposes and may differ in appearance, size, materials, performance and other characteristics from the type of final licensed product built by a manufacturer in full production.

viii) Photography: For documentation purposes, photographs of the product sample will be taken and securely filed.

## C. Creating The Packaging Sample

As appropriate, the following tasks will be performed for your project. Please note that some tasks may not be necessary.

i) Packaging Team Orientation: This is a team meeting to determine the appropriate packaging style to merchandise the product. There will be an analysis of all known styles and one will be designed that best fits the product.

ii) Package Design & Engineering: The product size, weight and level of fragility will be analyzed. The proper gauge and internal structural components will be designed to best protect the product from damage. The package will also be designed in order to aid a potential manufacturer to palletize the product properly as well as to aid in merchandising the product.

iii) Packaging Production Drawings and\or CAD (Computer Aided Drawings) Illustrations: The package's manufacturing specifications will be entered into a packaging computer program, as appropriate. This will be used to generate packaging production drawings.

iv) Creation of a G-Code files (Computer Software): This is a sophisticated computer process that transfers production drawings into computer code that is programmed into machinery to produce the final packaging sample.

v) Machine Packaging Sample: This stage of development involves the process of cutting, perforating and creasing the packaging material. It includes the machine set up, preparation of the packaging material and then machining and fabricating the necessary parts.

vi) Packaging Preparation Finishing: The machine packaging sample will have a professional appearance with the appropriate images applied. The packaging shop will address this issue and apply the images to the packaging.

vii) Packaging Sample Assembly: The finished package will be assembled to create a complete packaging

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



sample. The packaging sample is for demonstration purposes and may differ from the type of final packaging built by a corporation in full production.

viii) Photography: For documentation purposes, photographs of the packaging sample will be taken and securely filed.

## D.  Product Sample Finalization

i) Product Sample Finalization: The product and package will be placed together to create the final product sample.

ii) Product Sample Integrity Review: The product sample and package are reviewed by a quality assurance team to verify that the final product sample accurately represents the design approved by Client. The product design approved by Client and depicted in the Integrated Product Rendering may differ from the product sample constructed. The sample may have different characteristics intended for ease of demonstration, shipment, display, alteration, disassembly or component viewing by a potential licensee.

iii) Prepare Shipping Container: A shipping container will be obtained or built to protect the Product Sample during shipment.

## E. Production Quotes

Production Quotes: If and/or when the targeted corporation decides to acquire the Idea, Davison will work with the corporation to establish production quotes, if requested by the corporation.

## F. Information for Provisional Patent Application

Davison will develop and provide descriptive information that the Client may find useful in filing a Provisional Patent Application in the United States. This information is provided after the Client approves the virtual reality print of the product sample design and the product sample is constructed. The Client is solely responsible for the sufficiency, completion and submission of any final application, United States Patent & Trademark Office form PTO/SB/16, and any other patent or trademark applications that may be necessary.

## G. Executive Summary

Executive Summary: The Client will be provided with a packet of information that will include a summary of the problem solved by the idea, the product sample's key functional features and the computerized drawings of the components manufactured by Davison. A full color photograph of the sample and its

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



**DAVISON**™

packaging is included in the Executive Summary.


### H. Use of Client-Provided Material

Davison may use all or part of any materials submitted to Davison by Client, including a prototype or parts contained in a prototype, as the basis for the design of a product sample or as actual components to the final product sample. Client consents to the disassembly, copying, use, modification, destruction or alteration of any materials submitted by Client to Davison and understands that Davison has no obligation to return such materials or to maintain them in the condition they were in when originally sent to Davison by Client.


## 2. TERM OF THE AGREEMENT

The term of this Agreement shall commence on the date that Davison receives the retainer provided in Section 3A and a complete properly signed Agreement and all other documents requested by Davison. The Agreement will then remain in force until the completion of the product sample.


## 3. RETAINER AND ROYALTY

A. In consideration for all of the services provided by Davison to the Client during the term of this Agreement, the Client agrees to compensate Davison in United States dollars by selecting one of the options below and placing his or her initials next to the chosen option. In the event that Client does not initial a choice, Client agrees to be deemed to have chosen Option 4:

> _____ Option 1  $165.00 U.S. dollars per hour plus expenses.
> _____ Option 2  $14,757.25 U.S. dollars
> _____ Option 3  $12,757.25 U.S. dollars and a 5% royalty assigned to Davison.
> _____ Option 4  $10,757.25 U.S. dollars and a 10% royalty assigned to Davison.

