**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVISON DESIGN &** | ) | |
| **DEVELOPMENT, INC. ,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **CA No. 2:23-cv-644** |
| | ) | |
| **MARIO SCORZA ,** | ) | |
| *Defendant.* | ) | **Judge Marilyn J. Horan** |

---

## Defendant's Exhibit 3

---

Defendant's Exhibit 3

**IN THE AMERICAN ARBITRATION
ASSOCIATION**

|  |  |
|---|---|
| Mario Scorza,<br><br>*Claimant*,<br><br>       v.<br><br>Davison Design and<br>Development, INC.,<br><br>*Respondent*. | Case Number: 01-21-0004-6369 |

**PRELIMINARY EXPERT REPORT OF J. SCOTT MCBRIDE**

March 15, 2022

Defendant's Exhibit 3

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 3
II.    PROFESSIONAL AND EDUCATIONAL BACKGROUND............................. 4
III.   SUMMARY OF OPINIONS ............................................................................... 6
IV.    BACKGROUND .................................................................................................. 7
       A.    Parties ........................................................................................................ 7
             1.    Mario Scorza.................................................................................... 7
             2.    Davison Design and Development, Inc ........................................... 7
       B.    Overview of the Litigation ........................................................................ 7
       C.    Patentability............................................................................................... 8
       D.    Provisional Patent 62/601, 218................................................................ 11
       E.    Provisional Patent 62/710,055................................................................. 11
       F.    Requests for Assistance ........................................................................... 12
       G.    Loss of Rights .......................................................................................... 13
       H.    "Inventomercial" Presentation Agreement .............................................. 13
V.     Conclusion ........................................................................................................ 14

Confidential – Attorneys' Eyes Only

## I.    INTRODUCTION

Defendant's Exhibit 3

I have been retained by Kearney, McWilliams & Davis, PLLC (hereafter "KMD"), Claimant's counsel, on behalf of Mario Scorza ("Mr. Scorza") in the above-captioned arbitration as an expert witness in the present matter wherein my qualifications and experience allow me to opine on the subjects of patents and patentability.[1] I understand that Mr. Scorza is the inventor of the "Trava-Weigh" portable scale. Mr. Scorza contends that Respondent, Davison Design and Development, Inc. ("Davison"), did involve itself with false and misleading representations which sought to induce Mr. Scorza into a financial relationship which did adversely affect Mr. Scorza fiscally. Specifically, Mr. Scorza alleges that Respondent misled Mr. Scorza into believing Respondent would develop Mr. Scorza's invention, create a prototype of his invention, and perform marketing services, all of which were never undertaken. Among other causes of action (discussed later in my report), Mr. Scorza asserts breach of contract, false and negligent representations, deceptive and unfair trade practices, inducement, and both common law fraud and fraud by non-disclosure on the part of Respondent.

Claimant's counsel has asked me to (a) assess the prior art field of portable travel scales at the time of Mr. Scorza's submission to Davison; (b) evaluate the condition of Mr. Scorza's provisional patent applications; (c) address the patentability of Mr. Scorza's invention at the time of submission; (d) determine the likelihood of an allowable patent application; and (e) appraise Davison's duty and culpability in allowing Mr. Scorza's patents to lapse, as well as  degree of absence of reasonable care owed Mr. Scorza. As part of these analyses, I examined various data, documents, and filings proffered by Claimant's counsel and Respondent's counsel. In order to conduct my analysis, I have assumed Mr. Scorza's claims of wrongdoing on the part of

---

[1] Exhibit 1, CV of JS McBride, expert witness.

Confidential – Attorneys' Eyes Only

Respondent, including negligence, deceptive practices, misrepresentation, and fraud are correct.

**Defendant's Exhibit 3**

To form my opinions, I have considered the documents listed in Exhibit 2 and referenced in the text, footnotes, and attached exhibits of this report.[2] I have also relied on my education, professional judgment, and expertise gathered from many years of engineering, prosecuting patents, and developing legal opinions in a myriad of intellectual property matters. The following report summarizes my current opinions. The information in this report is based upon discovery to date and the information that is currently available. To the extent additional information is produced or relied upon, I may supplement this report, if warranted, based on additional discovery.

## II.    PROFESSIONAL AND EDUCATIONAL BACKGROUND

I am an engineer, engineering project manager, consultant, advisor, licensed Texas attorney since 2005, and licensed patent practitioner authorized to practice patent law at the United States Patent and Trademark Office since 2007.

Over the course of my career, I have served as an engineering manager, project manager, business developer, mechanical engineer, and attorney to a wide variety of clients on matters involving product development and design, contract development, patent and trademark prosecution, as well as management of large-scale technology portfolios. I have also served as a consultant in a wide range of patent and technology matters, including patent portfolio management and administration, patent prosecution, and trademark prosecution. While the context and content of management, administration, and prosecution had varied from technology to technology and on a project-to-project basis, most included an analysis and evaluation of company-specific and industry-wide data for the purpose of determining the metes and bounds of

---

[2] Exhibit 2, Please see Documents Considered submitted prior

4

Confidential – Attorneys' Eyes Only

intellectual property protection. As part of these analyses, I have often examined novelty, non-

Defendant's Exhibit 3

obviousness, the likelihood of patentability of an invention or set of inventions, the potential

allowability of a patent or patents, the field in which technology exists, the degree to which new

technology may exist in an identified field, the commercial applicability of products, and the

probability of success of a technology or device in a market or markets. I am also well versed on

the many substantive and procedural requirements of the USPTO required to obtain patent rights.

I received my Doctor of Jurisprudence (J.D.) degree from South Texas College of Law,

Houston, Texas. I received a Bachelor of Science degree in Civil Engineering from Texas A&M

University, College Station, Texas. I am a licensed mechanical engineer (Mechanical P.E., Texas)

and a licensed attorney in the state of Texas.

My curriculum vitae is attached hereto as Exhibit 1. I am being compensated on a rate

times hours basis for the work I perform. My current rate is $400 per hour. My compensation

does not depend in any way on the outcome of this matter.

## III.    SUMMARY OF OPINIONS

Defendant's Exhibit 3

Based upon my review of the relevant data and documents, it is my opinion that Respondent's conduct has resulted in an irremediable loss of patent rights for Mr. Scorza and rendered an otherwise patentable invention unpatentable. And, but for the negligent misrepresentations, unfair trade practices, fraud and negligence by Davison, Mr. Scorza would have received an issued patent along with all rights such an allowed patent would naturally receive.