B. Davison hereby pledges that the selected option in Section 3A will be kept in the strictest confidence from all parties, including the development staff of Davison.

C. The retainer amount selected in Section 3A shall be considered a full retainer for all services described in this Agreement. In further consideration for services rendered by Davison under this Agreement, the Client agrees and understands that Davison shall be entitled to receive the royalty percentage the Client selected in Section 3A on all revenues as defined in Section 3D received by the Client or Davison, whichever is the case, from any individual, corporation or other entity. The royalties described in options 3 and 4 are in addition to royalties granted under any other agreement between the parties.

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



D. "Revenues" shall mean the total amount of license fees, royalties, sale proceeds or other forms of consideration received as a result of the sale, license or other commercialization of the Idea. The percentage payable to Davison under this Agreement shall be paid as and when Revenues are paid by licensee or buyer. The royalty assignment to Davison is applicable only to Revenues due to Client in excess of any fees paid by Client to Davison for services under this and any other contract.

E. The royalty obligation selected by the Client and described in Section 3A represents a continuing obligation of the Client to Davison and will survive the termination of this Agreement.

## 4. REPRESENTATION, WARRANTIES & COVENANTS

The Client and Davison, as applicable, represent and warrant to and agree as follows:

A. The Client shall respond in a prompt and complete manner to all reasonable requests for information and assistance made by Davison during the development of the Idea. Client agrees that Davison may set, and inform Client of, deadlines for Client to submit comments on designs prepared by Davison and that in the absence of timely receipt by Davison of Client's comments all designs are deemed accepted and approved by Client.

B. The Client warrants to Davison that the Client, to his/her best knowledge and belief, is the sole owner of the Idea and that no other entity or individual has any rights or interest in the Idea.

C. The Client warrants to Davison that all information provided to Davison is true, complete and accurate to the best of the Client's knowledge.

D. The Client shall not hereafter sell, license, pledge, mortgage, place in trust, transfer, assign, or otherwise convey the Idea or any rights in the Idea, to any entity or individual, without first informing them of the terms of this Agreement and giving Davison prior written notice.

E. The Client warrants to Davison that he/she is of legal age and has the legal capacity to enter into this Agreement.

F. The Client reserves the right to review all materials prepared by Davison in regard to the development of the Idea. The items to be delivered for Client's possession pursuant to this Agreement are the Integrated Product Rendering and the Executive Summary. Client intends that Davison will retain possession of the product and packaging sample, unless Client requests otherwise in writing.

G. It is hereby acknowledged by the Client that Davison's royalty/commission percentage is not, in any form, an ownership interest in the Idea.

H. Davison agrees to accept all reasonable requests of the Client that are consistent with the goal of solving the problem in a simple and cost effective manner. Davison reserves the right to redesign the

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



product to take advantage of a cost effective solution to the problem for which the product was intended and to reflect current manufacturing techniques. Client agrees to accept all reasonable design modifications, parts selections and enhancements recommended by Davison.

I. Davison promises to keep all aspects concerning the Client, the Idea and/or the terms of this business relationship in general, and this Agreement in particular, in the highest level of confidentiality. All materials in said connection whether written or oral are subject to the Client's approval prior to the release of any information.

**J. Acknowledgments.**

i) Davison has made no representations concerning the likelihood that the Client will receive any financial gain from the development of the Idea.

ii) Client acknowledges that Davison has not and will not evaluate the commercial potential of the Idea and that Davison has not disclosed it to anyone. Thus, there is no way of knowing at this time if the targeted corporation will license, buy or pay royalties for the Idea once it has been developed. Client acknowledges that Davison has made no representations concerning the likelihood of licensing, marketing, royalty payments or profitability. Davison's offer of services for upfront consideration and for a portion of possible royalties is not a representation by Davison that the Idea has merit or that development will result in a license or payments to Client.

iii) Only official government agencies can award a patent, trademark and/or copyright. Davison is not a law firm. Davison is not providing, and Client is not relying upon Davison for, legal advice. Client acknowledges that he/she is responsible for patenting his/her Idea and that Davison has made no representations concerning the patentability of the Idea or its ultimate design. Solely as a courtesy and convenience to Client, Davison provides the following information from the U.S. Patent and Trademark Office concerning provisional patents:

a) The Client should treat his/her Idea as a confidential subject in order to protect his/her legal rights until such time as a Utility Patent, Design Patent, Trademark and/or Copyright is issued.

b) A Provisional Patent Application establishes an official United States patent application filing date for the Idea.

c) A Provisional Patent Application permits one year's authorization to use "patent pending" notice in connection with the Idea.

d) A Provisional Patent Application enables immediate commercial promotion of the Idea.

e) A Provisional Patent Application automatically is abandoned after 12 months if the Client takes no further action.