Mr. Scorza is seeking lost profits due to Davison's negligence and inaction as well as disgorgement, reimbursement of Claimant's fees to Respondent associated with the alleged wrongful conduct, and punitive damages. I understand that the Respondent has not produced relevant exculpatory information, for example, evidence showing the production of any prototype, agreed upon marketing materials or business contacts or agreements in furtherance of bringing Mr. Scorza's product to market at any point in the preceding more than five (5) years. Moreover, it is my understanding that when Mr. Scorza repeatedly asked for assistance or sought guidance with his patent filings, Davison neither provided comment or assistance nor did they advise Mr. Scorza to, at a minimum, seek legal counsel to address even his most basic USPTO requests for additional information and fees. As a result, I reserve the right to provide an opinion regarding Respondent's negligence and culpability in Mr. Scorza's loss of rights should additional data be provided. Based upon the limited data produced by Respondent, Respondent's gross negligence combined with Claimant's lack of intellectual property acumen and advanced age, can only lead to the conclusion that, but for Davison's deficient handling of Claimant's invention, failure to provide even a modicum of guidance, Mr. Scorza would have received a patent. However, I reserve the right to update my analysis as additional information is produced.

## IV.   BACKGROUND

Defendant's Exhibit 3

### A.   Parties

#### 1.  Mario Scorza

Mr. Scorza is an octogenarian resident of Waco, Texas and is the inventor of the subject matter of this cause of action, the "Trava-Weight" portable scale. The novel features of this invention include a flat, lightweight scale which is packaged for transportation, thus allowing consumers to travel with a means to monitor their body weight. No such scale existed as of the time of Mr. Scorza's first attempt at patenting (March 2017).

#### 2.  Davison Design and Development, Inc

Operating since 1989 and based in Pennsylvania,[3] Davison Design and Development, Inc. is a research, development and presentation services provider based on an "upfront," fixed-fee and contingent fee basis (based on potential royalties).[4] Davison Design and Development, Inc. currently operates in two locations, Pennsylvania and Florida, and engages in business primarily online and via email and telephone.[5]

### B.   Overview of the Litigation

It is my understanding that Mr. Scorza was propositioned by Davison on at least December 20, 2016[6] wherein Davison encouraged Mr. Scorza to file a provisional patent and additionally offered to provide Mr. Scorza with "documents that you may find helpful

---

[3] DEPARTMENT OF STATE, https://www.corporations.pa.gov/search/corpsearch (searching "Davison Design and Development" in the Business Entity Name/ID search field).

[4] *Get started today!*, DAVISON, https://idea.davison.com/index.php?source_id=1802&campaign_name=index_page_top; DAVISON, https://www.davison.com/.

[5] *Our Story & Mission Statement,* DAVISON, https://www.davison.com/our-experience/about-davison/.

[6] Davison_000193

for filing a Provisional Application for Patent with the United States Patent and Trademark office" (sic).[7, 8] On March 29, 2017,[9] Davison and Mr. Scorza did enter into a 'New Product Sample Agreement' which was duly signed by Larry Rifkin on March 23, 2017 and Mr. Scorza March 29, 2017.[10]  At this time a check was provided by Mr. Scorza in the amount of $14,757.25.[11] As part of this agreement, Davison was retained to "develop the idea into a product sample," which is described as a "physical product sample," as well as other promotional material along with various business contacts as stipulated in the body of the agreement.[12, 13] However, Mr. Scorza advances that the Respondent never produced said sample or prototype, produced very limited promotional materials, and that Mr. Scorza did not receive a single business interest in his product.

During the time that Mr. Scorza was engaged with Respondent, Mr. Scorza did make two (2) attempts to submit a Provisional Patent to the USPTO, the first attempt was March 16, 2017 (Provisional Patent No. 62/601, 218) and the second was February 8, 2018 (Provisional Patent No. 62/710, 055). Each application received a deficiency notice and each subsequently abandoned

## C. Patentability

Reviewing both the Davison supplied prior art information, made available to inventor as an "Executive Summary," KMD supplied patentability search conducted on

---

[7] Davison_000040

[8] Davison_000159 to Davison_000164

[9] Davison_000018

[10] Davison_000027

[11] Davison_000027

[12] Davison_000019

[13] Davison_000205

Defendant's Exhibit 3

February 25, 2022, together with inventor and Davison supplied materials, it is my

conclusion that, at the time of submission of the original provisional application there <span style="color:blue">Defendant's Exhibit 3</span>

existed: (1) sufficiently detailed information from which to construct a viable patent

application; and  (2) there existed no prior art of record that would have provided a basis for

rejection of Mr. Scorza's application based on anticipation (lack of novelty) or obviousness.

To determine the status of the prior art at the time of filing of the provisional patent,

KMD requested a prior art search from the firm Techson Intelligent Property (hereafter

"Techson"), an Austin Texas-based research firm. The prior art search was conducted for all

prior art relevant to the "Trava-Weigh" patent prior to the date of filing in March of 2017.

The search results found three (3) highly relevant pieces of prior art, two (2) medium relevant

pieces of prior art, and two (2) low relevance pieces of prior art. In my opinion, none of these

pieces of prior art would have anticipated the "Trava-Weigh" application to the level required

to reject the application with a 102 (lack of novelty) rejection. Further, in my opinion, the

combination of these pieces of prior art would not have rendered the "Trava-Weigh" obvious,

thus triggering a 103 rejection by the USPTO.

Manifestly, the three (3) pieces of highly relevant prior art in the Techson search is

not sufficient for a rejection of Mr. Scorza's patent as is assessed below. To reject a patent

application based on anticipation (102), the prior art must have each and every of the claimed

elements of the patent in question. The first piece of highly relevant prior art is French patent

FR2930411 TRANSPORTABLE WEIGHING TOILET CASE FOR TRANSPORTING

E.G. TOILETRY PRODUCTS. FR2930411 does not include all of the features that could

have been claimed by Mr. Scorza had he had advice from a Patent attorney or agent. For

example, the "Trava-weigh" as shown in the filed provisional patents has four flaps and a

single scale that is removable from the case. FR2930411 does not have these defining

features, and therefore does not anticipate inventor's invention the "Trava-Weigh" invention.