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



f) The fee for filing a Provisional Application for Patent is subject to change annually and varies based upon the entity status. Currently, the fee is $260.00 for a 'Large Entity'; $130.00 for a 'Small Entity'; and $65.00 for a 'Micro Entity.'

g) A Provisional Patent Application can NEVER mature into a United States patent. In order for a patent to issue the Provisional Patent Application MUST be replaced by a conventional patent application within one year.

h) A Provisional Patent Application provides a simplified filing with one full year to assess the Idea's commercial potential before committing to the higher cost of filing and prosecuting an additional non-provisional application for a patent.

K. Any Patent Application filing fees, patent filing fees, issue fees, and maintenance fees fall outside the scope of this Agreement if/when they are needed in the future.

L. The Client shall not be responsible for any additional expenses to Davison within the scope and term of this Agreement, with the possible exception being additional services to present the Idea to an additional targeted corporation which may include services to refurbish or repackage the sample, for which Davison currently charges $395.00. Davison's obligations are only those set forth in this Agreement and only directed towards the targeted corporation named on the last page of this Agreement. Davison is not responsible for damage, loss, wear or abuse of the product sample after it leaves Davison's possession.

M. Davison cannot be aware of, and is not responsible for, the existence of every similar product or idea that may already be in the global market, in development by others, or introduced by others at a later time.

N. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE OF THIS AGREEMENT, INCLUDING NO WARRANTY OF MERCHANTABILITY. Because this contract is for the development of a new product sample, Davison cannot guarantee that the product sample will be safe under normal use or if abused, which could occur. The liability of the parties for any and all claims arising from or relating to this Agreement or its formation is limited to direct, actual damages only and is further limited to not exceed the amount actually paid by Client for the services. In no event will Davison be liable to Client for any consequential, exemplary, special, incidental or punitive damages, including lost opportunities or lost profits.

O. Client acknowledges that there have been no representations by Davison that the Idea as conceived and submitted by Client is novel or feasible or that the design to be created by Davison will function in the manner and with the attributes as originally conceived by Client. Davison may develop, but is not required to develop, new technology in the performance of this contract. Enhancements to existing products, or alternative methods to dispense, display or package existing products, if determined by Davison to be appropriate, will be acceptable performance of the obligations under this Agreement. This Agreement does not contain or incorporate any specifications, performance characteristics or other qualities for the design

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348



**DAVISON**

or product sample to be produced.

P. Client acknowledges that he/she is contracting for Davison's research, industrial design and development services for the business purpose of developing Client's Idea commercially and not for any personal, family or household purpose.

## 5. ENTIRE AGREEMENT; ORAL REPRESENTATIONS VOID

A. The parties intend this document to be the complete, exclusive, final and fully integrated statement of their agreement. It is binding upon each of them and their respective successors in interest. This Agreement may not be released, discharged, abandoned, changed, or modified in any manner except as provided herein or by separate instrument in writing signed by all parties. The obligations described herein are completely independent from those contained in any other agreement between these parties. If any portion of this Agreement is ruled to be unenforceable, that specific portion shall be severed from the Agreement and all other portions remain enforceable.

B. Neither party is relying upon any oral agreement or representation in entering into this Agreement and all prior oral agreements or representations are hereby considered null and void.

## 6. CHOICE OF LAW; ARBITRATION; CURE

A. This Agreement shall be governed by the law of the Commonwealth of Pennsylvania and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. For any dispute, the parties agree to seek to resolve the dispute through good faith negotiation. For any dispute not resolved through good faith negotiation, the parties agree that all disputes shall be resolved through arbitration before the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania using the Commercial Arbitration Rules in effect on the date that the claim is submitted to the AAA. Client agrees that any claim must be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

B. No claim for breach of this Agreement shall be permitted unless Client has given Davison reasonably specific written notice of the alleged breach and has permitted Davison a reasonable opportunity to cure the alleged breach, which shall be no less than thirty days after Client gives his or her assent to the proposed cure.

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348