Defendant's Exhibit 3

The next piece of highly relevant prior art is US4765421 FOLDING SCALE. US4765421 is a US patent issued for a scale having two halves that fold together to form a case for carrying. However, US4765421 does not include the four flaps and a single scale that is removable from the case as shown in Mr. Scorza's '055 filed provisional patent. Therefore, US4765421 does not anticipate the "Trava-Weigh" invention.

The final piece of highly relevant prior art is US7047827 FOLDING DIGITAL SCALE. US7047827 is a US patent issued for a portable scale, hard sided case folds open and closes for transport. The scale is foldable and not a solid scale as depicted in Mr. Scorza's application. Further this patent does not include the four flap features shown in Mr. Scorza's application. Therefore, US7047827 does not exhibit each and every feature of Mr. Scorza's invention and does not anticipate the "Trava-Weigh" invention.

The remaining prior art found in the prior art search was of less (medium to low) relevance than the three (3) (high relevance) patents listed above. They will therefore not be analyzed in detail; however, as a result of their lower relevance due in part to even fewer identifiable similar features, none of them anticipate Mr. Scorza's application sufficient to result in a 102 (anticipation) rejection. Further, none of these pieces of prior art would have made Mr. Scorza's application obvious where features, although not found in a single reference, may nonetheless serve to reflect features existing in the art at the time of patenting.

As a result of this inability to designate or discern Claimant inventor's invention key features existing in the prior art at the time of patenting, it is more likely than not that a competent patent practitioner would have been able to secure patent rights in Mr. Scorza's "Trava-Weigh" invention. Based on these sets of facts, it is my opinion that had Respondent

directed Mr. Scorza to use, or even query or consult, a qualified patent practitioner for his

Defendant's Exhibit 3

application he would now have a patent and full patent rights thereby in the U.S.

### D.   Provisional Patent 62/601, 218

Provisional Application No. 62/601,218 was submitted March 16, 2017. The

application itself consisted of simply a USPTO form providing a title: "Weighing Scale That is

Portable even in Suitcase" with no other necessary application parts.[14] The USPTO issued a

'Notice of Incomplete Application' March 31, 2017, due to an insufficient filing fee and absence

of a specification.[15] No response was recorded in the USPTO and the application was never

afforded a filing status. The '218 patent subsequently went abandoned.

### E.   Provisional Patent 62/710,055

Provisional Application No. 62/710,055 was submitted February 8, 2018.[16] The

application was titled: "This is a small portable hand-held scale that one can stand on to measure

their weight, can be used to take on cruise or anywhere from home" consisting of a description,

diagrams and CAD drawings supplied by Davison.[17] This application was accepted as meeting

the required application parts but received a Notice to File Missing Parts wherein was detailed

insufficient filing fees which incurred a surcharge.[18] While Claimant's second attempt secured

a successful USPTO filing status, no response was recorded in reply to the Notice to File

Missing Parts in the USPTO and the '055 application, like the '218 application, subsequently

abandoned.

---

[14] Exhibit 3

[15] Exhibit 4

[16] Exhibit 5

[17] Exhibit 5

[18] Exhibit 6

Of Note, the condition of provisional patent 62/710,055 *was* sufficient for a patent

Defendant's Exhibit 3

practitioner to convert the '055 application into a utility non-provisional application by filing a

non-provisional patent within a year anniversary of the provisional application in order to

secure Mr. Scorza's patent rights. Therefore, had Davidson instructed or even offered a

suggestion for Mr. Scorza to use a Patent Practitioner, it is my opinion that he would have

readily and easily passed this administrative hurdle, paid his missing fee(s), and filed a timely

non-provisional patent with all the necessary parts. Based on the prior art at the time of filing

and information that Mr. Scorza included in at least the '055 provisional application, it is my

opinion that a patent practitioner would have secured patent rights to the "Trava-Weigh"

invention had Mr. Scorza been directed, at an absolute minimum, to seek advice and counsel

from a practitioner.

### F.   Requests for Assistance

Pointedly, Mr. Scorza made several attempts to gain assistance and an understanding of

the official responses from the USPTO. Mr. Scorza marked application no. 62/710,055 as "FOR

LARRY RIF"[19] and "Larry – From USPTO shows they accepted payment – Mario,"[20] dated

June 13, 2017, and application number 62/601,218 as "FOR: LARRY RIFKIN, WHAT IS

THIS???."[21] In addition, Mr. Scorza made several pleas to Davison, as evidenced by Davison's

records on July 13, 2017,[22] November 12, 2018, and December 3, 2018.[23] Mr. Scorza

nevertheless received no acknowledgement, guidance, or suggestion to seek legal counsel as to

---

[19] Davison_000004

[20] Davison_000003

[21] Davison_000029

[22] Davison_000051, Davison_000044

[23] Davison_000046, Davison_000053

adequately remedy simply filing requests from the USPTO. As a result of Davison's clear lack

Defendant's Exhibit 3

of guidance, or even a basic recognition of Mr. Scorza's request or suggestion to seek legal

counsel, both applications abandoned in due course. Consequently, it is my opinion that had

Davison advised or suggested that Mr. Scorza seek legal counsel, Mr. Scorza would have

obtained a patent on the "Trava-Weigh."

**G.  Loss of Rights**

Mr. Scorza possessed adequate and sufficient information to address the USPTO's

requests in the filed 62/601,218 and 62/710,055 provisional patents, if only Mr. Scorza had

received even a hint of guidance. If included, a specification with the key features of his invention

was sufficient to convert the '218 application into a non-provisional patent and secure full patent

rights. Likewise, had Mr. Scorza received any instruction on the '055 application, this application

as well would have resulted in a non-provisional patent application. Moreover, each non-

provisional application was likely to receive positive treatment form the USPTO resulting in an

issuance. But for Davison's negligence in (absence of) responding to Mr. Scorza's pleas for help,

Mr. Scorza could have sought counsel from a patent practitioner who would have expended little

effort to remediate the above identified deficiencies. Practically any patent practitioner would

have provided the necessary guidance resulting in the securing of Mr. Scorza's patent rights on

the "Trava-Weigh" invention. Yet, Davison's failure to follow its own agreement, repeated

negligence, deceptive practices, and fraud, resulted in no patent rights. Consequently, it is my

opinion that Mr. Scorza is entitled to the full extent of damages related to the loss of his patent

rights.

**H.  "Inventomercial" Presentation Agreement**

Finally, although Mr. Scorza had not reached any resolution in terms of acceptance of his

applications, Mr. Scorza was enticed to again sign another agreement December 19, 2018,

Defendant's Exhibit 3

purportedly for $2,495.[24] Yet, that figured had ballooned to $3,995 as of the date of signing on

April 30, 2018.[25] This inducement to enter into an additional contract, and provide further

payments, was achieved in the face of Davison's actual knowledge of Plaintiff's advanced age of

eighty-three (83)[26] and use of his grandson's college fund.[27] This actual knowledge is combined

with Respondent's knowledge that Claimant had, to that date, no prototype nor viable patent

applications.

## V.    Conclusion

In conclusion, it is my opinion that but for the actions, expressly *inactions*, of Respondent,

that Mr. Scorza, benefitting from any assistance or information from Respondent, would have

received a United States patent or patents, and potentially patents in other jurisdictions, as the

basis of his invention is both subject matter eligible and not otherwise precluded by inventions

described in the prior art presented in terms of novelty or obviousness.

Respectfully submitted:

_____
J. Scott McBride, J.D. PE
March 15, 2022

---

[24] Davison_000010, Davison_000337

[25] Davison_000324

[26] Davison_000046

[27] Davison_000045

Defendant's Exhibit 3

# Exhibit 1

## J. Scott McBride
406 Byrne St.
Houston TX, 77009
Jsmcbride23@gmail.com
(713)-501-8552.

*Defendant's Exhibit 3*

## SUMMARY OF QUALIFICATIONS

Over twenty years' experience in the petrochemical industry as an Engineering Manager, Project Manager, Business Developer, Project Engineer, Mechanical Engineer and an Attorney. Experienced Leader with excellent written and oral communication skills. General Experience includes heading up diverse teams, driving change, and driving improvements in quality, cost, lead times and team unity. Engineering experience includes front-end development to complete facility construction inspection. Legal experience includes assisting multiple engineering design teams with product development and design in addition to contract development, contract negotiation, patent prosecution, trademark prosecution, and management of technology portfolios. Experience areas include chemical plants piping systems, liquid and gas pipelines, tank farms, bio-fuels plants, metering stations, sour gas production facilities, drilling systems, vent and flare systems, drilling tools, compressor systems, pumping stations, coker units, production systems, pressure control systems, utility systems, utility plants, and refinery piping systems.

## Professional Experience

Audubon Engineering Company, Houston, TX   2017 – Present
*Engineering Manager/Manager of Projects/Project Manager*

Manager of Projects. Duties Include:

- Responsible for all project managers and successful execution of projects in the office. Oversee execution procedures and project budgets for all projects. Successfully decreased write offs and efficiency of execution of project at Audubon down stream.

Project Director/Engineering Manager responsible for multiple brownfield projects. Duties include:

- Working with clients to develop project objectives and documentation, scope of work, proposals, engineering status, project progress, labor, cost, schedule and developing and maintaining client, vendor and subcontractor relationships.
- Account Manager for several clients.

W.S. Nelson, Houston, TX        2011 – 2017
*Project Manager*

Project Manager for multiple on and offshore brownfield and greenfield projects. Duties included:

- Worked with clients to develop project objectives and documentation, scope of work, proposals, engineering status, project progress, labor, cost, schedule and developing and maintaining client, vendor and subcontractor relationships.

*Mechanical Engineer/Pipe Stress Department Head*

Mechanical engineer responsible for multiple topsides skid packages for offshore platforms in Gulf of Mexico. Duties included:

- Working with clients to develop project objectives and documentation, managing change, reviewing vendor procedures and documentation during engineering and construction of the skid packages, and tracking progress.
- Pipe Stress Engineer responsible for analyzing piping systems, pipelines, pumping stations for multiple upstream, midstream and downstream projects.

*Shell Client Representative*

## J. Scott McBride
406 Byrne St.
Houston TX, 77009
Jsmcbride23@gmail.com
(713)-501-8552.

*Defendant's Exhibit 3*

Project Engineer/Mechanical Engineer for topsides of Shell Stones FPSO in the Gulf of Mexico. Duties included:

- Responsible for coordinating with engineering contractor and vendors to develop project objectives.
- Reviewed engineering procedures, reviewed procurement packages, ensured engineering contractor and vendors comply with Shell specifications, ensured compliance with U.S. Regulations, inspections, and reviewed topside design.

Mark Oathout Law Firm, Houston, TX          2010 – 2011
*Attorney*

- Responsible for patent and trademark preparation and prosecution

J.L. Salazar Law Firm, PLLC, Houston, TX          2009 – 2010
*Consultant*

Outside technology development consultant for several upstream and downstream oil companies and service providers. Clients included Shell, Schlumberger, NOV and Amkin. Oilfield Technologies included drilling tools, logging tools, blowout preventers, expandable tubing, whipstocks, downhole pumps, downhole motors, top drives, directional drilling tools, coiled tubing delivery systems, pumps, processes, catalyst extraction, welding technology, and other upstream and downstream technology.

- Consulted with in-house attorneys to develop technology and patent strategies.
- Managed technology portfolios.
- Developed and maintained client relationships.
- Worked closely with design engineers developing new oil field technology and improvements to existing technologies.
- Managed other attorneys.
- Drafted legal opinions regarding competitor patents and technology.

Fluor (Plant Engineering), Deer Park, TX          2008 – 2010
*Project Manager/Project Engineer*

- Responsible for managing multiple small to mid-capital projects at Shell Deer Park Refinery and Chemical Plant.
- Maintained client relationships, developed project objectives, drafted proposals, developed scope of work, prepared estimates, maintained schedule and budget, managed engineering disciplines and managed project progress.

*Pipe Stress Department Head*

- Responsible for managing all pipe stress and piping design issues at Plant Engineering Deer Park. Managed pipe stress budgets, estimates, workflow and quality.

The McBride Law Firm, P.C., Houston, TX          2007 – 2010

Solo practitioner handling patent preparation, prosecution and opinion work (and other IP matters) for international software and oilfield clients.

Patterson & Sheridan L.L.P., Houston, TX          2004 – 2007
*Patent Attorney*

Responsible for patent preparation, prosecution and legal opinions for international clients, such as Weatherford Int., Air Liquide and Applied Materials.

- **Oilfield Technology** – prepared and prosecuted patents relating to mechanical, electromechanical and

J. Scott McBride
406 Byrne St.
Houston TX, 77009
Jsmcbride23@gmail.com
(713)-501-8552.

*Defendant's Exhibit 3*

---

software technologies.
- **Computer Science** – prepared and prosecuted electromechanical, computer hardware and software cases relating to online security, calendaring applications, transportation systems, and oilfield technology.
- **Other Technology** – prepared and prosecuted additional patent cases relating to hand tools, household goods, fiber optic sensors, semiconductors and other technologies.
- **Other Legal Matters** – handles trademark preparation and prosecution, IP agreements, contract drafting and other legal matters.

Fluor and Foster Wheeler, Houston, TX and Calgary Canada     1996 – 2002
*Pipe Stress Engineer*

- Designed piping systems for oil refineries and chemical plants, such as Exxon's Baytown Olefins plant, Shell Deer Park, Solvay, Valero, Clark, Shell Canada, Dupont, BP and others.
- Managed piping group for several coker units, designing piping systems, training new engineers, maintaining piping specs, consulting with clients on piping needs, estimating pipe stress man hours and budget.

Jacob's Engineering Group, Houston, TX          1995 – 1996
*Structural Engineer*

Designed pipe racks and foundations for a chemical plant.


## Education

South Texas College of Law, Houston, TX, 2005
Doctor of Jurisprudence

- Dean's List
- AmJur Award for Constitutional Law
- Construction Law Journal
- Construction Law Scholarship


Texas A&M University, College Station, TX, 1994
B.S. Civil Engineering


## Licenses

- Mechanical P.E. (Texas)
- Licensed to Practice before the US Patent & Trademark Office
- Texas State Bar Licensed to Practice in Texas.

# Exhibit 2

**List of Documents Considered in this Paper**   Defendant's Exhibit 3

- File wrapper contents of Provisional Patent 62/601, 218;

- File wrapper contents of Provisional Patent 62/710,055;

- Claimant's Request for Production;

- Claimant's Interrogatories;

- Respondent's Objections and Response to Claimant's
  Request for Production;

- Respondent's Objects and Answers to Claimant's First Set
  of Interrogatories;

- Respondent's "8981309_firstlist_1575040231_0"
  document;

- Patentability search conducted February 25, 2022;

- Respondent's Licensing Calls;

- Respondent's "vr_1502782620" document;

- Respondent's "idsketch";

- **Respondent's Part 1 Submission** (Davison_000001 to
  Davison_000080);

- **Respondent's Part 2 Submission** ((Davison_000081 to
  Davison_000147);

- **Respondent's Part 3 Submission** (Davison_000148 to Davison_000367);

- Respondent's "video_1549552669-5135" video document;

- Respondent's "vrnologo_1502947858" and
  "vrsignoff_1502947861" documents;

- Claimant provided New Product Sample Agreement;     **Defendant's Exhibit 3**

- Original Demand Letter;

- Demand for Arbitration; and

- Claimant's Original Petition

# Exhibit 3

U.S. PTO
62/601218
03/16/2017

031617  02194  U.S. PTO

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 1 of 2
This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

Express Mail Label No. _____

### INVENTOR(S)

| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| MARIO U. (SCORZA) | SCORZA | 612 W. Highland West, TX 76691 |
| | | |
| | | |
| | | |

Additional inventors are being named on the ____None____ separately numbered sheets attached hereto.

### TITLE OF THE INVENTION (500 characters max):

weighing Scale That is portable even in suitcase.

Direct all correspondence to:

☑ The address corresponding to Customer Number:

OR

☐ Firm or Individual Name

**CORRESPONDENCE ADDRESS**

Mr Mario Scorza
612 W Highland St
West, TX 76691

| Address | | |
|---|---|---|
| City | State | Zip |
| Country | Telephone | Email |

### ENCLOSED APPLICATION PARTS (*check all that apply*)

☐ Application Data Sheet. See 37 CFR 1.76.
☐ Drawing(s) *Number of Sheets* _____
☐ Specification (e.g., description of the invention) *Number of Pages* _____
☐ CD(s), Number of CDs _____
☐ Other (specify) _____

**Fees Due:** Filing Fee of $260 ($130 for small entity) ($65 for micro entity). If the specification and drawings exceed 100 sheets of paper, an application size fee is also due, which is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

### METHOD OF PAYMENT OF THE FILING FEE AND APPLICATION SIZE FEE FOR THIS PROVISIONAL APPLICATION FOR PATENT

☐ Applicant asserts small entity status. See 37 CFR 1.27.
☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Applicant must attach form PTO/SB/15A or B or equivalent.
☐ A check or money order made payable to the *Director of the United States Patent and Trademark Office* is enclosed to cover the filing fee and application size fee (if applicable).
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the filing fee and application size fee (if applicable) or credit any overpayment to Deposit Account Number: _____

**TOTAL FEE AMOUNT ($)**

### USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 10 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

**Defendant Exhibit 3**

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 2 of 2

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

[✓] No.

[ ] Yes, the invention was made by an agency of the U.S. Government. The U.S. Government agency name is: _____

_____

[ ] Yes, the invention was made under a contract with an agency of the U.S. Government. The name of the U.S. Government agency and Government contract number are: _____

_____

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

SIGNATURE _Marca Scorza_ DATE 2.22-17

TYPED OR PRINTED NAME MARIO SCORZA   REGISTRATION NO. _____
                                    *(if appropriate)*

TELEPHONE 254-715-0243   DOCKET NUMBER _____

Privacy Act Statement                    Defendant's Exhibit 3

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.   Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.   If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Defendant's Exhibit 3

PATENT APPLICATION SERIAL NO._____

## U.S. DEPARTMENT OF COMMERCE
## PATENT AND TRADEMARK OFFICE
## FEE RECORD SHEET

03/17/2017 CCHAU1  00000009 62601218
01 FC:3005                    65.00 OP

PTO-1556
(5/87)

*U.S. Government Printing Office: 2002- 489-267/69033

Defendant's Exhibit 3

# Exhibit 4



UNITED STATES PATENT AND TRADEMARK OFFICE

**Defendant's Exhibit 3**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/601,218 | 03/16/2017 | Mario U. Scorza | |

Mario Scorza
612 W. Highland St.
West, TX 76691

**CONFIRMATION NO. 6744**
**FORMALITIES LETTER**

*OC000000090337833*

Date Mailed: 03/31/2017

## NOTICE OF INCOMPLETE PROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(c)

A filing date has NOT been accorded to the above-identified PROVISIONAL APPLICATION papers for the following reason(s) indicated below.

All of the items noted below **must** be submitted within **TWO MONTHS** of the date of this Notice, unless otherwise indicated, or the proceedings on the application will be terminated (37 CFR 1.53(e)). **Extensions of time under 37 CFR 1.136 are NOT available.**

The filing date will be the date of receipt of all items required below, unless otherwise indicated. Any assertions that the items required were submitted, or are not necessary for a filing date, must be by way of petition directed to the attention of the Office of Petitions accompanied by the petition fee set forth in 37 CFR 1.17(f). If the petition states that the application is entitled to a filing date, a request for a refund of the petition fee may be included in the petition.

• The specification is missing.
  *A complete specification as prescribed by 35 U.S.C. 112 is required.*

The required items noted below SHOULD be filed along with any items required above. The filing date of this provisional application will be the date of receipt of the items required above. If the basic filing fee or due amount is filed after the filing date accorded the application, the surcharge set forth in 37 CFR 1.16(g) is also required.

• The statutory basic filing fee is insufficient.

Applicant is cautioned that correction of the above items may cause the specification and drawings page count to exceed 100 pages. If the specification and drawings exceed 100 pages, applicant will need to submit the required application size fee.

### SUMMARY OF FEES DUE:

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. No entity status discount is in effect. If applicant is qualified for small entity status, a written assertion of small entity status must be submitted to establish small entity status. (See 37 CFR 1.27). If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

Defendant's Exhibit 3

- $ **260** basic filing fee.
- $( **65**) previous unapplied payment amount.
- $ **260** TOTAL FEE BALANCE DUE.

**Items Required To Avoid Processing Delays:**

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

**This application, which was filed with an indication of micro entity status, fails to meet the requirements for establishing micro entity status because:**

- Certification of micro entity status is missing. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

If micro entity status is established in reply to this notice by filing an acceptable Certification of Micro Entity Status, the fees itemized in the SUMMARY OF FEES DUE section of this Notice will be reduced to reflect the 75% micro entity discount, and any previous payment amount may be applied to the discounted fees.

If applicant is not entitled to micro entity status under 37 CFR 1.29, applicant may still qualify for a 50% reduction of fees if small entity status can be established under 37 CFR 1.27.

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice". https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/awebb/

# Exhibit 5

U.S. PTO
62/710055
02/08/2018

02205   U.S. PTO
020818

PTO/SB/16 (03-13)

Defendant Exhibit 3

Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 1 of 2
This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

Express Mail Label No. _____

### INVENTOR(S)

| Given Name (first and middle (if any)) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| MARIO U. SCORZA | SCORZA | 341 OLD MILL CREEK DR, WOODWAY, TX (WACO) 76712 |

Additional inventors are being named on the _____ separately numbered sheets attached hereto.

### TITLE OF THE INVENTION (500 characters max):

This is a small portable hand-held scale that one can stand on to measure their weight. Can be used to take on cruise or anywhere from home.

Direct all correspondence to:

**CORRESPONDENCE ADDRESS**

[ ] The address corresponding to Customer Number: _____ | Same as above

OR

[ ] Firm or Individual Name

Address | Mr Mario Scorza
341 Old Mill Creek Dr
Waco, TX 76712-6448

254-715-0243 cell

City _____ State _____ Zip _____

Country _____ Telephone _____ Email _____

### ENCLOSED APPLICATION PARTS (check all that apply)

[ ] Application Data Sheet. See 37 CFR 1.76.    [ ] CD(s), Number of CDs _____

[X] Drawing(s) Number of Sheets  8    [ ] Other (specify) _____

[X] Specification (e.g., description of the invention) Number of Pages  8

**Fees Due:** Filing Fee of $260 ($130 for small entity) ($65 for micro entity). If the specification and drawings exceed 100 sheets of paper, an application size fee is also due, which is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

### METHOD OF PAYMENT OF THE FILING FEE AND APPLICATION SIZE FEE FOR THIS PROVISIONAL APPLICATION FOR PATENT

[X] Applicant asserts small entity status. See 37 CFR 1.27.

[X] Applicant certifies micro entity status. See 37 CFR 1.29.
Applicant must attach form PTO/SB/15A or B or equivalent.

[X] A check or money order made payable to the *Director of the United States Patent and Trademark Office* is enclosed to cover the filing fee and application size fee (if applicable).

$65.00

**TOTAL FEE AMOUNT ($)**

[ ] Payment by credit card. Form PTO-2038 is attached.

[ ] The Director is hereby authorized to charge the filing fee and application size fee (if applicable) or credit any overpayment to Deposit Account Number: _____

### USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 10 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

Defendant Exhibit 3

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 2 of 2

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

☒ No.

☐ Yes, the invention was made by an agency of the U.S. Government. The U.S. Government agency name is: _____

_____

☐ Yes, the invention was made under a contract with an agency of the U.S. Government. The name of the U.S. Government agency and Government contract number are: _____

_____

## WARNING:

Petitioner/applicant Is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

SIGNATURE *Mario Scorza*                    DATE 2-5-18

TYPED OR PRINTED NAME MARIO SCORZA          REGISTRATION NO. _____ ?
                                            (if appropriate)

TELEPHONE 254-715-0243      DOCKET NUMBER _____ ?

IN THE EVENT OF MY BECOMING MENTALLY DEFICIENT OR DEATH MY DAUGHTER VALERIE ANN SALDANA WILL BE MY HEIR TO THE TRAVA-WEIGH.

VALERIE ANN SALDANA
LEAGUE CITY, TEXAS
832-407-0839

SIGNED-------- *Mario Scorza*

Defendant's Exhibit 3



Photo of Actual Prototype Product Sample

# TRAVA-WEIGH ™

## Portable Scale

### New Discovery!

Are you trying to keep track of your weight? It can be difficult to check your weight when traveling because hotels often do not have scales. Trava-Weigh™ is the scale you need wherever you go! It is a portable bathroom scale with a custom carrying bag. Great for home or travel! Easily transport this scale anywhere! This scale is portable, compact and lightweight. It can fit into luggage or carried separately. The scale has an easy to read LCD display and shows weight in pounds or kilograms. Trava-Weigh™- the best way to keep track of your weight wherever you go!

### How Is It Made?

Through many hours of design strategy implementation, we have accomplished our goal: a cost-effective and easy to manufacture product. It has a cut-and-sewn cordura cover, a cut-and-sewn hook and loop closure, a stamped styrene stiffener, and a cut-and-sewn nylon webbing handle.

A prototype product sample has been built, and Pro-E technical drawings are available.

Defendant's Exhibit 3





Defendant's Exhibit 3

| iNDEX | PART NAME | QTY |
|---|---|---|
| 1 | STIFFENER-1 | 2 |
| 2 | STIFFENER-4 | 2 |
| 3 | STIFFENER-3 | 2 |
| 4 | STIFFENER-2 | 2 |
| 5 | HOOK | 4 |
| 6 | LOOP | 4 |
| 7 | HANDLE | 1 |
| 8 | COVER | 2 |

TRAVA-WEIGH

FOR QUOTATION ONLY
Pro/ENGINEER

TITLE:
SHEET SIZE: A
REVISION: 21-Jul-17
MFG. PROCESS:
MATERIAL:
WALL THICKNESS (in.):
APPROX. WEIGHT (g):
COLOR:
QUANTITY:
DRAWN BY: SS
SCALE: 0.1000

PAGE #:

Defendant's Exhibit 3

PAGE #: 1/8

5.25

11.38

FOR QUOTATION ONLY
Pro/ENGINEER

| | | | | | |
|---|---|---|---|---|---|
| TITLE: STIFFENER-1 | MFG. PROCESS: STAMPED | WALL THICKNESS (in.): 0.04 | COLOR: WHITE | DRAWN BY: SS |
| REVISION: 21-Jul-17 | MATERIAL: STYRENE | APPROX. WEIGHT (g): | QUANTITY: 2 | SCALE: 0.200 |
| SHEET SIZE: A | | | | |

Defendant's Exhibit 3



PAGE #: 2/8

1.25

11.38

FOR QUOTATION ONLY
Pro/ENGINEER

TITLE: STIFFENER-4

SHEET SIZE: A

REVISION: 21-Jul-17

MFG. PROCESS: STAMPED

MATERIAL: STYRENE

WALL THICKNESS (in.): 0.04

APPROX. WEIGHT (g):

COLOR: WHITE

QUANTITY: 2

DRAWN BY: SS

SCALE: 0.300

Defendant's Exhibit 3



PAGE #: 3/8

FOR QUOTATION ONLY
Pro/ENGINEER

4.75

11.13

STIFFENER-3

TITLE:

21-Jul-17
REVISION:

A
SHEET SIZE:

STAMPED
MFG. PROCESS:

STYRENE
MATERIAL:

0.04
WALL THICKNESS (in.):

APPROX. WEIGHT (g):

WHITE
COLOR:

2
QUANTITY:

SS
DRAWN BY:

0.300
SCALE:

Defendant's Exhibit 3

PAGE #: 4/8

FOR QUOTATION ONLY
Pro/ENGINEER

1.00

11.13

| | | | |
|---|---|---|---|
| TITLE: STIFFENER-2 | MFG. PROCESS: STAMPED | WALL THICKNESS (in.): 0.04 | COLOR: WHITE | DRAWN BY: SS |
| SHEET SIZE: A | REVISION: 21-Jul-17 | MATERIAL: STYRENE | APPROX. WEIGHT (g): | QUANTITY: 2 | SCALE: 0.300 |

Defendant's Exhibit 3

PAGE #: 5/8

.75

.75

FOR QUOTATION ONLY
Pro/ENGINEER

TITLE: HOOK

REVISION: 21-Jul-17

SHEET SIZE: A

MFG. PROCESS:

MATERIAL:

WALL THICKNESS (in.)

APPROX. WEIGHT (g):

COLOR: BLACK

QUANTITY: 4

DRAWN BY: SS

SCALE: 2.0000

Defendant's Exhibit 3

PAGE #: 6/8



.75

.75

FOR QUOTATION ONLY
Pro/ENGINEER

TITLE: LOOP

SHEET SIZE: A

REVISION: 21-Jul-17

MFG. PROCESS:

MATERIAL:

WALL THICKNESS (in.):

APPROX. WEIGHT (g):

COLOR: BLACK

QUANTITY: 4

DRAWN BY: SS

SCALE: 2.0000

Defendant's Exhibit 3



FOR QUOTATION ONLY
Pro/ENGINEER

TITLE: HANDLE

REVISION: 21-Jul-17

SHEET SIZE: A

MFG. PROCESS: CUT/SEW

MATERIAL: NYLON WEBBING

WALL THICKNESS (in.): 0.063

APPROX. WEIGHT (g):

COLOR: BLACK

QUANTITY: 1

DRAWN BY: SS

SCALE: 0.4000

PAGE #: 7/8

9.00

1.00

Defendant's Exhibit 3



PAGE #: 8/8

FOR QUOTATION ONLY
Pro/ENGINEER

26.00

27.47

TITLE: COVER

REVISION: 21-Jul-17

SHEET SIZE: A

MFG. PROCESS: CUT/SEW

MATERIAL: CORDURA

WAL. THICKNESS (in.):

APPROX. WEIGHT (g):

COLOR: BLACK

QUANTITY: 2

DRAWN BY: SS

SCALE: 0.100

Doc Code: MES.GIB
Document Description: Certification of Micro Entity Status (Gross Income Basis)

PTO/SB/15A (03-13)

# CERTIFICATION OF MICRO ENTITY STATUS
## (GROSS INCOME BASIS)

Defendant's Exhibit 3

| Application Number or Control Number (if applicable): | Patent Number (if applicable): |
|---|---|
| 62... | |

| First Named Inventor: MARIO SCORZA | Title of Invention: TRAVA - Weigh |
|---|---|

020818

The applicant hereby certifies the following—

(1) **SMALL ENTITY REQUIREMENT** - The applicant qualifies as a small entity as defined in 37 CFR 1.27.

(2) **APPLICATION FILING LIMIT** - Neither the applicant nor the inventor nor a joint inventor has been named as the inventor or a joint inventor on more than four previously filed U.S. patent applications, excluding provisional applications and international applications under the Patent Cooperation Treaty (PCT) for which the basic national fee under 37 CFR 1.492(a) was not paid, and also excluding patent applications for which the applicant has assigned all ownership rights or is obligated to assign all ownership rights as a result of the applicant's previous employment.

(3) **GROSS INCOME LIMIT ON APPLICANTS AND INVENTORS** - Neither the applicant nor the inventor nor a joint inventor, in the calendar year preceding the calendar year in which the applicable fee is being paid, had a gross income, as defined in section 61(a) of the Internal Revenue Code of 1986 (26 U.S.C. 61(a)), exceeding the "Maximum Qualifying Gross Income" reported on the USPTO website at http://www.uspto.gov/patents/law/micro_entity.jsp which is equal to three times the median household income for that preceding calendar year, as most recently reported by the Bureau of the Census.

(4) **GROSS INCOME LIMIT ON PARTIES WITH AN "OWNERSHIP INTEREST"** - Neither the applicant nor the inventor nor a joint inventor has assigned, granted, or conveyed, nor is under an obligation by contract or law to assign, grant, or convey, a license or other ownership interest in the application concerned to an entity that, in the calendar year preceding the calendar year in which the applicable fee is being paid, had a gross income, as defined in section 61(a) of the Internal Revenue Code of 1986, exceeding the "Maximum Qualifying Gross Income" reported on the USPTO website at http://www.uspto.gov/patents/law/micro_entity.jsp which is equal to three times the median household income for that preceding calendar year, as most recently reported by the Bureau of the Census.

### SIGNATURE by a party set forth in 37 CFR 1.33(b)

| Signature | Marco Scorzo |
|---|---|
| Name | TRAVA - Weigh |
| Date 2-5-18 | Telephone 254-715-0243 | Registration No. |

☑ There is more than one inventor and I am one of the inventors who are jointly identified as the applicant. Additional certification form(s) signed by the other joint inventor(s) are included with this form.

Defendant's Exhibit 3

PATENT APPLICATION SERIAL NO._____

## U.S. DEPARTMENT OF COMMERCE
## PATENT AND TRADEMARK OFFICE
## <u>FEE RECORD SHEET</u>

02/09/2018 ZJUHAR1  00000012 62710055

01 FC:3005                           65.00 OP

PTO-1556
(5/87)

'U.S. Government Printing Office: 2002- 489-267/69033

Document Code: IMIS

## Notice of Fee Due

<span style="color:blue">Defendant's Exhibit 3</span>

Application Number: _62710055_____     Date:          _2/8/2018_____

Fees are due for the application or document dated 02/8/2018_____. The payment was not collectable for the reason indicated below.

**Note: If the fee due is for any of the filing fees, the surcharge for late payment of the filing fees is now due as well.**

☑ Insufficient payment by check or money order.

☑ No authorization to charge a deposit account.

☐ Invalid deposit account number.

☐ User name not listed in deposit account _____ at _____:_____ (time).

☐ Insufficient funds in deposit account _____ at _____:_____ (time).

☐ Insufficient payment by credit card.

☐ Declined credit card _____:_____ (time).

| Fee code(s) to be applied: | 3005 | $70 |
| --- | --- | --- |
| | _3005_ | _$ 65 -_ |
| | | |
| | | |
| | | |
| Amount in holding fee code: | | $ |
| | 1622/2622 | $ |
| | 1206/2206 | $ |
| | 1999 | $ |

Total remaining due from applicant:          $5_____

RAM Operator____ZJ_____

Rev. 04/10/2013

Defendant's Exhibit 3

# Exhibit 6



UNITED STATES PATENT AND TRADEMARK OFFICE

**Defendant's Exhibit 3**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/710,055 | 02/08/2018 | Mario U. Scorza | |

**CONFIRMATION NO. 4515**

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448

**FORMALITIES LETTER**


*OC000000097544479*

Date Mailed: 02/21/2018

# NOTICE TO FILE MISSING PARTS OF PROVISIONAL APPLICATION

## FILED UNDER 37 CFR 1.53(c)

### *Filing Date Granted*

An application number and filing date have been accorded to this provisional application. The items indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is insufficient.
- Surcharge as set forth in 37 CFR 1.16(g) must be submitted.
  The surcharge is due for late submission of filing fee or cover sheet.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. Small entity discount is in effect. If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)
- $ **140** basic filing fee.
- $ **30** surcharge.
- $( **65**) previous unapplied payment amount.
- $ **105** TOTAL FEE BALANCE DUE.

**Items Required To Avoid Processing Delays:**

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

**This application, which was filed with an indication of micro entity status, fails to meet the requirements for establishing micro entity status because:**

- The certification of micro entity status is unsigned. A certification of micro entity status must be signed by an authorized party under 37 CFR 1.33(b). (Authorized parties include a registered attorney or agent, the sole

Defendant's Exhibit 3

inventor identified as the applicant, or all the joint inventors identified as the applicant except that one joint inventor applicant may sign if appointed to prosecute the application by all the other joint inventors.)

If micro entity status is established in reply to this notice by filing an acceptable Certification of Micro Entity Status, the fees itemized in the SUMMARY OF FEES DUE section of this Notice will be reduced to reflect the 75% micro entity discount, and any previous payment amount may be applied to the discounted fees.

If applicant is not entitled to micro entity status under 37 CFR 1.29, applicant may still qualify for a 50% reduction of fees if small entity status can be established under 37 CFR 1.27.

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice".
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/ttran/

_____



UNITED STATES PATENT AND TRADEMARK OFFICE **Defendant's Exhibit 3**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 62/710,055 | 02/08/2018 | | 65 | | | |

**CONFIRMATION NO. 4515**

**FILING RECEIPT**

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448


OC000000097544478

Date Mailed: 02/21/2018

Receipt is acknowledged of this provisional patent application. It will not be examined for patentability and will become abandoned not later than twelve months after its filing date. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Mario U. Scorza, Waco, TX;

**Applicant(s)**

Mario U. Scorza, Waco, TX;

**Power of Attorney:** None

**Permission to Access Application via Priority Document Exchange:** No

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 02/21/2018

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 62/710,055**

**Projected Publication Date:** None, application is not eligible for pre-grant publication

**Non-Publication Request:** No

**Early Publication Request:** No
** SMALL ENTITY **

page 1 of 3

Defendant's Exhibit 3

**Title**

> This is a small portable hand-held scale that one can stand on to measure their weigh, can be used to take on cruise or anywhere from home

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

### Title 35, United States Code, Section 184

### Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

Defendant's Exhibit 3

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

### *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.