**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVISON DESIGN &** | ) | |
| **DEVELOPMENT, INC. ,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **CA No. 2:23-cv-644** |
| | ) | |
| **MARIO SCORZA ,** | ) | |
| *Defendant.* | ) | **Judge Marilyn J. Horan** |

## Defendant's Exhibit 6

Defendant's Exhibit 6

# IN THE AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| MARIO SCORZA, | § | |
| *Claimant,* | § | |
| | § | |
| V. | § | NO. 01-21-0004-6369 |
| | § | |
| DAVISON DESIGN AND | § | |
| DEVELOPMENT, INC. | § | |
| *Respondent* | § | |

---

## CLAIMANT'S PRE-HEARING BRIEF

---

## I
## INTRODUCTION

Claimant, Mario Scorza, (hereafter "Scorza") contracted with Davison Development and Design, Inc. (hereafter "Davison") for services related to invention development, wherein several sequential agreements were entered into as to facilitate Claimant's introduction into the weight scale market between January 2017 and December 2020.

Scorza, proffers that Respondent, through its agents, simultaneously made assertions known to Davison to be both negligently misleading and mischaracterized, in the best light, and knowingly omitted and willfully conducted to induce Claimant into fee agreements, in a more negative light, carrying practically zero chances, 0.001% chance to be exact, of generating even a modicum of succuss by any measure Davison would like to proffer. As per the Respondent's website, Affirmative Disclosure Statement stating, in part, "[T]he The number of consumers who obtained a written license with a company that is not affiliated with Davison is fifteen (15). **The total number of consumers in the last five years who made more money in royalties or sales proceeds than they paid to Davison, in total, under any and all agreements with Davison, is six (6). This number includes people who first made a profit more than 5 years ago, if they continued to make additional profit during the past five years. The percentage of Davison's income that came from**

1

**royalties paid on licenses of consumers' products is .001%.** These affronts were further compounded by Davison's inability to produce even a semblance of assistance to attempt any remediation of Mr. Scorza's increasingly dire position.

In sum, Davison (1) failed to honor the agreements entered into between parties,' (2) intentionally misrepresented material facts germane to the parties contractual relationship and Claimant's understanding; (3) withheld key facts and figures from Claimant; (4) negligently misrepresented those facts which Respondent *did* disclose (and which Claimant relied upon); (5) utilized those misrepresentation to induce Claimant to make payments to Respondent; (6) failed to observe even a basic common law duty of due care; and (7) caused irreparable harm, through the loss of <u>all</u> patent rights, to Claimant by Respondent's intentional concealments, misrepresentations, and omissions as detailed below.

As early as January 12, 2017, Davison and Mr. Scorza entered into a 'Pre-Development and Representation Agreement' with Davison. According to this Agreement, this agreement,[1] Davison was contractually obligated to both provide a final product (with packaging)[2] and to accept "all reasonable requests" which "are consistent with the goal of solving the problem in a simple and cost effective manner."[3] Neither was accomplished. Now, five years has passed and Davison is close to the age of ninety years old.

Claimant was <u>not</u> provided any sort of product sample and only received renderings which, by all accounts, appear to be only computerized renderings – contrary to Davison's contractual obligation. Moreover, no sample or detailed product packaging was provided to

---

[1] *See* Exhibit 1 Davison_000018-000027

[2] *See* Exhibit 1 Davison_000021, 000205 (1. Services Provided - Section D., Product Sample Finalization, i "Product Sample Finalization: The product and package will be placed together to create the final product sample.")

[3] *See* Exhibit 1 Davison_000023] (4. REPRESENTATIONS, WARRENTIES & COVENANTS - H. Davison agrees to accept all reasonable requests of the Client that are consistent with the goal of solving the problem in a simple and cost effective manner.")

Claimant. Only representations of the exterior were ever presented to claimant.[4] Further, and demonstrably more significant, Davison marked the rendering with the words "Patent Pending."[5] This false designation constitutes "False Marking," as Davison has provided such marking "with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee." 35 U.S. Code § 292.

In addition, Davison, not only did *not* accept Mr. Scorza's "reasonable requests" for assistance, but also managed to completely ignore each and every plea from Claimant on all requests.

This is patently evident in Davison's letter expressing the requisite importance of a Provisional Patent Application[6] and absolute necessity going forward with communications to potentially interested parties together with actual knowledge of the plainly deficient document,[7] said Provisional Patent Application was nonetheless entirely defective for this purpose. Pointedly,_after viewing Mr. Scorza's deficient initial filing of his first provisional patent application submission on March, 16 2017,[8] consisting of only a title and cover sheet, Davison, through Larry Rifkin, ignored Mr. Scorza's original submission deficiencies and request for assistance evidenced on June 30, 2017, with the document and "For: Larry Rifkin What is this???" emblazoned across the top of Mr. Scorza's Notice of Abandonment.[9]

This original appeal for assistance was, *at an absolute bare minimum*, exemplified by Mr. Scorza's simply trying to understand what the USPTO request signified. At this juncture, in light

---

[4] Exhibit 1 Davison_000034
[5] Exhibit 1 Davison_000034, Davison_000094, Davison_000109, Davison_000128, Davison_000144
[6] Exhibit 1 Davison_000040 (Per Davison's own admission, the importance of which is duly acknowledged, "communication with the targeted company will not begin until a copy of the Provisional Application for Patent is on file with the United States patent and Trademark office for your protection[.]")
[7] *See* Exhibit 1 Davison_000050 and Davison_000060 ("Provisional Application Opened" via Davisonlink System via rifkin.larry@davison.com)
[8] *See* Exhibit 2 - '218 application (Filing) consisting of only the invention cover sheet with title, "weighing scale that is portable even in suitcase" dated February 22, 2017.
[9] Exhibit 1 Davison_000029

of the fact that Mr. Scorza had already paid a significant amount of money, Davison could have simply acknowledged receipt and suggested Mr. Scorza contact *any* competent attorney – which they did not. This communication, ignored by Davison, was followed by two ever increasingly desperate voicemails, on July 13, 2017, and August 11, 2017, recounted below:

> July 13, 2017 dictated voicemail:
>
> "Jul 13, 2017 Nancy Heintz sent to Jason Zerbach's voicemail & emailed: sent to your voicemail. Upset recd [sic] *something from gov't regarding patent. Has been calling & emailing Larry no return responses* told him he has been sick. *He wants someone to call him*"[10]
>
> August 11, 2017 dictated voicemail:
> Larry, I have not heard from you are [sic] Davison in way too long. I am going to have to insist that I be better informed of the progress of the Trava-Weigh. *Last I heard was from patent in a letter saying my patent had been rejected. If this was you would you not be alarmed???? If I do not hear from someone soon am going to have to seek remedy. The patent rejection alone is cause for great alarm.*[11]

Claimant, not receiving even an acknowledgement of his previous requests, attempted to refile a second provisional application on February 8, 2018. The USPTO responded with a 'Notice to File Missing Parts' dated February 21, 2018. Mr. Scorza documented the USPTO's payment receipt[12] and then transmitted same to Larry Rifkin with the title: "FOR LARRY RIF.*" on March 12, 2018.[13]

Mr. Scorza then, again, on April 17, 2018, November 12, 2018 and December 2, 2018, sent consecutive emails recounting his concerns, frustrations and misgivings as described in the following emails:

> April 17, 2018
> From: Mario Scorza [mailto:marumberto@aol.com]
> Sent: Tuesday, April 17, 2018 5:44 PM
> To: Larry Rifkin

---

[10] Exhibit 1 Davison_000044 (*emphasis added*)

[11] Exhibit 1 Davison_000077 (*emphasis added*)
[12] Exhibit 1 Davison_000003

[13] Exhibit 1 Davison_000003-000008

Defendant's Exhibit 6

Subject: Re: Project Files

LARRY,
I HAVE BEEN SEARCHING FOR INFORMATION ABOUT DAVISON BUSINESS PRACTICES AND AM NOT FEELING WELL FROM WHAT I AM SEEING. IT HAS BEEN A VERY LONG TIME SINCE I SENT LOTS OF MONEY TO DAVISON FOR MY IDEA! ALL I HAVE GOTTEN IS THAT EVERYTHING IS ON SCHEDULE AND IS NOW GOING TO LICENSING!

LARRY, I HAVE TO TELL YOU IF I DO NOT GET SOME FACTUAL INFORMATION ABOUT WHERE TRAVA-WEIGH IS AM GOING TO HAVE TO SEEK MEANS OF OBTAINING IT! I HAVE TRUSTED YOU FROM THE START AND STILL WANT TO, BUT THIS HAS GONE ON MUCH TOO LONG! I AM SEEING CASE HISTORIES OF OTHERS WHO HAVE GONE THE SAME ROUTE I HAVE AND IT ENDED UP BADLY FOR THEM. SOME SAY DAVISON EVEN TAKES THE IDEA AND PUTS IT UNDER NEW NAME AND THEN PRODUCES IT LEAVING OUT THE ORIGINAL OWNER OF THE PRODUCT.

LARRY, I NEED TO HAVE AN END DATE ON THE TRAVA-WEIGH IMMEDIATELY AS CANNOT GO ANY LONGER ON "IT IS HERE AND IT IS THERE." IF THIS WAS YOU WRITING THIS MAYBE YOU COULD KNOW HOW WE ARE FEELING WAITING ALL THIS TIME. I USED NEARLY 16K OUT OF A FUND FOR MY GRANDSON'S EDUCATION AS HE WILL BE GOING TO COLLEGE NEXT YEAR.

OK, AM WAITING FOR YOUR RESPONSE! YOU MAY HAVE SENT SOMETHING POSITIVE IN YOUR EMAIL LAST BUT COULD NOT OPEN IT.

MARIO[14]

<u>November 12, 2018</u>
"Larry, I have received a document from patent office about "Missing Parts."
"Larry, the patent notice is titled: Notice To File Missing Parts of Provisional Application. If you wish to refer this letter to Frank that is ok, *just need to know something. I am 83 and guess you can see why I have such concerns.*"[15]

<u>December 3, 2018</u>

From: Mario Scorza [mailto:marumberto@aol.com]
Sent: Sunday, December 2, 2018 11:16 AM

---

[14] Exhibit 1 Davison_000044-000045

[15] Exhibit 1 Davison_000045-000046 (*emphasis added*)

To: Vescio, Frank
Subject:
Hello Frank!
Just wanted to ask again about the statement I keep getting from the Patent Office
about the Status of the Application. *When I get these over the past two years I
contact Larry, and now you, to determine if there is anything significant about
this*. Seems is not important so I do no [sic] pursue it any further. *I have to assume
from my inquiry Davison would advise if there was a need to take some action
accordingly*.

Best
Mario[16]

Despite Mr. Scorza's implorations to the company with which he contracted to "develop
his ideas," none of the previous voicemails or emails were ever answered or addressed, or even
mentioned, by Davison. However, Davison did immediately supply the below email, bereft of
any mention of Mr. Scorza's patent entreaties, inviting and enticing Mr. Scorza to enter into yet
two additional agreements, a Multiple Company Campaign Agreement and an Inventomercial
agreement, in addition to the original Pre-Development and Representation agreement and New
product Sample Agreement. This telling email is Frank Vescio's reply to Mr. Scorza's December
2, 2018, email below in which Davison conveniently supplies appended, prepopulated credit card
information:

From: Vescio, Frank
Sent: Thursday, December 13, 2018 6:12 AM
To: Mario Scorza
Subject: What's your Plan B?

Hi Mario,
As a follow-up to our call, we discussed an Inventomercial (IM). It's great to have
a commercial of the product to accompany a presentation to targeted companies
for them to review and also forward to their customers (retailers) for feedback
because the IM commercial describes both the problem and solution (like those
As Seen on TV commercials).

I've attached a link to an example of an IM commercial. The Inventomercial of
the Meatballer The commercial is an example of the format a typical
Inventomercial follows.

---

[16] Exhibit 1 Davison_000046 (*emphasis added*)

We also discussed a Multiple Company Campaign [MCC] service by where we contact up to 45 companies (over a 1 year period) with a confidential teaser about your idea and communicate (and disclose) information to only those companies that sign a Confidential Registration Form to hear more about an idea and see presentation material. We would provide you with any interested party responses (and offers) for your review. Our current fee to present an idea individually to 1 company at a time is $395.00. So, up to 45 companies could represent a total fee of over $17,000.00 doing it 1 company at a time.

If you decide to move forward with both the Inventomerical (IM) and the MCCA services, I can reduce the price of the IM by $500.00 to $1,995.00 (normally that fee is $2,495.00) and can reduce the price of the MCC service by $3,000.00 to $3,995.00 (normally that fee is $6,995.00). I'll forward you a proposal that outlines each service in detail.

Those that need to buy themselves some time with funding; put down a small $100.00 refundable retainer to lock in the savings and keep the file active in our system. You can do this on the Trava-Weigh - portable scale idea.

To take advantage of this offer, you can mail a check, wire the funds or complete the credit card information below when you reply to this email.
CARD TYPE (VISA, MasterCard or AMEX):
CARD NUMBER:
EXPIRATION DATE:
3 DIGIT CODE (on back of card):
CARD HOLDER NAME (as it appears on the card):
AMOUNT:

It's your decision. I'm ok either way, just let me know by December 18th, 2018 as the project will not qualify for this savings offer after that date.
I'll call you on December 14th at 11:30PM (your time) to discuss your Plan B.

It is therefore evident, among other causes of actions (detailed below), that Respondent Davison failed in their duty to uphold key sections of the several contracts that they themselves developed, did breach said contracts and caused direct harm to Mr. Scorza. Breach of Contract is defined where there is established (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445, 137 A.3d 1247, 1258 (2016). This harm includes, but is not limited to, the complete preclusion from Mr. Scorza's pathway toward receiving any

patent rights, where each application failed to achieve even "Patent Pending" status due to their many deficiencies[17] as is outlined and detailed in our Patent Expert Report. This injury to Mr. Scorza was further compounded where, despite his best efforts and interrogatories, no help was forthcoming and fees were continuously cajoled and enticed from Mr. Scorza's fixed income and savings.

## II.
## CAUSES OF ACTION

### A.    Common Law Fraud

Common Law Fraud requires (1) a misrepresentation; (2) a fraudulent utterance of it; (3) the maker's intent that the recipient be induced thereby to act; (4) the recipient's justifiable reliance on the misrepresentation; and (5) damage to the recipient proximately caused. *Lokay v. Lehigh Valley Co-op. Farmers, Inc*., 342 Pa.Super. 89, 96, 492 A.2d 405, 408 (1985).

Davison holds itself out as a "Product Development Company," but this is, on its face, a fraudulent and false misrepresentation of the "business" that Davison conducts. Davison, in fact, is primarily in the business of preying upon a discrete class of "garage" and "one-time" unsophisticated inventor/consumers, fraudulently depicting their enterprise as a means to develop inventor ideas into inventions and thereby allow those consumers with novel ideas and inventions to see their ideas and inventions come to fruition. Yet, nothing could be further from the truth. By Davison's own admission, a laughable 0.001% of Davison's income is actually derived from royalties paid on licenses.[18] Conversely, 99.999% of Davison's income *is* derived from fleecing consumers via fruitless consumer enticements and wholly one-sided "consumer" contracts.

This evidentiary information, required to be supplied by Davison through a settlement with the Federal Trade Commission, was ultimately mandated in conjunction with "Project

---

[17] *See* Exhibit 3 Patent App 62/601,218 and Patent App 62/710,055

[18] https://www.davison.com/legal/ads/ (Affirmative Disclosure Statement)

Mousetrap"—conducted by the FTC in conjunction with the Pennsylvania Attorney General's Office under the FTC's Telemarketing Sales Rule. The case specifically targeted Davison for exploiting those inventors hoping to "build a better mousetrap."[19] Ultimately, while the FTC ordered Davison to pay twenty-six million dollars for their unscrupulous practices,[20] their key demographic affords a steady churn of consumers enticeable to supply thousands of dollars with no obligation to show any results. Without question Davison remains undeterred in its highly profitable modus operandi wherein hundreds of thousands of consumers' fees are collected up front, no items are produced, negligible royalties contracts ever materialize, and consumers leave with the same items they entered into their relationship with–an idea, hope, and a dream. The only difference is the idea, hope, and dream–after an unfortunate relationship with Davison–is now bereft of <u>any</u> worth.

    While Davison would have you believe that they are in the business of developing products and assisting inventors, that is not the business model. Davison, in fact and ironically, the model of assisting inventors is disincentivized where the consumer itself is the product. Due to Davison's fraudulent misrepresentations, numerous funds paid by Mr. Scorza were systematically collected and basic assistance was not provided. Therefore, Davison was enriched.

    Davison indeed made fraudulent misrepresentations with actual knowledge of these misrepresentations with the intent of inducing Mr. Scorza to pay Davison over several years. Davison acted on the lucrative incentive to omit, obfuscate, and misinform Mr. Scorza, did consciously engage in profitable nonaction, knew that Mr. Scorza would rely upon these actions (and nonactions) which Mr. Scorza trusted to his detriment.

---

[19] https://www.ftc.gov/news-events/news/press-releases/1997/07/ftcstate-project-mousetrap-snares-invention-promotion-industry

[20] https://www.ftc.gov/news-events/news/press-releases/2006/04/court-halts-bogus-invention-promotion-claims

Defendant's Exhibit 6

**B.      Pennsylvania Unfair Trade Practices and Consumer Protection**

Fraud and deceptive conduct are alternative ways to establish a violation of the catch-all provision of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. 73 Pa. Stat. Ann. § 201-2(4)(xxi). The test for deceptive conduct under the catchall provision of Pennsylvania's Unfair Trade Practices and Consumer Protection Law is whether the conduct has the tendency or capacity to deceive; this test is a lesser, more relaxed standard than that for fraudulent or negligent misrepresentation. 73 Pa. Stat. Ann. § 201-2(4)(xxi). The catchall provision of Pennsylvania's Unfair Trade Practices and Consumer Protection Law imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding; neither carelessness nor intent is required when a cause of action is premised upon deceptive conduct. 73 Pa. Stat. Ann. § 201-2(4)(xxi). Under the catchall provision of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, deceptive conduct during a consumer transaction that creates a likelihood of confusion or misunderstanding and upon which the consumer relies to his or her financial detriment does not depend upon the actor's state of mind. 73 Pa. Stat. Ann. § 201-2(4)(xxi). In *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637 (Pa. 2021) the Pennsylvania Supreme Court, upheld the ruling of the Superior Court and decided that the catchall provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) imposes strict liability on businesses, so the consumer need not establish that the business was negligent or acted intentionally.

Here due to Davison's fraud, Pennsylvania's Unfair Trade Practices and Consumer Protection Law applies because it is a lesser standard of care as per the test required, a more relaxed standard than that for fraudulent or negligent misrepresentation. As a result, the Pennsylvania Supreme Court would impose strict liability and find that the business was negligent and acted intentionally. Davison provided a service to Scorza, the conduct that Davison, a commercial vendor, engages in is deceiving and creates a likelihood of confusion or

misunderstanding. Moreover, Pennsylvania Law does not consider the Davison's intention or state of mind when confusing the a consumer, like Scorza, who relied on services to help take an idea to market.

### C.  Fraud By Concealment and Non-Disclosure/Omission

Davison, by means of pushing meaningful information down to the furthest depth of their website, actively seeks to bury the above information from potential and current consumers wherein even a detailed analysis and review of Davison's website fails to inform even the most discriminating consumer of Davison's true business model and means of generating income. Moreover, had Davison not been ensnared by the FTC sting operation, Claimant would have little to no means to discern Davison's despicable reputation, ongoing nefarious activity or past (and current) discretions.

Under Pennsylvania law, a plaintiff may assert a fraudulent concealment claim when the defendant concealed or intentionally prevented the plaintiff from discovering material information. *LEM 2Q, LLC v. Guar. Nat. Title Co.*, 144 A.3d 174, 181 n. 10 (Pa. Super. 2016); *Woodward v. Dietrich*¸548 A.2d at 311-16. Davison, in its attempts to conceal information and omit material facts did fail to disclose or clarify facts that Mr. Scorza required to make an informed decision, did not qualify any of their incomplete representations, did not observe the contractual duty owed to Mr. Scorza, and failed to disclose facts basic to their transactions on at least four occasions—January 12, 2017, March 29, 2017, December 14, 2018, and December 19, 2018.

### D.  Negligent Misrepresentation and the Texas Invention Development Services Act

Davison, through its addendum to its Pre-Development and Representation Agreement dated January 12, 2017, did provide the Texas 'Invention Development Services Act' required disclosure and its mandatory inclusions.[21] *See* Texas Invention Development Services Act Business and Commerce Code Title 4; Business Opportunities and Agreements Chapter 52.

---

[21] *See* Exhibit 1 Davison_000330 and Davison_000342

11

Invention Development Services Subchapter A. In this disclosure Davison did positive recite that, since 1989, a total of "**ONE HUNDRED FIFTY THOUSAND NINE HUNDRED FOURTEEN (150,914). THE TOTAL NUMBER OF CUSTOMERS KNOWN BY THIS INVENTION DEVELOPER TO HAVE RECEIVED, BY VIRTUE OF THIS INVENTION DEVELOPER'S PERFORMANCE AN AMOUNT OF MONEY IN EXCESS OF THE AMOUNT PAID BY THE CUSTOMER TO THIS INVENTION DEVELOPER IS THIRTY-FIVE.**"[22] Yet, by Davison's own admission, as per the Affirmative Disclosure Statement dated April 11, 2022, those numbers supplied by the above do not conform to those figures available from Davison's own AFFIRMATIVE DISCLOSURE STATEMENT. In this document Davison states the following:

> "The total number of consumers who submitted new product ideas to Davison during the past five years is five hundred ninety one thousand eight hundred fifty eight (591,858) Davison does not provide evaluation of commercial potential; thus, it has provided no positive or negative evaluation of this or any other product idea in the last five years. The total number of consumers who were offered a Pre-Development agreement (or similar contract for research services) is two hundred twenty four thousand seven hundred sixty two (224,762). The total number of consumers who were offered a Contingency Agreement (or other contract for licensing representation) is two hundred twenty four thousand seven hundred sixty two (224,762). The total number of consumers who purchased a Pre-Development Agreement or similar contract for research services is forty one thousand seven hundred sixty four (41,764). The total number of consumers who signed a Contingency Agreement or other licensing representation agreement is forty one thousand seven hundred sixty four (41,764). The total number of consumers who were offered a New Product Sample Agreement (or any other contract for design services for a virtual or a product sample) is thirty six thousand four hundred twenty six (36,426). The number of consumers who signed a New Product Sample Agreement or similar agreement is eighteen thousand one hundred ninteen (sic) (18,119). The number of consumers who obtained a written license with a company that is not affiliated with Davison is fifteen (15). The total number of consumers in the last five years who made more money in royalties or sales proceeds than they paid to Davison, in total, under any and all agreements with Davison, is six (6). This number includes people who first made a profit more than 5 years ago, if they continued to make additional profit during the past five years. The percentage of Davison's

---

[22] *See* Exhibit 1 Davison_000330

income that came from royalties paid on licenses of consumers' products is .001%.

Therefore, as of January 12, 2017, Davison would have Claimant believe that Davison, even taking the lesser "Pre-Development agreement (or similar contract for research services) is two hundred twenty-four thousand seven hundred sixty-two (224,762)" figure, over the previous five years, identical to those offered Contingency Agreements, was greater than the 150,914 figure in the previous <u>thirty-three years</u> (1989-2017) of operation of 150,914. This is absurd on its face. This greatly discounted figure, used to calculate those individuals receiving monies in excess of their input, is therefore a negligent misrepresentation, at its best, and intentionally misleading, at its worst in determining the success of consumers. If the opposite is true, and a larger number of consumers were contracted in the thirty-three years before Claimant entered into his initial contract in 2017, the percentage of successful consumers would be diluted and diminished greatly. In either case, if the representation *was* negligent, Davison ought to have known its falsity, Claimant relied upon this falsity and direct injury resulted. Alternatively, if this misinformation *is* intentional, this is a direct violation of the Texas Invention Development Services Act which results in a Voidable Contract, a Private Cause of Action, Deceptive Trade Practices, and a Presumption of Injury.  Tex. Bus. & Com. Code §§ 52.151-3, and 52.155.

E.     **Fraud in the Inducement**

Under Pennsylvania law, plaintiffs are required to prove the following elements in a claim for fraud in the inducement: (1) a representation; (2) material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to its truth; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury. *Broederdorf v. Bachelor*, 129 F.Supp.3d 182, 198 (E.D. Pa. 2015). Successfully pled, such contracts are voidable. *Giannone v. Ayne Institute*, 290 F.Supp.2d 553, 564 (E.D. Pa. 2003).

In terms of the material misrepresentations above, Davison did present material misrepresentations that were made falsely with knowledge of its falsity or recklessness as to its truth that intended to mislead Mr. Scorza, who justifiably relied upon such misrepresentations to his great disadvantage and harm.

F.    **Common Law Negligence**

The elements of a cause of action in negligence are as follows: (1) a duty recognized by law, requiring the actor to conform to a certain standard with respect to the injured party; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the interests of another. *Felli v. Com., Dep't of Transp.*, 666 A.2d 775, 777 (Pa. Commw. Ct. 1995).

Ultimately, Davison owed a basic duty to Mr. Scorza—a duty they failed several times on many occasions to both observe and fulfill. Due to Davison's complete disregard for Mr. Scorza's most basic inquiries and petitions for help, specifically included in Davison's several agreements, in the face of Davison's contractual duties to observe same, Davison chose to ignore and not assist Mr. Scorza, while continuing to entice and cajole his continued financial input. This has resulted in a complete squandering of Mr. Scorza's ideas in addition to the absolute inability for Mr. Scorza to <u>ever</u> regain those rights which Davison has so carelessly and brazenly allowed to inexplicably and inexcusably dissipate, all in the name of profit.

### III.
### EXCULPATORY CLAUSE

Respondent attempts to rely upon a boiler plate contractual provision to escape all potential liability whatsoever.  Respondent argues that the clause in question is a "limitation of damages" clause, citing no authority and making no legal arguments.  However, clauses that purport to contractually limit damages are exculpatory clauses by definition.  The legal test applies to any "exculpatory language." *Tayar v. Camelback Ski Corp., Inc.*, 616 Pa. 385, 47 A.3d 1190, 1196 (2012); *Topp Copy Products, Inc. v. Singletary*, 533 Pa. 468, 471, 626 A.2d 98,

99 (Pa. 1993).  The clause simply states that "In no event will Davison be liable to Client for any consequential, exemplary, incidental or punitive damages, including lost opportunities or lost profits."  The clause purports to exculpate Davison for any consequential or incidental damages, including lost profits.  It also purports to exculpate against exemplary and punitive damages. This begs the question, what other damages would there be flowing out of a contract of this nature?  The breach of a contract to develop an invention would only involve consequential or incidental damages, and possibly lost profits.  There are no other kinds of damages, other than those which have been purportedly disclaimed.  The clause is clearly an exculpatory clause and is disfavored at law.

"Those clauses are disfavored and must meet certain conditions to be enforceable. First, the clause must not contravene public policy. Second, the contract must relate solely to the private affairs of the contracting parties and not include a matter of public interest. Third, each party must be a free bargaining agent. In addition, an exculpatory or indemnity clause will still not be enforced unless it is clear that the beneficiary of the clause is being relieved of liability only for his/her own acts of negligence. The clause must be construed strictly and the contract must state the intention of the parties with the greatest particularity. Furthermore, any ambiguity must be construed against the party seeking immunity, and that party also has the burden of proving each of the prerequisites to enforcement." *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195 (3rd Cir. 1995), *citing Topp Copy*, 626 A.2d at 99.  Furthermore, the burden of establishing immunity is upon the party invoking protection under such a clause.  *Tayar*, 47 A.3d at 1196.

As Respondent readily concedes, and indeed affirmatively argues, the clause purports to exculpate Respondent from any liability whatsoever.  However, clauses that exculpate liability for gross negligence and higher levels of fault are void and against Pennsylvania public policy. *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 20-21 (Pa. 2019), *citing Tayar*, 47 A.3d at 1203.  By

Respondent's own arguments, the clause is void as against public policy. The clause is unenforceable.

The clause also involves a matter of public interest. As discussed, *supra*, the Texas Invention Development Services Act requires specific disclosures as to the success rate of the development services. The disclosures were false and conflicted with those made on Respondents' website. As discussed, Davison's success in developing inventions was vanishingly small. Respondents' failure to make statutory disclosures involved a matter of public interest. Accordingly, the exculpatory clause is unenforceable.

The clause fails to address and does not explicitly disclaim any liability flowing out of its own negligence, gross negligence, recklessness, or intentional acts. To be enforceable, "the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties," that is to say, the clause must specifically establish which conduct is being disclaimed from liability. *Tayar*, 47 A.3d at 1196; *Topp Copy*, 626 A.2d at 99. The clause simply states the "The liability of the parties for any and all claims…" is limited. The clause fails to specify which levels of fault and what kinds of behavior are being disclaimed. The text of the language lacks any semblance of "greatest particularity," puts nothing "beyond doubt by express stipulation," and contains absolutely nothing but "words of general import." As such, the clause fails to meet the test for enforceability under Pennsylvania law. The clause is unenforceable.

Finally, Respondent carries the burden of proof to establish that the exculpatory language is enforceable under Pennsylvania law, a burden that respondent does not and cannot meet. The clause is simply unenforceable.

Respectfully Submitted,

*/s/ Stacey L. Barnes*
Stacey L. Barnes
sbarnes@lewisbarnes.com
Bradley A. Nevills
bnevills@kmd.law
William Yarbrough
wyarbrough@kmd.law
KEARNEY, MCWILLIAMS & DAVIS, PLLC
55 Waugh, Suite 150
Houston, Texas 77007
Phone: (713) 936-9620
Fax: (713) 936-9321
**Attorneys for Claimant**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 23, 2022, a true and correct copy of the foregoing instrument was served upon the following counsel of record:

Justin T. Barron                              ***Via E-mail and AAA Filing System***
BARRON LAW OFFICE LLC
P. O. Box 493
Valencia, PA 16059
jbarron@justinbarronlaw.com
**Attorney for Respondent**

*/s/ Stacey L. Barnes*
Stacey L. Barnes

17

FOR LARRY RICKY

3 - 12

EXHIBIT 1

Defendant's Exhibit 6

Davison_000003

| 02/12/2018 | Check #3254: Check | | |
|---|---|---|---|
| 02/12/2018 | USPTO PAYMENT 3250 | $85.00 | $4,860.09 |
| 02/12/2018 | | $57.63 | $4,945.09 |
| 02/12/2018 | | $42.22 | $5,002.72 |
| 02/12/2018 | | $19.97 | $5,044.94 |

[<<] [>>]

Have a question? Check our FAQs  |  We value your opinion. Make a suggestion



**FDIC** (https://www.fdic.gov/)     (http://portal.hud.gov/hudportal/HUD)

Sorry —
Frank USPTO shows
they accepted payment.
Maceo

**EXHIBIT 1**

Defendant's Exhibit 6



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/710,055 | 02/08/2018 | Mario U. Scorza | |

**CONFIRMATION NO. 4515**

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448

**FORMALITIES LETTER**


*OC000000097544479*

Date Mailed: 02/21/2018

## NOTICE TO FILE MISSING PARTS OF PROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(c)

#### *Filing Date Granted*

An application number and filing date have been accorded to this provisional application. The items indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

• The statutory basic filing fee is insufficient.
• Surcharge as set forth in 37 CFR 1.16(g) must be submitted.
  The surcharge is due for late submission of filing fee or cover sheet.

### SUMMARY OF FEES DUE:

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. Small entity discount is in effect. If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

• $ **140** basic filing fee.
• $ **30** surcharge.
• $( **65**) previous unapplied payment amount.
• $ **105** TOTAL FEE BALANCE DUE.

### Items Required To Avoid Processing Delays:

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

**This application, which was filed with an indication of micro entity status, fails to meet the requirements for establishing micro entity status because:**

• The certification of micro entity status is unsigned. A certification of micro entity status must be signed by an authorized party under 37 CFR 1.33(b). (Authorized parties include a registered attorney or agent, the sole

Davison_000004

inventor identified as the applicant, or all the joint inventors identified as the applicant except that one joint inventor applicant may sign if appointed to prosecute the application by all the other joint inventors.)

If micro entity status is established in reply to this notice by filing an acceptable Certification of Micro Entity Status, the fees itemized in the SUMMARY OF FEES DUE section of this Notice will be reduced to reflect the 75% micro entity discount, and any previous payment amount may be applied to the discounted fees.

If applicant is not entitled to micro entity status under 37 CFR 1.29, applicant may still qualify for a 50% reduction of fees if small entity status can be established under 37 CFR 1.27.

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

Replies should be mailed to:

> Mail Stop Missing Parts
> Commissioner for Patents
> P.O. Box 1450
> Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice".
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

> Questions about the contents of this notice and the
> requirements it sets forth should be directed to the Office
> of Data Management, Application Assistance Unit, at
> **(571) 272-4000 or (571) 272-4200 or 1-888-786-0101.**

/ttran/

Davison_000005

**EXHIBIT 1**
Defendant's Exhibit 6



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 62/710,055 | 02/08/2018 | | 65 | | | |

**CONFIRMATION NO. 4515**
**FILING RECEIPT**

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448


OC000000087544478

Date Mailed: 02/21/2018

Receipt is acknowledged of this provisional patent application. It will not be examined for patentability and will become abandoned not later than twelve months after its filing date. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Mario U. Scorza, Waco, TX;

**Applicant(s)**

Mario U. Scorza, Waco, TX;

**Power of Attorney:** None

**Permission to Access Application via Priority Document Exchange:** No

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 02/21/2018

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 62/710,055**

**Projected Publication Date:** None, application is not eligible for pre-grant publication

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

Davison_000006

**Title**

> This is a small portable hand-held scale that one can stand on to measure their weigh, can be used to take on cruise or anywhere from home

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

### Title 35, United States Code, Section 184

### Title 37, Code of Federal Regulations, 5.11 & 5.15

#### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

Davison_000007

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

Davison_000008

EXHIBIT 1

Defendant's Exhibit 6

RECEIVED   MAY 16 2017

March 23, 2017

# DAVISON™

## NEW PRODUCT SAMPLE AGREEMENT

This agreement ("Agreement") made and entered into this by and between Davison Design & Development, Inc. ("Davison"), a Pennsylvania Corporation, its successors and/or assigns, having its principal office at 595 Alpha Drive, Pittsburgh, Pennsylvania, and the Client ("Client") identified below:

| | |
|---|---|
| Name(s) | Mario Scorza |
| Address | 612 Highland St |
| City, State, Zip | West, TX 76691 |

Whereas, the Client has originated, developed, or owns the idea or product known as "trava-weigh" ("Idea"); and

Whereas, the Client desires to retain Davison to develop the idea into a product sample upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual and dependent covenants and agreements contained herein, the Client and Davison agree as follows:

## 1. SERVICES PROVIDED

During the term of the Agreement, Davison's professional development services will include some or all of the following:

### A. Creating Presentation Materials:

i) Development Team Orientation: The Development Team will examine the proposed features and functions of the Idea, if any, and the targeted corporation's manufacturing and marketing capabilities.

ii) Problem Identification: The Development Team will clearly identify the problem solved by the Idea, thus insuring that the Idea's objective is clearly understood.

iii) The Development Team will review the Idea, the problem to be solved, and the targeted corporation's manufacturing and marketing capabilities to begin the blending and integrating process. The Development Team may conduct additional research concerning the Idea and the targeted corporation.

iv) Preliminary Product Design: Development Team "brainstorming" sessions will be held to uncover product design solutions that blend with the targeted corporation's manufacturing capabilities. The ergonomics and aesthetics of the product are also taken into consideration. This subjective process often results in the Development Team making modifications and enhancements, which are sometimes

*p.d Debit*

A better way to invent

Davison_000018

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1,800,540,5490 | International 412.967.0124 | Fax 412.387.1348

EXHIBIT 1
Defendant's Exhibit 6



**DAVISON™**

substantial, to the proposed solution or the preliminary design submitted by Client, particularly if Client's proposed design is not a cost effective solution to solving the problem outlined by the client, does not reflect current manufacturing techniques or may be in conflict with products patented or on the market.

v) Preliminary Package Design: Package Development Team "brainstorming" sessions will be held to uncover package design solutions that resemble the targeted corporation's product line. The package's communication will also be considered to achieve quick product identification.

vi) Integrated Product Rendering: The product design and package design will be brought-to-life to look real in a virtual three dimensional environment. A full color spectrum print that resembles what the product sample will look like will be sent to the Client for approval, which shall not be unreasonably withheld by Client, before creating the physical product sample. Unless requested by a potential licensee, no changes will be made to the product and package designs after Client has approved them.

## B. Creating The Product Sample

i) Product Sample Orientation: The analysis of the project will be applied to create a cost efficient and effective production process. Our exclusive development process will ensure that the product attempts to reflect, as closely as reasonably possible, the targeted corporation's manufacturing methods.

ii) Production Drawings and/or CAD (Computer Aided Drawings) Illustrations: The product's manufacturing specifications will be entered into a computer program, if appropriate for this project. This will be used to generate production drawings for component quoting and/or for the targeted corporation's review. The drawings will be printed for review, analysis and use.

iii) Creation of STL,DXF or G-Code Files (Computer Software Developed): This is a sophisticated computer process that transfers production drawings and/or CAD drawings into a computer code to transfer the data to the code used by the shop's machinery to produce all or parts of the final product sample.

iv) Circuit Design Assembly: If applicable to your particular project, Davison will utilize a proprietary software circuit board design application for schematic capture, circuit simulation, PCB layout and autorouting. High quality software design tools can create more efficient use of limited board space and reduce overall production costs in the final design.

v) Machine Product Sample: This stage of development involves the process of building the product sample. It includes the machine set up, preparation of the raw materials and then machining or fabricating the necessary parts. Pre-manufactured components, known as Original Equipment Manufacturer ("OEM") components, may be purchased and used for a portion or all of the parts utilized in the sample. Davison is not required to produce production drawings, CAD drawings or G-code files for OEM parts.

vi) Parts Preparation/Finishing: The product sample will have a professional appearance with the

**A better way to invent**

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348

Davison_000019

EXHIBIT 1
Defendant's Exhibit 6



DAVISON™

appropriate finishes applied. The finishing shop will address this issue and apply the finishes to the product sample.

vii) Product Sample Assembly: The finished or OEM parts will be assembled to create a complete product sample. The sample is for demonstration purposes and may differ in appearance, size, materials, performance and other characteristics from the type of final licensed product built by a manufacturer in full production.

viii) Photography: For documentation purposes, photographs of the product sample will be taken and securely filed.

## C. Creating The Packaging Sample

As appropriate, the following tasks will be performed for your project. Please note that some tasks may not be necessary.

i) Packaging Team Orientation: This is a team meeting to determine the appropriate packaging style to merchandise the product. There will be an analysis of all known styles and one will be designed that best fits the product.

ii) Package Design & Engineering: The product size, weight and level of fragility will be analyzed. The proper gauge and internal structural components will be designed to best protect the product from damage. The package will also be designed in order to aid a potential manufacturer to palletize the product properly as well as to aid in merchandising the product.

iii) Packaging Production Drawings and\or CAD (Computer Aided Drawings) Illustrations: The package's manufacturing specifications will be entered into a packaging computer program, as appropriate. This will be used to generate packaging production drawings.

iv) Creation of a G-Code files (Computer Software): This is a sophisticated computer process that transfers production drawings into computer code that is programmed into machinery to produce the final packaging sample.

v) Machine Packaging Sample: This stage of development involves the process of cutting, perforating and creasing the packaging material. It includes the machine set up, preparation of the packaging material and then machining and fabricating the necessary parts.

vi) Packaging Preparation Finishing: The machine packaging sample will have a professional appearance with the appropriate images applied. The packaging shop will address this issue and apply the images to the packaging.

vii) Packaging Sample Assembly: The finished package will be assembled to create a complete packaging

A better way to invent

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348

Davison_000020

EXHIBIT 1
Defendant's Exhibit 6



sample. The packaging sample is for demonstration purposes and may differ from the type of final packaging built by a corporation in full production.

viii) Photography: For documentation purposes, photographs of the packaging sample will be taken and securely filed.

## D.  Product Sample Finalization

i) Product Sample Finalization: The product and package will be placed together to create the final product sample.

ii) Product Sample Integrity Review: The product sample and package are reviewed by a quality assurance team to verify that the final product sample accurately represents the design approved by Client. The product design approved by Client and depicted in the Integrated Product Rendering may differ from the product sample constructed. The sample may have different characteristics intended for ease of demonstration, shipment, display, alteration, disassembly or component viewing by a potential licensee.

iii) Prepare Shipping Container: A shipping container will be obtained or built to protect the Product Sample during shipment.

## E. Production Quotes

Production Quotes: If and/or when the targeted corporation decides to acquire the Idea, Davison will work with the corporation to establish production quotes, if requested by the corporation.

## F. Information for Provisional Patent Application

Davison will develop and provide descriptive information that the Client may find useful in filing a Provisional Patent Application in the United States. This information is provided after the Client approves the virtual reality print of the product sample design and the product sample is constructed. The Client is solely responsible for the sufficiency, completion and submission of any final application, United States Patent & Trademark Office form PTO/SB/16, and any other patent or trademark applications that may be necessary.

## G. Executive Summary

Executive Summary: The Client will be provided with a packet of information that will include a summary of the problem solved by the idea, the product sample's key functional features and the computerized drawings of the components manufactured by Davison. A full color photograph of the sample and its

A better way to invent
Davison_000021
Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348

EXHIBIT 1
Defendant's Exhibit 6



packaging is included in the Executive Summary.

### H. Use of Client-Provided Material

Davison may use all or part of any materials submitted to Davison by Client, including a prototype or parts contained in a prototype, as the basis for the design of a product sample or as actual components to the final product sample. Client consents to the disassembly, copying, use, modification, destruction or alteration of any materials submitted by Client to Davison and understands that Davison has no obligation to return such materials or to maintain them in the condition they were in when originally sent to Davison by Client.

### 2. TERM OF THE AGREEMENT

The term of this Agreement shall commence on the date that Davison receives the retainer provided in Section 3A and a complete properly signed Agreement and all other documents requested by Davison. The Agreement will then remain in force until the completion of the product sample.

### 3. RETAINER AND ROYALTY

A. In consideration for all of the services provided by Davison to the Client during the term of this Agreement, the Client agrees to compensate Davison in United States dollars by selecting one of the options below and placing his or her initials next to the chosen option. In the event that Client does not initial a choice, Client agrees to be deemed to have chosen Option 4:

Option 1  $165.00 U.S. dollars per hour plus expenses.
Option 2  $14,757.25 U.S. dollars
Option 3  $12,757.25 U.S. dollars and a 5% royalty assigned to Davison.
Option 4  $10,757.25 U.S. dollars and a 10% royalty assigned to Davison.

B. Davison hereby pledges that the selected option in Section 3A will be kept in the strictest confidence from all parties, including the development staff of Davison.

C. The retainer amount selected in Section 3A shall be considered a full retainer for all services described in this Agreement. In further consideration for services rendered by Davison under this Agreement, the Client agrees and understands that Davison shall be entitled to receive the royalty percentage the Client selected in Section 3A on all revenues as defined in Section 3D received by the Client or Davison, whichever is the case, from any individual, corporation or other entity. The royalties described in options 3 and 4 are in addition to royalties granted under any other agreement between the parties.

A better way to invent

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0124 | Fax 412.387.1348

Davison_000022

EXHIBIT 1
Defendant's Exhibit 6



**DAVISON**™

D. "Revenues" shall mean the total amount of license fees, royalties, sale proceeds or other forms of consideration received as a result of the sale, license or other commercialization of the Idea. The percentage payable to Davison under this Agreement shall be paid as and when Revenues are paid by licensee or buyer. The royalty assignment to Davison is applicable only to Revenues due to Client in excess of any fees paid by Client to Davison for services under this and any other contract.

E. The royalty obligation selected by the Client and described in Section 3A represents a continuing obligation of the Client to Davison and will survive the termination of this Agreement.

## 4. REPRESENTATION, WARRANTIES & COVENANTS

The Client and Davison, as applicable, represent and warrant to and agree as follows:

A. The Client shall respond in a prompt and complete manner to all reasonable requests for information and assistance made by Davison during the development of the Idea. Client agrees that Davison may set, and inform Client of, deadlines for Client to submit comments on designs prepared by Davison and that in the absence of timely receipt by Davison of Client's comments all designs are deemed accepted and approved by Client.

B. The Client warrants to Davison that the Client, to his/her best knowledge and belief, is the sole owner of the Idea and that no other entity or individual has any rights or interest in the Idea.

C. The Client warrants to Davison that all information provided to Davison is true, complete and accurate to the best of the Client's knowledge.

D. The Client shall not hereafter sell, license, pledge, mortgage, place in trust, transfer, assign, or otherwise convey the Idea or any rights in the Idea, to any entity or individual, without first informing them of the terms of this Agreement and giving Davison prior written notice.

E. The Client warrants to Davison that he/she is of legal age and has the legal capacity to enter into this Agreement.

F. The Client reserves the right to review all materials prepared by Davison in regard to the development of the Idea. The items to be delivered for Client's possession pursuant to this Agreement are the Integrated Product Rendering and the Executive Summary. Client intends that Davison will retain possession of the product and packaging sample, unless Client requests otherwise in writing.

G. It is hereby acknowledged by the Client that Davison's royalty/commission percentage is not, in any form, an ownership interest in the Idea.

H. Davison agrees to accept all reasonable requests of the Client that are consistent with the goal of solving the problem in a simple and cost effective manner. Davison reserves the right to redesign the

A better way to invent

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1-800.540.5490 | International 412.967.0124 | Fax 412.387.1348

Davison_000023

EXHIBIT 1
Defendant's Exhibit 6



**DAVISON**™

product to take advantage of a cost effective solution to the problem for which the product was intended and to reflect current manufacturing techniques. Client agrees to accept all reasonable design modifications, parts selections and enhancements recommended by Davison.

I. Davison promises to keep all aspects concerning the Client, the Idea and/or the terms of this business relationship in general, and this Agreement in particular, in the highest level of confidentiality. All materials in said connection whether written or oral are subject to the Client's approval prior to the release of any information.

### J. Acknowledgments.

i) Davison has made no representations concerning the likelihood that the Client will receive any financial gain from the development of the Idea.

ii) Client acknowledges that Davison has not and will not evaluate the commercial potential of the Idea and that Davison has not disclosed it to anyone. Thus, there is no way of knowing at this time if the targeted corporation will license, buy or pay royalties for the Idea once it has been developed. Client acknowledges that Davison has made no representations concerning the likelihood of licensing, marketing, royalty payments or profitability. Davison's offer of services for upfront consideration and for a portion of possible royalties is not a representation by Davison that the Idea has merit or that development will result in a license or payments to Client.

iii) Only official government agencies can award a patent, trademark and/or copyright. Davison is not a law firm. Davison is not providing, and Client is not relying upon Davison for, legal advice. Client acknowledges that he/she is responsible for patenting his/her Idea and that Davison has made no representations concerning the patentability of the Idea or its ultimate design. Solely as a courtesy and convenience to Client, Davison provides the following information from the U.S. Patent and Trademark Office concerning provisional patents:

a) The Client should treat his/her Idea as a confidential subject in order to protect his/her legal rights until such time as a Utility Patent, Design Patent, Trademark and/or Copyright is issued.

b) A Provisional Patent Application establishes an official United States patent application filing date for the Idea.

c) A Provisional Patent Application permits one year's authorization to use "patent pending" notice in connection with the Idea.

d) A Provisional Patent Application enables immediate commercial promotion of the Idea.

e) A Provisional Patent Application automatically is abandoned after 12 months if the Client takes no further action.

A better way to invent

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0724 | Fax 412.387.1348

Davison_000024

EXHIBIT 1
Defendant's Exhibit 6



**DAVISON**™

f) The fee for filing a Provisional Application for Patent is subject to change annually and varies based upon the entity status. Currently, the fee is $260.00 for a 'Large Entity'; $130.00 for a 'Small Entity'; and $65.00 for a 'Micro Entity.'

g) A Provisional Patent Application can NEVER mature into a United States patent. In order for a patent to issue the Provisional Patent Application MUST be replaced by a conventional patent application within one year.

h) A Provisional Patent Application provides a simplified filing with one full year to assess the Idea's commercial potential before committing to the higher cost of filing and prosecuting an additional non-provisional application for a patent.

K. Any Patent Application filing fees, patent filing fees, issue fees, and maintenance fees fall outside the scope of this Agreement if/when they are needed in the future.

L. The Client shall not be responsible for any additional expenses to Davison within the scope and term of this Agreement, with the possible exception being additional services to present the Idea to an additional targeted corporation which may include services to refurbish or repackage the sample, for which Davison currently charges $395.00. Davison's obligations are only those set forth in this Agreement and only directed towards the targeted corporation named on the last page of this Agreement. Davison is not responsible for damage, loss, wear or abuse of the product sample after it leaves Davison's possession.

M. Davison cannot be aware of, and is not responsible for, the existence of every similar product or idea that may already be in the global market, in development by others, or introduced by others at a later time.

N. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE OF THIS AGREEMENT, INCLUDING NO WARRANTY OF MERCHANTABILITY. Because this contract is for the development of a new product sample, Davison cannot guarantee that the product sample will be safe under normal use or if abused, which could occur. The liability of the parties for any and all claims arising from or relating to this Agreement or its formation is limited to direct, actual damages only and is further limited to not exceed the amount actually paid by Client for the services. In no event will Davison be liable to Client for any consequential, exemplary, special, incidental or punitive damages, including lost opportunities or lost profits.

O. Client acknowledges that there have been no representations by Davison that the Idea as conceived and submitted by Client is novel or feasible or that the design to be created by Davison will function in the manner and with the attributes as originally conceived by Client. Davison may develop, but is not required to develop, new technology in the performance of this contract. Enhancements to existing products, or alternative methods to dispense, display or package existing products, if determined by Davison to be appropriate, will be acceptable performance of the obligations under this Agreement. This Agreement does not contain or incorporate any specifications, performance characteristics or other qualities for the design

A better way to invent

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0734 | Fax 412.387.1348

Davison_000025

EXHIBIT 1
Defendant's Exhibit 6



**DAVISON**™

or product sample to be produced.

P. Client acknowledges that he/she is contracting for Davison's research, industrial design and development services for the business purpose of developing Client's Idea commercially and not for any personal, family or household purpose.

## 5. ENTIRE AGREEMENT; ORAL REPRESENTATIONS VOID

A. The parties intend this document to be the complete, exclusive, final and fully integrated statement of their agreement. It is binding upon each of them and their respective successors in interest. This Agreement may not be released, discharged, abandoned, changed, or modified in any manner except as provided herein or by separate instrument in writing signed by all parties. The obligations described herein are completely independent from those contained in any other agreement between these parties. If any portion of this Agreement is ruled to be unenforceable, that specific portion shall be severed from the Agreement and all other portions remain enforceable.

B. Neither party is relying upon any oral agreement or representation in entering into this Agreement and all prior oral agreements or representations are hereby considered null and void.

## 6. CHOICE OF LAW; ARBITRATION; CURE

A. This Agreement shall be governed by the law of the Commonwealth of Pennsylvania and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. For any dispute, the parties agree to seek to resolve the dispute through good faith negotiation. For any dispute not resolved through good faith negotiation, the parties agree that all disputes shall be resolved through arbitration before the American Arbitration Association ("AAA") in Pittsburgh, Pennsylvania using the Commercial Arbitration Rules in effect on the date that the claim is submitted to the AAA. Client agrees that any claim must be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

B. No claim for breach of this Agreement shall be permitted unless Client has given Davison reasonably specific written notice of the alleged breach and has permitted Davison a reasonable opportunity to cure the alleged breach, which shall be no less than thirty days after Client gives his or her assent to the proposed cure.

A better way to invent

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax 1.800.540.5490 | International 412.967.0724 | Fax 412.387.1348

Davison_000026

EXHIBIT 1
Defendant's Exhibit 6



**DAVISON**™

## 7. REVOCATION

Either the Client or Davison may revoke by written notice this Agreement within seven (7) business days from the day the Agreement was signed by both. Written notice of revocation is effective upon the date of postmarking, if mailed, or upon receipt. If either party exercises this right of cancellation, all payments made to Davison in connection with this specific Agreement will be refunded to the Client. The revocation provision of this Agreement is the only means of cancelling this Agreement and obtaining a refund. If the Agreement is cancelled, revoked or terminated after the seven business day period, there will be no refund of any amount paid towards the contract fee.

_Mario Scorza_     3-29-17
Mario Scorza     Date
612 Highland St
West, TX 76691

trava-weigh

EB Brands Holding Inc.
Corporation to Target

_Larry Rifkin_     March 23, 2017
Larry Rifkin     Date
Director of Ne
For Davison

# 3143
Check #

_____
Credit/Debit Card #

Security Code    Expiration Date

VISA ☐     Master Card ☐
Discover ☐     American Express ☐

_____
Name as it appears on card

48-60/1119     3143

MARIO H. SCORZA
612 W HIGHLAND ST.
WEST, TX 76691-1122

DATE 3-29-17

PAY TO THE ORDER OF DAVISON    $ 14,757.25

Fourteen Thousand Seven fifty Seven DOLLARS

American Bank
A Locally Owned Independent National Banking Association
Post Office Box 154068 • Waco, Texas 76715-4068

MEMO T DAVA-weigh    _Mario Scorza_

⑈111900604⑈3143⑈ 186501094⑈

Davison_000027

**EXHIBIT 1**
*Defendant's Exhibit 6*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/601,218 | | Mario U. Scorza | |

CONFIRMATION NO. 6744

ABANDONMENT/TERMINATION
LETTER

Mario Scorza
612 W. Highland St.
West, TX 76691

*FOR°*
*LARRY RIFKIN*
*WHAT IS THIS ???*

Date Mailed: 06/30/2017

# NOTICE OF TERMINATION OF PROCEEDINGS UNDER 37 CFR 1.53(e)

Proceedings on the above-identified application number are **TERMINATED.**

The application did not meet the requirements of 37 CFR 1.53(b), (c), or (d) to be entitled to a filing date, and the filing error(s) specified in the Notice mailed on 03/31/2017 were not timely corrected (37 CFR 1.53(e)).

Any application filing fees paid in excess of $130.00 (handling fee) will be refunded or credited to your deposit account.

If a complete reply to the notice was previously filed by applicant within the time period set forth in the notice, applicant may request for reconsideration of the termination within 2 months from the mailing of this notice of termination by filing a petition accompanied by a true copy of the originally filed reply and the item(s) identified in one of the following:

1. A properly itemized date-stamped postcard receipt (see MPEP § 503); or

2. If the reply was filed via "Express Mail", (now "Priority Mail Express"), a submission satisfying the requirements of 37 CFR 1.10(e) including, for example, a copy of the mailing label showing the "date-in" (or "date accepted") (see MPEP § 513).

Any request for reconsideration should be directed to OPAP.

A copy of this notice <u>MUST</u> be returned with the reply.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000 or (571) 272-4200 or 1-888-786-0101.**

/ylueng/

page 1 of 1

Davison_000029

**EXHIBIT 1**
Defendant's Exhibit 6

Davison_000034





Trava™ Weigh

Portable Scale

• Great for home and travel!
• Ultra thin scale easily stores in custom carrying case for portability
• Easy to read LCD display shows weight in lb or kg



Design Approved By
Print Name _Mario Y. Scor_
Signature _Mario ___

EXHIBIT 1
Defendant's Exhibit 6

**DAVISON**™

March 15, 2017

Mario Scorza
612 Highland St
West, TX 76691


Dear Mario,

As a novice inventor, I experienced first-hand the setbacks people face when they try to get their ideas off the ground. I realized the average person is at a huge disadvantage because in most cases they lack the experience and resources major companies have at their disposal. I came to the conclusion that there had to be a better way, if everyday people were ever going to have a chance at seeing their ideas on the market.

I studied how large companies introduce new products and compared it to the critical mistakes inventors make time and time again. I've taken everything I've learned and created the **Davison®** *A Better Way to Invent*™ method. My way builds a product sample of your idea, targeted for a specific company. If the company licenses the idea, and it sells in stores, you get a royalty for every product the store sells. And the best thing is that the idea always belongs to you.

Our corporate targeting team is proposing **EB Brands Holding Inc.** as the initial target company. This particular company has previously replied to have product ideas presented to it in a professional format. We have made 34 presentations and have secured 0 licensing agreement(s) with this company.

Although the company has replied to Davison to review new products, Davison has not provided to it any information concerning your idea at this stage. Companies are contacted by many unprepared people; they do not want to be bothered unless the person is serious about pursuing their idea and has taken the steps to present it properly. Companies will not waste their time with casual consumers looking for the easy road from idea to market.

As part of my method, we will also provide you with the documents that you may find helpful for filing a Provisional Application for Patent with the United States Patent and Trademark office. These documents will be forwarded to you upon completion of your product sample. Additionally, communication with the targeted company will not begin until a copy of the Provisional Application for Patent is on file with the United States Patent and Trademark office for your protection.

You've heard about it, now watch it in action! By visiting www.Davison.com/Inventionland you can watch the 1 hour special that aired on HISTORY® about *Inventionland*™, the creative design facility where **Davison®** client ideas come to life. This will help you understand why the *A Better Way to Invent*™ method has led to so many products having sold in stores. Enjoy the Show!


*Creatively yours,*

*G. Davison*
**G. Davison**
**Founder and CEO**


**A better way to invent**

Davison_000040

Davison | 595 Alpha Drive | Pittsburgh | PA 15238-2911 | www.Davison.com | Tel 1-800-544-3327 | Fax (412) 387-1348 | International 412.967.0124 | Fax 412.387.1348

EXHIBIT 1
Defendant's Exhibit 0

| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Sep 29, 2017 11:46:14 AM | 00:03:14 | ANSWERED | PROCESSING |
|---|---|---|---|---|---|---|---|
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Oct 16, 2017 02:32:53 PM | 00:04:51 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Dec 19, 2017 04:22:22 PM | 00:00:02 | NO ANSWER | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Jan 10, 2018 02:29:36 PM | 00:03:49 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Jan 29, 2018 01:59:46 PM | 00:18:54 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Feb 5, 2018 12:15:22 PM | 00:16:26 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Feb 5, 2018 04:10:31 PM | 00:12:03 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Feb 6, 2018 09:52:48 AM | 00:06:22 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Feb 13, 2018 01:01:17 PM | 00:05:06 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Mar 12, 2018 10:25:12 AM | 00:02:01 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Mar 12, 2018 02:49:35 PM | 00:19:53 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Apr 12, 2018 02:55:45 PM | 00:03:41 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Inbound | 12547150243 | Apr 12, 2018 04:00:49 PM | 00:00:20 | NO ANSWER | PROCESSING |
| 3143863 | Rifkin, Larry | Inbound | 12547150243 | Apr 12, 2018 04:01:09 PM | 00:00:01 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Apr 18, 2018 02:19:37 PM | 00:10:34 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | May 22, 2018 09:51:08 AM | 00:08:24 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Jun 14, 2018 10:13:40 AM | 00:15:33 | ANSWERED | PROCESSING |
| 3143863 | Rifkin, Larry | Outbound | (254) 715-0243 | Jun 29, 2018 03:17:47 PM | 00:08:33 | ANSWERED | PROCESSING |

| DATE | ISA | TYPE | NOTES | CALLER |
|---|---|---|---|---|
| DEC 10, 2015 | 2807313 | ISA CONF | **Left Message - Machine** | Lindsey Bergmann |
| | | Verified call | | |
| DEC 11, 2015 | 2807313 | ISA CONF | **Left Message - Machine** | Lindsey Bergmann |
| | | Verified call | 1st attempt sounds like a fax machine, second attempt goes to vm | |
| DEC 11, 2015 | 2807313 | ISA CONF | **No Answer** | Lindsey Bergmann |
| | | Verified call | | |
| DEC 14, 2015 | 2807313 | ISA CONF | **Left Message - Machine** | Lindsey Bergmann |
| | | Verified call | | |
| DEC 15, 2015 | 2807313 | ISA CONF | **Not Interested - Scheduling Conflict** | Lindsey Bergmann |
| | | Verified call | left vm no response, emails unopened | |
| JAN 4, 2016 | 2807313 | 30 DAY TOUCH | **Not Interested - Scheduling Conflict** | Lindsey Bergmann |
| | | Verified call | fax | |
| JAN 11, 2016 | 2807313 | ISA CONF | **Disconnected** | Diane Devore |
| | | Verified call | | |
| JAN 12, 2016 | 2807313 | ISA CONF | **Not Interested - Scheduling Conflict** | Diane Devore |
| | | Verified call | fax | |
| FEB 2, 2016 | 2807313 | 60 DAY TOUCH | **Not Interested - Scheduling Conflict** | Diane Devore |
| | | Verified call | | |
| JUN 14, 2018 | 2807313 | ISA CONF | **Working on Different Idea** | Larry Rifkin |
| | | Non-System Call | TRAVA WEIGHT OPEN and waiting to go into licensing | |

The following ISA 2807313 - DEAD CLOSED

| DATE | AUTHOR | COMMENT |
|---|---|---|
| Feb 28, 2017 | Debra Altmare | tracking # for mailing dvd box 9114 9014 9645 0970 0769 69 |
| Jul 13, 2017 | Nancy Heintz | sent to Jason Zerbach's voicemail & emailed: sent to your voicemail. upset recd something from gov't regarding patent. has been calling & emailing Larry no return responses told him he has been sick. he wants someone to call him |
| Jan 10, 2018 | Nancy Heintz | emailed Larry to call |
| Apr 10, 2018 | Beth Hamilton | corp letter company EB Brands Holding Inc. 34 pres 0 lic sent 03/15/2017 |
| Apr 11, 2018 | Lynn Linderman | Royal Consumer would work for a new company. |
| Apr 11, 2018 | Beth Hamilton | corp change letter for Royal consumer Information 100 pres 0 lic sent 04/11/2018 |
| Apr 18, 2018 | Lynn Linderman | From: Mario Scorza [mailto:marumberto@aol.com] Sent: Tuesday, April 17, 2018 5:44 PM To: Larry Rifkin Subject: Re: Project Files |

LARRY,


I HAVE BEEN SEARCHING FOR INFORMATION ABOUT DAVISON BUSINESS PRACTICES AND AM NOT FEELING WELL FROM WHAT I AM SEEING. IT HAS BEEN A VERY LONG TIME SINCE I SENT LOTS OF MONEY TO DAVISON FOR MY IDEA! ALL I HAVE GOTTEN IS THAT EVERYTHING IS ON SCHEDULE AND IS NOW GOING TO LICENSING!

LARRY, I HAVE TO TELL YOU IF I DO NOT GET SOME FACTUAL INFORMATION ABOUT WHERE TRAVA-WEIGH IS AM GOING TO HAVE TO SEEK MEANS OF OBTAINING IT! I HAVE TRUSTED YOU FROM THE START AND STILL WANT TO, BUT THIS HAS GONE ON MUCH TOO LONG! I AM SEEING CASE HISTORIES OF OTHERS WHO HAVE GONE THE SAME ROUTE I HAVE AND IT ENDED UP BADLY FOR THEM. SOME SAY DAVISON EVEN TAKES THE IDEA AND PUTS THEIR OWN PEOPLE ON IT AND

Davison_000044

EXHIBIT 1
Defendant's Exhibit 6

THEN PRODUCES IT LEAVING OUT THE ORIGINAL OWNER OF THE PRODUCT.

LARRY, I NEED TO HAVE AN END DATE ON THE TRAVA WEIGH IMMEDIATELY AS CANNOT GO ANY LONGER ON "IT IS HERE AND IT IS THERE." IF THIS WAS YOU WRITING THIS MAYBE YOU COULD KNOW HOW WE ARE FEELING WAITING ALL THIS TIME. I USED NEARLY 16K OUT OF A FUND FOR MY GRANDSON'S EDUCATION AS HE WILL BE GOING TO COLLEGE NEXT YEAR.

OK, AM WAITING FOR YOUR RESPONSE! YOU MAY HAVE SENT SOMETHING POSITIVE IN YOUR EMAIL LAST BUT COULD NOT OPEN IT.

MARIO

| | | |
|---|---|---|
| Apr 18, 2018 | Lynn Linderman | 4-18-17 No dltf ever sent, still need corp change letter returned. |
| Apr 19, 2018 | Beth Hamilton | corp change letter for Conair Corporation pres 0 lic sent 04/19/2018 |
| Apr 25, 2018 | Larry Rifkin | DLTF Email Sent. |
| | | Issues with the transfer: Thu 4/26/2018 9:26 AM: Call me 40010 (when you get a chance) |
| | | |
| | | Creatively Yours, |
| May 22, 2018 | Lynn Linderman | |
| | | Lynn Linderman |
| | | |
| | | Licensing |
| May 23, 2018 | Lynn Linderman | 5-23-18 RCVD DLTF, EFILE TO RO, AWAITING PRESENTATION TO CONAIR CORP LL.25--TRAVA WEIGH |
| Jun 29, 2018 | Matthew Alwine | 06-29-18 PRES VR No Logo Final Exec Summary Ideation Sketch Signed Non Disc. SENT, CONAIR CORPORATION /Stefani Pavlicic --TRAVA WEIGH |
| Jun 29, 2018 | Matthew Alwine | WELCOME/WELCOME BACK CALL SCHEDULED |
| Jun 29, 2018 | Matthew Alwine | GOODBYE EMAIL SENT TO Larry Rifkin |
| | | UPDATE FILE - WELCOME CALL (completed) |

From: Vescio, Frank
Sent: Thursday, July 5, 2018 2:25 PM
To: marumberto@aol.com
Subject: Welcome to the Licensing Department!

Hi Mario,

This letter is a follow-up to our call. The presentation to CONAIR Corporation is underway.

It's important that you understand that each company has its own review procedure and there is no standard timetable for their decision on Trava-Weigh. While we may not get a decision right away, I will be updating you every 30 days. If you're not available when I call, I will leave you a message.

You should also be aware of the services we are providing. Your representation agreement includes some or all of the additional services listed below:

| | | |
|---|---|---|
| Jul 5, 2018 | Frank Vescio | 1. Mailing or emailing you about possible corporations to target
2. Covering all costs associated with shipment to and from a corporation for presentation.
3. Regularly updated appointment calls with the Licensing Department
4. Communication and correspondence with the targeted corporation by our Licensing Department regarding the project.
5. Drafting License Agreements by legal counsel (if requested by targeted company).
6. Introduce the presentation at tradeshows or at the targeted corporation's facility (if the opportunity presents itself).
7. Pricing out the product (if requested by the target corporation).
8. Implement at additional design requirements to the product or packaging (if requested by the target corporation).
9. Provide additional product samples (if requested by the target corporation).
10. Working with the targeted corporation's manufacturing people (if requested).
11. Track royalty payments due by the targeted corporation (if royalties are due). |

Finally, it's very important that you honor the obligations agreed to in the confidentiality document you signed, as any contact with the targeted company may seriously hinder your presentation and adversely affect our ability to represent your product idea, and other people's product ideas, to that company. This procedure has been created as a result of specific incidents in the past when individuals have taken it upon themselves to badger a company with constant calls and emails. It is a necessary measure we must take to maintain a good working relationship with the company and ensure that the project we have created has been given every opportunity to be presented properly.

I will call you for our next scheduled update call on August 6th, 12:00PM (your time) 2018.

| | | |
|---|---|---|
| Oct 9, 2018 | Lynn Linderman | UPDATE: 10-9-18 **CONAIR** MA attempted to contact the company and left message with contact (Pavlicic) as a follow up to the presentation. LL 10--TRAVA WEIGH |
| Nov 12, 2018 | Frank Vescio | left a message in response to the clients email to Larry |

From: Mario Scorza [mailto:marumberto@aol.com]
Sent: Sunday, November 11, 2018 1:16 PM
To: Larry Rifkin
Subject:

Hi Larry
Hey dear friend! I cannot find the phone for Frank who is apparently my "go to guy" after you! Larry, I have received a document from patent office about "Missing Parts." Frank told me last time Davison has my TravaWeigh with Conair. Larry, it has been two years or longer and still nothing! I was at Bed, Bath, and Beyond yesterday to look for a scale for my own bathroom and found Conair has scales all over the shelves there. We are wondering why mine should not be there after all this

Davison_000045

EXHIBIT 1

time. I would think Davison would apply to more than one vendor at once instead of waiting for Conair to respond, which could take years as it seems. Frank is supposed to call on Dec 5th, but this patent notice is something I cannot wait to find out. I did not want to bother you with it, Larry, but you are only one I have up there who I really know.

The patent notice is titled: Notice To File Missing Parts of Provisional Application. If you wish to refer this letter to Frank that is ok, just need to know something. I am 83 and guess you can see why I have such concerns.

Thank you and hope all is well with you

Mario Scorza
From: Vescio, Frank
Sent: Monday, December 3, 2018 7:23 AM
To: Mario Scorza
Subject: RE:

Mario, please remind me to discuss this with you when we speak on the 5th

---

|  |  | From: Mario Scorza [mailto:marumberto@aol.com] |
|---|---|---|
|  |  | Sent: Sunday, December 2, 2018 11:16 AM |
| Dec 3, 2018 | Frank Vescio | To: Vescio, Frank |
|  |  | Subject: |

Hello Frank!
Just wanted to ask again about the statement I keep getting from the Patent Office about the Status of the Application. When I get these over the past two years I contact Larry, and now you, to determine if there is anything significant about this. Seems is not important so I do no pursue it any further. I have to assume from my inquiry Davison would advise if there was a need to take some action accordingly.
Best

Mario
From: Vescio, Frank
Sent: Thursday, December 13, 2018 6:12 AM
To: Mario Scorza
Subject: What's your Plan B?

Hi Mario,

As a follow-up to our call, we discussed an Inventomercial (IM). It's great to have a commercial of the product to accompany a presentation to targeted companies for them to review and also forward to their customers (retailers) for feedback because the IM commercial describes both the problem and solution (like those As Seen on TV commercials).

I've attached a link to an example of an IM commercial. The Inventomercial of the Meatballer The commercial is an example of the format a typical Inventomercial follows.

We also discussed a Multiple Company Campaign [MCC] service by where we contact up to 45 companies (over a 1 year period) with a confidential teaser about your idea and communicate (and disclose) information to only those companies that sign a Confidential Registration Form to hear more about an idea and see presentation material. We would provide you with any interested party responses (and offers) for your review. Our current fee to present an idea individually to 1 company at a time is $395.00. So, up to 45 companies could represent a total fee of over $17,000.00 doing it 1 company at a time.

Dec 13, 2018    Frank Vescio

If you decide to move forward with both the Inventomerical (IM) and the MCCA services, I can reduce the price of the IM by $500.00 to $1,995.00 (normally that fee is $2,495.00) and can reduce the price of the MCC service by $3,000.00 to $3,995.00 (normally that fee is $6,995.00). I'll forward you a proposal that outlines each service in detail.

Those that need to buy themselves some time with funding; put down a small $100.00 refundable retainer to lock in the savings and keep the file active in our system. You can do this on the Trava-Weigh - portable scale idea.

To take advantage of this offer, you can mail a check, wire the funds or complete the credit card information below when you reply to this email.

CARD TYPE (VISA, MasterCard or AMEX):
CARD NUMBER:
EXPIRATION DATE:
3 DIGIT CODE (on back of card):
CARD HOLDER NAME (as it appears on the card):

AMOUNT:

It's your decision. I'm ok either way, just let me know by December 18th, 2018 as the project will not qualify for this savings offer after that date.

I'll call you on December 14th at 11:30PM (your time) to discuss your Plan B.

| Mar 25, 2019 | Judy Marchese | 03-25-19 REG SENT [Email], Sunbeam Corporation /Susan Stewart --TRAVA WEIGH |
| Mar 25, 2019 | Judy Marchese | 03-25-19 REG SENT [Email], Avery Weigh-Tronix LLC /Michelle Tozer --TRAVA WEIGH |
| Mar 25, 2019 | Judy Marchese | 03-25-19 REG SENT [Email], Fairbanks Scales Inc /Brad Grindstaff --TRAVA WEIGH |
| Mar 25, 2019 | Judy Marchese | 03-25-19 REG SENT [Email], Seca /Lyndsey Nunez --TRAVA WEIGH |
| Mar 25, 2019 | Judy Marchese | 03-25-19 REG SENT [Email], Taylor Precision Products Inc /Ronni Emrich --TRAVA WEIGH |
| Mar 25, 2019 | Judy Marchese | 03-25-19 REG SENT [Email], Mercury Luggage Manufacturing Company /Brett Burleigh --TRAVA WEIGH |

EXHIBIT 1

Defendant's Exhibit 6

| Date | | Type | Subject / Status | | Contact |
|---|---|---|---|---|---|
| FEB 14, 2017 | | Sales Email | **Couldn't Leave a Message** Opened | | Larry Rifkin |
| FEB 15, 2017 | | Sales Email | **Benefits of Davison** Opened | | Larry Rifkin |
| FEB 17, 2017 | | Sales Email | **Payment Receipt** Opened | | Davisonlink System via rifkin.larry@davison.com |
| FEB 22, 2017 | | Sales Email | **Provisional Application** Opened | | Davisonlink System via rifkin.larry@davison.com |
| FEB 24, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| FEB 28, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| FEB 28, 2017 | | Sales Email | **Inventionland One Hour Special** Unopened | | Larry Rifkin |
| FEB 28, 2017 | 1209565 | Comment | **tracking # for mailing dvd box 9114 9014 9645 0970 0769 69** | | Debra Altmare |
| MAR 7, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| MAR 7, 2017 | | Sales Email | **Advice to Inventors** Opened | | Larry Rifkin |
| MAR 8, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| MAR 8, 2017 | | Sales Email | **Davison Staff** Opened | | Larry Rifkin |
| MAR 14, 2017 | | Sales Email | **Welcome to Inventionland** Opened | | Larry Rifkin |
| MAR 16, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| MAR 16, 2017 | | Sales Email | **Client Product Coming to Life** Opened | | Larry Rifkin |
| MAR 22, 2017 | | Sales Email | **Shapes and Sizes** Opened | | Larry Rifkin |
| MAR 27, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| MAR 27, 2017 | | Sales Email | **Confirming a Scheduled Call** Opened | | Davisonlink System via rifkin.larry@davison.com |
| MAR 27, 2017 | | Sales Email | **NPSA Agreement** Opened | | Larry Rifkin |
| MAR 27, 2017 | | Sales Email | **Tradeshows - Housewares** Opened | | Larry Rifkin |
| APR 4, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| APR 7, 2017 | | Sales Email | **DTI - Better Tether** Opened | | Larry Rifkin |
| APR 11, 2017 | | Five9 - Inbound | **Sent To Voicemail** | | [None] |
| APR 14, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| APR 14, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| APR 14, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| APR 14, 2017 | | Five9 - Manual | **End Call** | | rifkin.larry |
| APR | | Five9 - | **End Call** | | rifkin.larry |

EXHIBIT 1

Defendant's Exhibit 6

DISCONNECT

"DON'T DISCUSS IDEAS OVER EMAIL"

PATENTING IDEA

IDEA RECORDER

VOICEMAIL NEEDS SETUP - LEAD

DAVISON INVENTING METHOD GUIDE

[ SEND CUSTOM EMAIL | SEND CUSTOM TEXT | TEXT UNSUBSCRIBE ]

| DATE | EMPLOYEE NAME | SUBJECT |
|------|---------------|---------|
| DEC 10, 2015 9:56 AM | Lindsey Bergmann | Scheduling PD Presentation Message 1st Attempt |
| DEC 11, 2015 10:57 AM | Lindsey Bergmann | Scheduling PD Presentation Message 2nd Attempt |
| DEC 14, 2015 1:21 PM | Lindsey Bergmann | Scheduling PD Presentation Message 3rd Attempt |
| DEC 15, 2015 3:23 PM | Lindsey Bergmann | ISA No Response Attempt-Check Reveal |
| JAN 4, 2016 7:57 AM | Davisonlink System | 30 Day Touch |
| FEB 1, 2016 7:58 AM | Davisonlink System | 60 Day Touch |
| JAN 4, 2017 10:33 AM | Larry Rifkin | The Balancing Act (CCAST) (Auto) |
| JAN 9, 2017 7:44 AM | Davisonlink System | Confirming a Scheduled Call |
| JAN 9, 2017 4:57 PM | Larry Rifkin | Compare Davison |
| JAN 9, 2017 4:58 PM | Larry Rifkin | Mr D in the Stores |
| JAN 9, 2017 4:58 PM | Larry Rifkin | Tradeshows - National Hardware Show (Timeless) |
| JAN 9, 2017 4:58 PM | Larry Rifkin | CBS Early Show (Auto) |
| JAN 9, 2017 4:59 PM | Larry Rifkin | Your Secure Invention Proposal |
| JAN 9, 2017 5:00 PM | Larry Rifkin | Your Secure Invention Proposal - New Password |
| JAN 12, 2017 10:17 AM | Larry Rifkin | I Left You a Message, Please Call |
| JAN 12, 2017 10:17 AM | Larry Rifkin | Davison Commercial |
| JAN 12, 2017 12:02 PM | Larry Rifkin | Your Secure Invention Proposal - New Password |
| JAN 12, 2017 12:23 PM | Larry Rifkin | Your Secure Invention Proposal - New Password |
| JAN 12, 2017 12:28 PM | Larry Rifkin | Davison Products in Stores (Auto) |
| JAN 12, 2017 2:36 PM | Larry Rifkin | Your Secure Invention Proposal - New Password |
| JAN 12, 2017 3:17 PM | Larry Rifkin | See Our Products on TV (Auto) |
| JAN 17, 2017 7:11 AM | Larry Rifkin | Davison Newsletter (Auto) |
| JAN 19, 2017 5:00 PM | Davisonlink System | Payment Receipt |
| JAN 23, 2017 11:06 AM | Larry Rifkin | Bikeboard |
| JAN 24, 2017 5:01 PM | Davisonlink System | Payment Receipt |
| FEB 9, 2017 5:23 PM | Larry Rifkin | Tax Time 2017 |
| FEB 14, 2017 5:01 PM | Larry Rifkin | Couldn't Leave a Message |
| FEB 15, 2017 10:08 AM | Larry Rifkin | Benefits of Davison |
| FEB 17, 2017 5:05 PM | Davisonlink System | Payment Receipt |
| FEB 22, 2017 8:00 AM | Davisonlink System | Provisional Application |
| FEB 28, 2017 10:10 AM | Larry Rifkin | Inventionland One Hour Special |
| MAR 7, 2017 9:43 AM | Larry Rifkin | Advice to Inventors |
| MAR 8, 2017 2:22 PM | Larry Rifkin | Davison Staff |
| MAR 14, 2017 11:40 AM | Larry Rifkin | Welcome to Inventionland |
| MAR 16, 2017 10:13 AM | Larry Rifkin | Client Product Coming to Life |
| MAR 22, 2017 2:03 PM | Larry Rifkin | Shapes and Sizes |
| MAR 27, 2017 7:42 AM | Davisonlink System | Confirming a Scheduled Call |
| MAR 27, 2017 1:25 PM | Larry Rifkin | NPSA Agreement |
| MAR 27, 2017 1:27 PM | Larry Rifkin | Tradeshows - Housewares |
| APR 7, 2017 5:05 PM | Larry Rifkin | DTI - Better Tether |
| MAY 8, 2017 4:33 PM | Larry Rifkin | TheraPED |
| MAY 31, 2017 10:08 AM | Larry Rifkin | Send Attachment - Ideation Sketch |
| JUL 3, 2017 11:46 AM | Larry Rifkin | Out of Office - Reschedule Call |
| AUG 11, 2017 2:28 PM | Larry Rifkin | Received Your Email, Let's Discuss On the Phone |
| AUG 21, 2017 12:24 PM | Larry Rifkin | Back to Inventing |
| SEP 29, 2017 2:30 PM | Larry Rifkin | Send Virtual Package |
| OCT 10, 2017 6:29 AM | Larry Rifkin | CUSTOM EMAIL |
| MAR 12, 2018 10:53 AM | Larry Rifkin | Received Your Message |
| APR 13, 2018 7:20 AM | Sara Stewart | Send Attachment - Mario Scorza Corp Change Letter. |
| APR 18, 2018 9:38 AM | Larry Rifkin | Send Attachment - Additional Files |
| APR 18, 2018 11:45 AM | Nancy Heintz | Send Attachment - CONAIR CORP-3.PDF |
| MAY 22, 2018 10:07 AM | Larry Rifkin | Send Additional ISA |
| MAY 22, 2018 10:08 AM | Larry Rifkin | Send Additional ISA |
| DEC 14, 2018 1:44 PM | Frank Vescio | Back-end Agreement |
| DEC 19, 2018 9:46 AM | Frank Vescio | Inventomercial Agreement |
| FEB 12, 2019 11:20 AM | Frank Vescio | Send Attachment - Video |
| FEB 19, 2019 4:08 PM | Frank Vescio | Send Attachment - Video |
| MAR 18, 2020 6:13 AM | Frank Vescio | Payment Receipt |
| MAR 18, 2020 6:13 AM | Frank Vescio | Payment Receipt |
| MAR 18, 2020 6:13 AM | Frank Vescio | Payment Receipt |
| MAR 18, 2020 6:13 AM | Frank Vescio | Payment Receipt |
| APR 7, 2020 2:22 PM | Frank Vescio | Send Attachment - Video |

Davison_000060

EXHIBIT 1

Defendant's Exhibit 6

| Date | ID | Type | Status | Notes | Contact |
|------|----|----|----|----|----|
| MAY 12, 2017 | 3143863 | NPSA INTERIM | **Schedule NPSA Interim** | | LARRY RIFKIN |
| | | *Non-System Call* | | LAM<br>Need Paperwork<br>Was full pay | |
| | | | | TRAVEL | |
| JUN 5, 2017 | 3143863 | NPSA INTERIM | **Left Message - Machine** | | LARRY RIFKIN |
| | | *Non-System Call* | | LM | |
| JUN 7, 2017 | 3143863 | NPSA INTERIM | **Schedule NPSA Interim** | | LARRY RIFKIN |
| | | *Non-System Call* | | Update - | |
| JUN 18, 2017 | 3143863 | NPSA INTERIM | **Schedule NPSA Interim** | | LARRY RIFKIN |
| | | *Non-System Call* | | Larry,<br><br>I am getting concerned that I do not hear from you for updates. Why?<br><br>Mario | |
| JUL 3, 2017 | 3143863 | NPSA INTERIM | **Busy** | | LARRY RIFKIN |
| | | *Non-System Call* | | Called in ... wants update | |
| JUL 28, 2017 | 3143863 | NPSA INTERIM | **Busy** | | LARRY RIFKIN |
| | | *Non-System Call* | | | |
| AUG 11, 2017 | 3143863 | NPSA INTERIM | **Busy** | | LARRY RIFKIN |
| | | *Non-System Call* | | Larry,<br><br>I have not heard from you are Davison in way too long. I am going to have to insist that I be better informed of the progress of the Trava-Weigh. Last I heard was from patent in a letter saying my patent had been rejected. If this was you would you not be alarmed???? If I do not hear from someone soon am going to have to seek remedy. The patent rejection alone is cause for great alarm.<br><br>Mario | |
| AUG 11, 2017 | 3143863 | NPSA INTERIM | **Left Message - Machine** | | LARRY RIFKIN |
| | | *Non-System Call* | | CALLED and LM | |
| AUG 14, 2017 | 3143863 | NPSA INTERIM | **Busy** | | LARRY RIFKIN |
| | | *Non-System Call* | | Edit address (Verify) | |
| AUG 17, 2017 | 3143863 | VR FIRST ENHANCE | **Left Message - Machine** | | LARRY RIFKIN |
| | | *Non-System Call* | | | |
| AUG 21, 2017 | 3143863 | VR FIRST ENHANCE | **Left Message - Machine** | | LARRY RIFKIN |
| | | *Non-System Call* | | CALL ME ..... | |
| AUG 24, 2017 | 3143863 | VR FIRST ENHANCE | **Schedule Enhance** | | LARRY RIFKIN |
| | | *Non-System Call* | | LM | |
| SEP 22, 2017 | 3143863 | VR SECOND ENHANCE | **Schedule VR Release** | | LARRY RIFKIN |
| | | *Non-System Call* | | REleased VR | |
| SEP 22, 2017 | 3143863 | VR RELEASE | **Schedule VR Recall** | | LARRY RIFKIN |
| | | *Non-System Call* | | He is still cleaning up his 2 homes from Hurricane HARVEY.<br>Sent VR ... Very Happy to hear. | |
| SEP 29, 2017 | 3143863 | VR RECALL | **Did Not Receive** | | LARRY RIFKIN |
| | | | | Didn't receive yet | |
| OCT 10, 2017 | 3143863 | VR RECALL | **Did Not Receive** | | LARRY RIFKIN |
| | | *Non-System Call* | | Sent Mario's email to Design Team and AdMin.<br>-----------------------------<br>Larry<br>Did you get my email asking if the designers of the trava-weigh had the scale go up to 350 lbs? It | |

Davison_000077

**EXHIBIT 1**

☐ Catalog Page

Defendant's Exhibit 6

☑ Sticker

\# [          ]          \# [          ]

| | |
|---|---|
| **MATERIAL** | .030 Chipboard |
| **PACKAGE DIMENSIONS**<br>A x B x C x D | 10" x 10" with diagonal Sticker or hangtag - whichever hangs on to the fabric best |
| **SPECIAL FEATURES/INSTRUCTIONS** | |
| **A: NAME**<br>(e.g. Dog Buddy) | Trava-Weigh |
| **B: DESCRIPTIVE TEXT** | Portable Scale |
| **C: WHY WOULD I BUY THIS?** | |
| **D: LIST 1ST BULLET POINT** | Great for home and travel! |
| **D: LIST 2ND BULLET POINT** | Ultra thin scale easily stored in custom carrying case for portability |
| **D: LIST 3RD BULLET POINT** | Easy to read LCD display shows weight in lb or kg |
| **E: PATENT PENDING** | ☑ Appears on Package |
| **PACKAGE SKETCH** | |

Mark each text item and image using the corresponding letter (A, B, C, etc.) from the above list.



Trava™ Weigh
Portable Scale

• Great for home and travel!
• Ultra thin scale easily stored in custom carrying case for portability
• Easy to read LCD display shows weight in lb or kg

Patent Pending

PRODUCT-IN-USE PHOTOS

SITES: DREAMSTIME PUNCHSTOCK GETTY IMAGES FOTOSEARCH SHUTTERSTOCK

**F IMAGE**

EXHIBIT 1

Defendant's Exhibit 6



☐ Box          ☐ Hanging Box          ☐ Header Card

☐ Clamshell          ☐ Blister Card          ☑ Hang Tag
                                              ☐ Catalog Page
                                              ☑ Sticker

#                    #

| | |
|---|---|
| **MATERIAL** | .030 Chipboard |
| **PACKAGE DIMENSIONS**<br>A x B x C x D | 10" x 10" with diagonal Sticker or hangtag - whichever hangs on to the fabric best |
| **SPECIAL FEATURES/INSTRUCTIONS** | |
| **A: NAME**<br>(e.g. Dog Buddy) | Trava-Weigh |
| **B: DESCRIPTIVE TEXT** | Portable Scale |
| **C: WHY WOULD I BUY THIS?** | |
| **D: LIST 1ST BULLET POINT** | Great for home and travel!! |
| **D: LIST 2ND BULLET POINT** | Ultra thin scale easily stored in custom carrying case for portability |
| **D: LIST 3RD BULLET POINT** | Easy to read LCD display shows weight in lb or kg |
| **E: PATENT PENDING** | ☑ Appears on Package |

**PACKAGE SKETCH**
Mark each text item and image using the corresponding letter (A, B, C, etc.) from the above list.

EXHIBIT 1
Defendant's Exhibit 6

☐ Catalog Page
☑ Sticker

| # | | # | |

| | |
|---|---|
| **MATERIAL** | .030 Chipboard |
| **PACKAGE DIMENSIONS** A x B x C x D | 10" x 10" with diagonal Sticker or hangtag - whichever hangs on to the fabric best |
| **SPECIAL FEATURES/INSTRUCTIONS** | |
| **A: NAME** (e.g. Dog Buddy) | Trava-Weigh |
| **B: DESCRIPTIVE TEXT** | Portable Scale |
| **C: WHY WOULD I BUY THIS?** | |
| **D: LIST 1ST BULLET POINT** | Great for home and travel! |
| **D: LIST 2ND BULLET POINT** | Ultra thin scale easily stored in custom carrying case for portability |
| **D: LIST 3RD BULLET POINT** | Easy to read LCD display shows weight in lb or kg |
| **E: PATENT PENDING** | ☑ Appears on Package |
| **PACKAGE SKETCH** | |

Mark each text item and image using the corresponding letter (A, B, C, etc.) from the above list.



Trava™
Weigh
Portable Scale

• Great for home and travel!

• Ultra thin scale easily stored in custom carrying case for portability

• Easy to read LCD display shows weight in lb or kg

Patent Pending

PRODUCT-IN-USE PHOTOS

SITES: DREAMSTIME PUNCHSTOCK GETTY IMAGES FOTOSEARCH SHUTTERSTOCK

**F IMAGE**

**EXHIBIT 1**

Defendant's Exhibit 6

☐ Catalog Page
☑ Sticker

# [ ]                # [ ]

| | |
|---|---|
| **MATERIAL** | .030 Chipboard |
| **PACKAGE DIMENSIONS** A x B x C x D | 10" x 10" with diagonal Sticker or hangtag - whichever hangs on to the fabric best |
| **SPECIAL FEATURES/INSTRUCTIONS** | |
| **A: NAME** (e.g. Dog Buddy) | Trava-Weigh |
| **B: DESCRIPTIVE TEXT** | Portable Scale |
| **C: WHY WOULD I BUY THIS?** | |
| **D: LIST 1ST BULLET POINT** | Great for home and travel! |
| **D: LIST 2ND BULLET POINT** | Ultra thin scale easily stored in custom carrying case for portability |
| **D: LIST 3RD BULLET POINT** | Easy to read LCD display shows weight in lb or kg |
| **E: PATENT PENDING** | ☑ Appears on Package |
| **PACKAGE SKETCH** | |

Mark each text item and image using the corresponding letter (A, B, C, etc.) from the above list.



**Trava Weigh™**
Portable Scale

• Great for home and travel!

• Ultra thin scale easily stored in custom carrying case for portability

• Easy to read LCD display shows weight in lb or kg

Patent Pending

PRODUCT-IN-USE PHOTOS

SITES: DREAMSTIME PUNCHSTOCK GETTY IMAGES FOTOSEARCH SHUTTERSTOCK

**F IMAGE**

EXHIBIT 1
Defendant's Exhibit 6

DAVISON®

# **Necessity of Product Sample Presentation Services**

Davison views the production of a fully developed product sample including packaging that fits the brand of the targeted corporation to be integral to our development process.  It is our opinion the product samples are necessary before proceeding to the step of attempting to obtain a license agreement for a product with a corporation.  It is Davison's policy to require that a product sample be created prior to submitting the product idea to a corporation.  Davison does not represent that it is any particular corporation's policy to require that a product sample be created before a new product idea will be considered.  Should you not wish to purchase these services, you may still be able to secure a license, either on your own or with the assistance of another party, but Davison will refuse to work with you to develop your product idea.

Thank you and please call your Director of New Products as soon as you receive this information.

Sincerely,

*G. Davison*

G. Davison
Founder and CEO

Davison • RIDC Park • 595 Alpha Drive • Pittsburgh • PA 15238-2911 • www.Davison.com • Tel 1.866.Davison • Fax 1.800.540.5490 • International 412.599.1234 • Fax 412.967.0794

EXHIBIT 1
Defendant's Exhibit 6

Mario Scorza

## TEXAS

**DAVISON**
**595 ALPHA DRIVE**
**PITTSBURGH, PA 15238**

**THIS CONTRACT BETWEEN YOU AND AN INVENTION DEVELOPER IS REGULATED BY THE STATE OF TEXAS' REGULATION OF INVENTION DEVELOPMENT SERVICES ACT. YOU ARE NOT PERMITTED OR REQUIRED TO MAKE ANY PAYMENTS UNDER THIS CONTRACT UNTIL FOUR (4) WORKING DAYS AFTER YOU SIGN THIS CONTRACT AND RECEIVE A COMPLETED COPY OF IT.**

**IF YOU ASSIGN EVEN A PARTIAL INTEREST IN THE INVENTION TO THE INVENTION DEVELOPER, THE INVENTION DEVELOPER MAY HAVE THE RIGHT TO SELL OR DISPOSE OF THE INVENTION WITHOUT YOUR CONSENT AND MAY NOT HAVE TO SHARE THE PROFITS WITH YOU.**

**TOTAL NUMBER OF CUSTOMERS WHO HAVE CONTRACTED WITH THE INVENTION DEVELOPER SINCE 1989 IS ONE HUNDRED FIFTY THOUSAND NINE HUNDRED FOURTEEN (150,914). THE TOTAL NUMBER OF CUSTOMERS KNOWN BY THIS INVENTION DEVELOPER TO HAVE RECEIVED, BY VIRTUE OF THIS INVENTION DEVELOPER'S PERFORMANCE AN AMOUNT OF MONEY IN EXCESS OF THE AMOUNT PAID BY THE CUSTOMER TO THIS INVENTION DEVELOPER IS THIRTY-FIVE.**

**YOU ARE ENCOURAGED TO CONSULT WITH A QUALIFIED ATTORNEY BEFORE SIGNING THIS CONTRACT. BY PROCEEDING WITHOUT THE ADVICE OF A QUALIFIED ATTORNEY, YOU COULD LOSE ANY RIGHTS YOU MIGHT HAVE IN YOUR IDEA OR INVENTION.**

EXHIBIT 1
Defendant's Exhibit 6

Mario Scorza

## TEXAS

**DAVISON**
**595 ALPHA DRIVE**
**PITTSBURGH, PA 15238**

**THIS CONTRACT BETWEEN YOU AND AN INVENTION DEVELOPER IS REGULATED BY THE STATE OF TEXAS' REGULATION OF INVENTION DEVELOPMENT SERVICES ACT. YOU ARE NOT PERMITTED OR REQUIRED TO MAKE ANY PAYMENTS UNDER THIS CONTRACT UNTIL FOUR (4) WORKING DAYS AFTER YOU SIGN THIS CONTRACT AND RECEIVE A COMPLETED COPY OF IT.**

**IF YOU ASSIGN EVEN A PARTIAL INTEREST IN THE INVENTION TO THE INVENTION DEVELOPER, THE INVENTION DEVELOPER MAY HAVE THE RIGHT TO SELL OR DISPOSE OF THE INVENTION WITHOUT YOUR CONSENT AND MAY NOT HAVE TO SHARE THE PROFITS WITH YOU.**

**TOTAL NUMBER OF CUSTOMERS WHO HAVE CONTRACTED WITH THE INVENTION DEVELOPER SINCE 1989 IS ONE HUNDRED FIFTY THOUSAND NINE HUNDRED FOURTEEN (150,914). THE TOTAL NUMBER OF CUSTOMERS KNOWN BY THIS INVENTION DEVELOPER TO HAVE RECEIVED, BY VIRTUE OF THIS INVENTION DEVELOPER'S PERFORMANCE AN AMOUNT OF MONEY IN EXCESS OF THE AMOUNT PAID BY THE CUSTOMER TO THIS INVENTION DEVELOPER IS THIRTY-FIVE.**

**YOU ARE ENCOURAGED TO CONSULT WITH A QUALIFIED ATTORNEY BEFORE SIGNING THIS CONTRACT. BY PROCEEDING WITHOUT THE ADVICE OF A QUALIFIED ATTORNEY, YOU COULD LOSE ANY RIGHTS YOU MIGHT HAVE IN YOUR IDEA OR INVENTION.**

Davison_000342

U.S. PTO
12/601218
EXHIBIT
Defendant's Exhibit 6
03/16/2017

02194 U.S. PTO
031617

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 1 of 2
This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

Express Mail Label No. _____

### INVENTOR(S)

| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| MARIO U. (SCORZA) | SCORZA | 612 W. Highland West, TX 76691 |
| | | |
| | | |
| | | |

Additional inventors are being named on the ___None___ separately numbered sheets attached hereto.

### TITLE OF THE INVENTION (500 characters max):

weighing scale that is portable even in suitcase.

Direct all correspondence to:

☑ The address corresponding to Customer Number: _____

**CORRESPONDENCE ADDRESS**

Mr Mario Scorza
612 W Highland St
West, TX 76691

OR

☐ Firm or
Individual Name

Address

| City | State | Zip |
|---|---|---|
| Country | Telephone | Email |

### ENCLOSED APPLICATION PARTS (check all that apply)

☐ Application Data Sheet. See 37 CFR 1.76.     ☐ CD(s), Number of CDs _____
☐ Drawing(s)  Number of Sheets _____           ☐ Other (specify) _____
☐ Specification (e.g., description of the invention)  Number of Pages _____

**Fees Due:** Filing Fee of $260 ($130 for small entity) ($65 for micro entity). If the specification and drawings exceed 100 sheets of paper, an application size fee is also due, which is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

### METHOD OF PAYMENT OF THE FILING FEE AND APPLICATION SIZE FEE FOR THIS PROVISIONAL APPLICATION FOR PATENT

☐ Applicant asserts small entity status. See 37 CFR 1.27.
☐ Applicant certifies micro entity status. See 37 CFR 1.29.
    Applicant must attach form PTO/SB/15A or B or equivalent.
☐ A check or money order made payable to the *Director of the United States Patent and Trademark Office* is enclosed to cover the filing fee and application size fee (if applicable).        **TOTAL FEE AMOUNT ($)**
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the filing fee and application size fee (if applicable) or credit any overpayment to Deposit Account Number: _____

### USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 10 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EXHIBIT 2
Defendant's Exhibit 6

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 2 of 2

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

☑ No.

☐ Yes, the invention was made by an agency of the U.S. Government. The U.S. Government agency name is: _____

_____

☐ Yes, the invention was made under a contract with an agency of the U.S. Government. The name of the U.S. Government agency and Government contract number are: _____

_____

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

SIGNATURE _Marca Scorpo_    DATE 2.22-17

TYPED OR PRINTED NAME _MARIO SCORZA_    REGISTRATION NO. _____
(if appropriate)

TELEPHONE 254-715.0243    DOCKET NUMBER _____

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.   Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**EXHIBIT 2**
Defendant's Exhibit 6

PATENT APPLICATION SERIAL NO._____

## U.S. DEPARTMENT OF COMMERCE
### PATENT AND TRADEMARK OFFICE
### <u>FEE RECORD SHEET</u>

03/17/2017 CCHAU1    00000009 62601218
01 FC:3005                          65.00 OP

PTO-1556
(5/87)

EXHIBIT 3

Defendant's Exhibit 6

 United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/601,218 | | Mario U. Scorza | |

Mario Scorza
612 W. Highland St.
West, TX 76691

**CONFIRMATION NO. 6744**

**ABANDONMENT/TERMINATION LETTER**


*OC000000092489935*

Date Mailed: 06/30/2017

## NOTICE OF TERMINATION OF PROCEEDINGS UNDER 37 CFR 1.53(e)

Proceedings on the above-identified application number are **TERMINATED**.

The application did not meet the requirements of 37 CFR 1.53(b), (c), or (d) to be entitled to a filing date, and the filing error(s) specified in the Notice mailed on 03/31/2017 were not timely corrected *(37 CFR 1.53(e))*.

Any application filing fees paid in excess of $130.00 (handling fee) will be refunded or credited to your deposit account.

If a complete reply to the notice was previously filed by applicant within the time period set forth in the notice, applicant may request for reconsideration of the termination within 2 months from the mailing of this notice of termination by filing a petition accompanied by a true copy of the originally filed reply and the item(s) identified in one of the following:

1. A properly itemized date-stamped postcard receipt (see MPEP § 503); or

2. If the reply was filed via "Express Mail", (now "Priority Mail Express"), a submission satisfying the requirements of 37 CFR 1.10(e) including, for example, a copy of the mailing label showing the "date-in" (or "date accepted") (see MPEP § 513).

Any request for reconsideration should be directed to OPAP.

A copy of this notice <u>MUST</u> be returned with the reply.

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/ylueng/

**Defendant's Exhibit 6**



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/601,218 | 03/16/2017 | Mario U. Scorza | |

**CONFIRMATION NO. 6744**

Mario Scorza
612 W. Highland St.
West, TX 76691

**FORMALITIES LETTER**

*OC000000090337833*

Date Mailed: 03/31/2017

## NOTICE OF INCOMPLETE PROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(c)

A filing date has NOT been accorded to the above-identified PROVISIONAL APPLICATION papers for the following reason(s) indicated below.

All of the items noted below **must** be submitted within **TWO MONTHS** of the date of this Notice, unless otherwise indicated, or the proceedings on the application will be terminated (37 CFR 1.53(e)). **Extensions of time under 37 CFR 1.136 are NOT available.**

The filing date will be the date of receipt of all items required below, unless otherwise indicated. Any assertions that the items required were submitted, or are not necessary for a filing date, must be by way of petition directed to the attention of the Office of Petitions accompanied by the petition fee set forth in 37 CFR 1.17(f). If the petition states that the application is entitled to a filing date, a request for a refund of the petition fee may be included in the petition.

- The specification is missing.
  *A complete specification as prescribed by 35 U.S.C. 112 is required.*

The required items noted below SHOULD be filed along with any items required above. The filing date of this provisional application will be the date of receipt of the items required above. If the basic filing fee or due amount is filed after the filing date accorded the application, the surcharge set forth in 37 CFR 1.16(g) is also required.

- The statutory basic filing fee is insufficient.

Applicant is cautioned that correction of the above items may cause the specification and drawings page count to exceed 100 pages. If the specification and drawings exceed 100 pages, applicant will need to submit the required application size fee.

### SUMMARY OF FEES DUE:

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. No entity status discount is in effect. If applicant is qualified for small entity status, a written assertion of small entity status must be submitted to establish small entity status. (See 37 CFR 1.27). If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

EXHIBIT 3

Defendant's Exhibit 6

• $ **260** basic filing fee.
• $( **65**) previous unapplied payment amount.
• $ **260** TOTAL FEE BALANCE DUE.

**Items Required To Avoid Processing Delays:**

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

**This application, which was filed with an indication of micro entity status, fails to meet the requirements for establishing micro entity status because:**

• Certification of micro entity status is missing. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

If micro entity status is established in reply to this notice by filing an acceptable Certification of Micro Entity Status, the fees itemized in the SUMMARY OF FEES DUE section of this Notice will be reduced to reflect the 75% micro entity discount, and any previous payment amount may be applied to the discounted fees.

If applicant is not entitled to micro entity status under 37 CFR 1.29, applicant may still qualify for a 50% reduction of fees if small entity status can be established under 37 CFR 1.27.

Replies should be mailed to:

> Mail Stop Missing Parts
> Commissioner for Patents
> P.O. Box 1450
> Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice". https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/awebb/

EXHIBIT 3
Defendant's Exhibit 0

U.S. PTO
62/601218
03/16/2017

02194  U.S. PTO
031617

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 1 of 2
### This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

Express Mail Label No. _____

### INVENTOR(S)

| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| MARio U. (Scorza) | Scorza | 612 W. Highland West, TX 76691 |
| | | |
| | | |
| | | |

Additional Inventors are being named on the _None_ separately numbered sheets attached hereto.

### TITLE OF THE INVENTION (500 characters max):

weighing Scale That is portable even in suitcase.

Direct all correspondence to:

☑ The address corresponding to Customer Number: _____

OR

☐ Firm or Individual Name

**CORRESPONDENCE ADDRESS**

Mr Mario Scorza
612 W Highland St
West, TX 76691

Address

| City | State | Zip |
|---|---|---|
| Country | Telephone | Email |

### ENCLOSED APPLICATION PARTS (check all that apply)

☐ Application Data Sheet. See 37 CFR 1.76.
☐ Drawing(s) Number of Sheets _____
☐ Specification (e.g., description of the invention) Number of Pages _____
☐ CD(s), Number of CDs _____
☐ Other (specify) _____

**Fees Due:** Filing Fee of $260 ($130 for small entity) ($65 for micro entity). If the specification and drawings exceed 100 sheets of paper, an application size fee is also due, which is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

### METHOD OF PAYMENT OF THE FILING FEE AND APPLICATION SIZE FEE FOR THIS PROVISIONAL APPLICATION FOR PATENT

☐ Applicant asserts small entity status. See 37 CFR 1.27.
☐ Applicant certifies micro entity status. See 37 CFR 1.29.
  Applicant must attach form PTO/SB/15A or B or equivalent.
☐ A check or money order made payable to the *Director of the United States Patent and Trademark Office* is enclosed to cover the filing fee and application size fee (if applicable).
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the filing fee and application size fee (if applicable) or credit any overpayment to Deposit Account Number: _____

**TOTAL FEE AMOUNT ($)**

**USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT**
This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 10 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Defendant's Exhibit 6

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 2 of 2

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

☑ No.

☐ Yes, the invention was made by an agency of the U.S. Government. The U.S. Government agency name is: _____

_____

☐ Yes, the invention was made under a contract with an agency of the U.S. Government. The name of the U.S. Government agency and Government contract number are: _____

_____

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

SIGNATURE *Marca Scorpo*          DATE 2.22-17

TYPED OR PRINTED NAME *MARIO SCORZA*          REGISTRATION NO. _____
(if appropriate)

TELEPHONE 254-715.0243          DOCKET NUMBER _____

Defendant's Exhibit 6

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EXHIBIT 3

Defendant's Exhibit 6

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

03/17/2017 CCHAU1   00000009 62601218
01 FC:3005                        65.00 OP

PTO-1556
(5/87)

**EXHIBIT 3**

**Defendant's Exhibit 6**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/710,055 | 02/08/2018 | Mario U. Scorza | |

**CONFIRMATION NO. 4515**

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448

**FORMALITIES LETTER**

*OC000000103264977*

Date Mailed: 10/23/2018

## NOTICE TO FILE MISSING PARTS OF PROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(c)

#### *Filing Date Granted*

An application number and filing date have been accorded to this provisional application. The items indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is insufficient.
- Surcharge as set forth in 37 CFR 1.16(g) must be submitted.
  The surcharge is due for late submission of filing fee or cover sheet.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. Small entity discount is in effect. If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)
- $ **140** basic filing fee.
- $ **30** surcharge.
- $( **65**) previous unapplied payment amount.
- $ **105** TOTAL FEE BALANCE DUE.

**Items Required To Avoid Processing Delays:**

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

**This application, which was filed with an indication of micro entity status, fails to meet the requirements for establishing micro entity status because:**

- The certification of micro entity status is not signed by an authorized party under 37 CFR 1.33(b). (Authorized parties include a registered attorney or agent, the sole inventor identified as the applicant, or all the joint inventors identified as the applicant except that one joint inventor applicant may sign if appointed to prosecute

EXHIBIT 3

Defendant's Exhibit 6

the application by all the other joint inventors.) Note that the name of the authorized party entered in the signature block of the micro entity certification must match any name given for the authorized party in the application file.

If micro entity status is established in reply to this notice by filing an acceptable Certification of Micro Entity Status, the fees itemized in the SUMMARY OF FEES DUE section of this Notice will be reduced to reflect the 75% micro entity discount, and any previous payment amount may be applied to the discounted fees.

If applicant is not entitled to micro entity status under 37 CFR 1.29, applicant may still qualify for a 50% reduction of fees if small entity status can be established under 37 CFR 1.27.

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

Replies should be mailed to:

> Mail Stop Missing Parts
> Commissioner for Patents
> P.O. Box 1450
> Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice". https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/wtsige/
_____

Defendant's Exhibit 6

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/710,055 | 02/08/2018 | Mario U. Scorza | |

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448

**CONFIRMATION NO. 4515**
**WITHDRAWAL NOTICE**

*OC000000103264876*

Date Mailed: 10/23/2018

### Letter Regarding a New Notice and/or the Status of the Application

If a new notice or Filing Receipt is enclosed, applicant may disregard the previous notice mailed on 02/21/2018. The time period for reply runs from the mail date of the new notice. Within the time period for reply, applicant is required to file a reply in compliance with the requirements set forth in the new notice to avoid abandonment of the application.

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web. https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or visit our website at http://www.uspto.gov/ebc.

If the reply is not filed electronically via EFS-Web, the reply must be accompanied by a copy of the new notice.

If the Office previously granted a petition to withdraw the holding of abandonment or a petition to revive under 37 CFR 1.137, the status of the application has been returned to pending status.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/wtsige/

EXHIBIT 3

**Defendant's Exhibit 6**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 62/710,055 | 02/08/2018 | | 65 | | | |

**CONFIRMATION NO. 4515**

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448

**FILING RECEIPT**



OC000000703264976

Date Mailed: 10/23/2018

Receipt is acknowledged of this provisional patent application. It will not be examined for patentability and will become abandoned not later than twelve months after its filing date. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

    Mario U. Scorza, Waco, TX;

**Applicant(s)**

    Mario U. Scorza, Waco, TX;

**Power of Attorney:** None

**Permission to Access Application via Priority Document Exchange:** No

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 02/21/2018

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 62/710,055**

**Projected Publication Date:** None, application is not eligible for pre-grant publication

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

page 1 of 3

EXHIBIT 3

Defendant's Exhibit 6

**Title**

> This is a small portable hand-held scale that one can stand on to measure their weigh, can be used to take on cruise or anywhere from home

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

### Title 35, United States Code, Section 184

### Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

EXHIBIT 3

Defendant's Exhibit 6

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

Defendant's Exhibit 6



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 62/710,055 | 02/08/2018 | Mario U. Scorza | |

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448

**CONFIRMATION NO. 4515**
**FORMALITIES LETTER**

*OC000000097544479*

Date Mailed: 02/21/2018

## NOTICE TO FILE MISSING PARTS OF PROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(c)

#### *Filing Date Granted*

An application number and filing date have been accorded to this provisional application. The items indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is insufficient.
- Surcharge as set forth in 37 CFR 1.16(g) must be submitted.
  The surcharge is due for late submission of filing fee or cover sheet.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. Small entity discount is in effect. If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)
- $ **140** basic filing fee.
- $ **30** surcharge.
- $( **65**) previous unapplied payment amount.
- $ **105** TOTAL FEE BALANCE DUE.

**Items Required To Avoid Processing Delays:**

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

**This application, which was filed with an indication of micro entity status, fails to meet the requirements for establishing micro entity status because:**

- The certification of micro entity status is unsigned. A certification of micro entity status must be signed by an authorized party under 37 CFR 1.33(b). (Authorized parties include a registered attorney or agent, the sole

EXHIBIT 3

Defendant's Exhibit 6

inventor identified as the applicant, or all the joint inventors identified as the applicant except that one joint inventor applicant may sign if appointed to prosecute the application by all the other joint inventors.)

If micro entity status is established in reply to this notice by filing an acceptable Certification of Micro Entity Status, the fees itemized in the SUMMARY OF FEES DUE section of this Notice will be reduced to reflect the 75% micro entity discount, and any previous payment amount may be applied to the discounted fees.

If applicant is not entitled to micro entity status under 37 CFR 1.29, applicant may still qualify for a 50% reduction of fees if small entity status can be established under 37 CFR 1.27.

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice". https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/ttran/
_____

**EXHIBIT 3**

**Defendant's Exhibit 6**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 62/710,055 | 02/08/2018 | | 65 | | | |

**CONFIRMATION NO. 4515**

**FILING RECEIPT**

Mario Scorza
341 Old Mill Creek Dr.
Waco, TX 76712-6448


OC000000097544478

Date Mailed: 02/21/2018

Receipt is acknowledged of this provisional patent application. It will not be examined for patentability and will become abandoned not later than twelve months after its filing date. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Mario U. Scorza, Waco, TX;

**Applicant(s)**

Mario U. Scorza, Waco, TX;

**Power of Attorney:** None

**Permission to Access Application via Priority Document Exchange:** No

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 02/21/2018

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 62/710,055**

**Projected Publication Date:** None, application is not eligible for pre-grant publication

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

page 1 of 3

EXHIBIT 3

Defendant's Exhibit 6

**Title**

      This is a small portable hand-held scale that one can stand on to measure their weigh, can be used to take on cruise or anywhere from home

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

### Title 35, United States Code, Section 184

### Title 37, Code of Federal Regulations, 5.11 & 5.15

**<u>GRANTED</u>**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

EXHIBIT 3

Defendant's Exhibit 6

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

EXHIBIT 3
Defendant's Exhibit 6

U.S. PTO
62/710055
02/08/2018

02205   U.S. PTO
020818

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 1 of 2
This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

Express Mail Label No. _____

### INVENTOR(S)

| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| MARIO U. SCORZA | SCORZA | 341 OLD MILL CREEK DR. WOODWAY, TX (WACO) 76712 |
| | | |
| | | |
| | | |

Additional inventors are being named on the _____ separately numbered sheets attached hereto.

### TITLE OF THE INVENTION (500 characters max):

THIS IS A SMALL PORTABLE HAND-HELD SCALE THAT ONE CAN STAND ON TO MEASURE THEIR WEIGHT. CAN BE USED TO TAKE ON CRUISE OR ANYWHERE FROM HOME.

Direct all correspondence to:        **CORRESPONDENCE ADDRESS**

[ ] The address corresponding to Customer Number: ____    SAME AS ABOVE

**OR**

[ ] Firm or
Individual Name

Address    Mr Mario Scorza
341 Old Mill Creek Dr
Waco, TX 76712-6448    254-715-0243 cell

City    State    Zip

Country    Telephone    Email

### ENCLOSED APPLICATION PARTS (check all that apply)

[ ] Application Data Sheet. See 37 CFR 1.76.    [ ] CD(s), Number of CDs _____
[X] Drawing(s) *Number of Sheets* 8    [ ] Other (specify) _____
[X] Specification (e.g., description of the invention) *Number of Pages* 8

**Fees Due:** Filing Fee of $260 ($130 for small entity) ($65 for micro entity). If the specification and drawings exceed 100 sheets of paper, an application size fee is also due, which is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

### METHOD OF PAYMENT OF THE FILING FEE AND APPLICATION SIZE FEE FOR THIS PROVISIONAL APPLICATION FOR PATENT

[X] Applicant asserts small entity status. See 37 CFR 1.27.
[X] Applicant certifies micro entity status. See 37 CFR 1.29.
Applicant must attach form PTO/SB/15A or B or equivalent.

[X] A check or money order made payable to the *Director of the United States Patent and Trademark Office* is enclosed to cover the filing fee and application size fee (if applicable).

[ ] Payment by credit card. Form PTO-2038 is attached.

[ ] The Director is hereby authorized to charge the filing fee and application size fee (if applicable) or credit any overpayment to Deposit Account Number: _____.

$65.00

**TOTAL FEE AMOUNT ($)**

### USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 10 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 2 of 2

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

☒ No.

☐ Yes, the invention was made by an agency of the U.S. Government. The U.S. Government agency name is: _____

_____

☐ Yes, the invention was made under a contract with an agency of the U.S. Government. The name of the U.S. Government agency and Government contract number are: _____

_____

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

SIGNATURE *Marco George*   DATE 2-5-18

TYPED OR PRINTED NAME *MARIO SCORZA*   REGISTRATION NO. _____
(*if appropriate*)

TELEPHONE 254-715-0243   DOCKET NUMBER _____

IN THE EVENT OF MY BECOMING MENTALLY DEFICIENT OR DEATH MY DAUGHTER VALERIE ANN SALDANA WILL BE MY HEIR TO THE TRAVA-WEIGH.

VALERIE ANN SALDANA
LEAGUE CITY, TEXAS
832-407-0839

SIGNED----

Defendant's Exhibit 6



Photo of Actual Prototype Product Sample

# TRAVA-WEIGH ™

## Portable Scale

### New Discovery!

Are you trying to keep track of your weight? It can be difficult to check your weight when traveling because hotels often do not have scales. Trava-Weigh™ is the scale you need wherever you go! It is a portable bathroom scale with a custom carrying bag. Great for home or travel! Easily transport this scale anywhere! This scale is portable, compact and lightweight. It can fit into luggage or carried separately. The scale has an easy to read LCD display and shows weight in pounds or kilograms. Trava-Weigh™- the best way to keep track of your weight wherever you go!

### How Is It Made?

Through many hours of design strategy implementation, we have accomplished our goal:  a cost-effective and easy to manufacture product.  It has a cut-and-sewn cordura cover, a cut-and-sewn hook and loop closure, a stamped styrene stiffener, and a cut-and-sewn nylon webbing handle.

A prototype product sample has been built, and Pro-E technical drawings are available.



EXHIBIT 3

Defendant's Exhibit 6

FOR QUOTATION ONLY
Pro/ENGINEER

PAGE #:

| iNDEX | PART NAME | QTY |
|-------|-----------|-----|
| 1 | STIFFENER-1 | 2 |
| 2 | STIFFENER-4 | 2 |
| 3 | STIFFENER-3 | 2 |
| 4 | STIFFENER-2 | 2 |
| 5 | HOOK | 4 |
| 6 | LOOP | 4 |
| 7 | HANDLE | 1 |
| 8 | COVER | 2 |

| TITLE: TRAVA-WEIGH | MFG. PROCESS: | WALL THICKNESS (in.): | COLOR: | DRAWN BY: SS |
|---|---|---|---|---|
| SHEET SIZE: A | REVISION: 21-Jul-17 | MATERIAL: | APPROX. WEIGHT (g): | QUANTITY: | SCALE: 0.100 |

Defendant's Exhibit 6

EXHIBIT 3



Defendant's Exhibit 6

EXHIBIT 3

FOR QUOTATION ONLY
Pro/ENGINEER

1/8
PAGE #:

11.38

5.25

| STIFFENER-1 | | STAMPED | | 0.04 | | WHITE | | SS | |
|---|---|---|---|---|---|---|---|---|---|
| TITLE: | | MFG. PROCESS: | | WALL THICKNESS (in.): | | COLOR: | | DRAWN BY: | |
| A | 21-Jul-17 | STYRENE | | | | 2 | | 0.200 | |
| SHEET SIZE: | REVISION: | MATERIAL: | | APPROX. WEIGHT (g): | | QUANTITY: | | SCALE: | |

FOR QUOTATION ONLY
Pro/ENGINEER

2/8
PAGE #:

11.38

1.25

Defendant's Exhibit 6

EXHIBIT 3

| | | | | | |
|---|---|---|---|---|---|
| TITLE: STIFFENER-4 | MFG. PROCESS: STAMPED | WALL THICKNESS (in.): 0.04 | COLOR: WHITE | DRAWN BY: SS | |
| SHEET SIZE: A | REVISION: 21-Jul-17 | MATERIAL: STYRENE | APPROX. WEIGHT (g): | QUANTITY: 2 | SCALE: 0.300 |

FOR QUOTATION ONLY
Pro/ENGINEER



Defendant's Exhibit 6

EXHIBIT 3

| TITLE: STIFFENER-3 | MFG. PROCESS: STAMPED | WALL THICKNESS (in.): 0.04 | COLOR: WHITE | DRAWN BY: SS |
|---|---|---|---|---|
| SHEET SIZE: A | REVISION: 21-Jul-17 | MATERIAL: STYRENE | APPROX. WEIGHT (g): QUANTITY: 2 | SCALE: 0.300 |



Defendant's Exhibit 6

EXHIBIT 3

| TITLE: STIFFENER-2 | MFG. PROCESS: STAMPED | WALL THICKNESS (in.): 0.04 | COLOR: WHITE | DRAWN BY: SS |
|---|---|---|---|---|
| SHEET SIZE: A | REVISION: 21-Jul-17 | MATERIAL: STYRENE | QUANTITY: 2 | SCALE: 0.300 |

Defendant's Exhibit 6

EXHIBIT 3

FOR QUOTATION ONLY
Pro/ENGINEER

5/8
PAGE #:



| TITLE: | | MFG. PROCESS: | | WALL THICKNESS (in.) | COLOR: BLACK | DRAWN BY: SS |
|---|---|---|---|---|---|---|
| HOOK | | | | | | |
| SHEET SIZE: A | REVISION: 21-Jul-17 | MATERIAL: | | APPROX. WEIGHT (g): | QUANTITY: 4 | SCALE: 2.000 |



Defendant's Exhibit 6

EXHIBIT 3

FOR QUOTATION ONLY
Pro/ENGINEER

6/8
PAGE #:

.75

.75

| TITLE: LOOP | MFG. PROCESS: | WALL THICKNESS (in ): | COLOR: BLACK | DRAWN BY: SS |
|---|---|---|---|---|
| SHEET SIZE: A | REVISION: 21-Jul-17 | MATERIAL: | APPROX. WEIGHT (g): | QUANTITY: 4 | SCALE: 2.000 |



Defendant's Exhibit 6

EXHIBIT 3



Defendant's Exhibit 6

EXHIBIT 3

EXHIBIT 3

Defendant's Exhibit 3

Doc Code: MES.GIB
Document Description: Certification of Micro Entity Status (Gross Income Basis)

PTO/SB/15A (03-13)

## CERTIFICATION OF MICRO ENTITY STATUS
### (GROSS INCOME BASIS)

| Application Number or Control Number (if applicable): | Patent Number (if applicable): |
|---|---|
| | |

| First Named Inventor: MARIO SCORZA | Title of Invention: TRAVA – Weigh |
|---|---|

The applicant hereby certifies the following—

(1) **SMALL ENTITY REQUIREMENT** - The applicant qualifies as a small entity as defined in 37 CFR 1.27.

(2) **APPLICATION FILING LIMIT** - Neither the applicant nor the inventor nor a joint inventor has been named as the inventor or a joint inventor on more than four previously filed U.S. patent applications, excluding provisional applications and international applications under the Patent Cooperation Treaty (PCT) for which the basic national fee under 37 CFR 1.492(a) was not paid, and also excluding patent applications for which the applicant has assigned all ownership rights or is obligated to assign all ownership rights as a result of the applicant's previous employment.

(3) **GROSS INCOME LIMIT ON APPLICANTS AND INVENTORS** - Neither the applicant nor the inventor nor a joint inventor, in the calendar year preceding the calendar year in which the applicable fee is being paid, had a gross income, as defined in section 61(a) of the Internal Revenue Code of 1986 (26 U.S.C. 61(a)), exceeding the "Maximum Qualifying Gross Income" reported on the USPTO website at http://www.uspto.gov/patents/law/micro_entity.jsp which is equal to three times the median household income for that preceding calendar year, as most recently reported by the Bureau of the Census.

(4) **GROSS INCOME LIMIT ON PARTIES WITH AN "OWNERSHIP INTEREST"** - Neither the applicant nor the inventor nor a joint inventor has assigned, granted, or conveyed, nor is under an obligation by contract or law to assign, grant, or convey, a license or other ownership interest in the application concerned to an entity that, in the calendar year preceding the calendar year in which the applicable fee is being paid, had a gross income, as defined in section 61(a) of the Internal Revenue Code of 1986, exceeding the "Maximum Qualifying Gross Income" reported on the USPTO website at http://www.uspto.gov/patents/law/micro_entity.jsp which is equal to three times the median household income for that preceding calendar year, as most recently reported by the Bureau of the Census.

| SIGNATURE by a party set forth in 37 CFR 1.33(b) | | | |
|---|---|---|---|
| Signature | *Mario Scorza* | | |
| Name | TRAVA – Weigh | | |
| Date 2-5-18 | | Telephone 254-715-0243 | Registration No. |

☑ There is more than one inventor and I am one of the inventors who are jointly identified as the applicant. Additional certification form(s) signed by the other joint inventor(s) are included with this form.

EXHIBIT 3

Defendant's Exhibit 6

PATENT APPLICATION SERIAL NO. _____

## U.S. DEPARTMENT OF COMMERCE
## PATENT AND TRADEMARK OFFICE
### <u>FEE RECORD SHEET</u>

02/09/2018 ZJUHAR1  00000012 62710055

01 FC:3005                          65.00 OP

PTO-1556
(5/87)

·U.S. Government Printing Office: 2002- 489-267/69033

EXHIBIT 3

Document Code: IMIS

Defendant's Exhibit 6

## Notice of Fee Due

Application Number:  <u>62710055</u>          Date:          <u>2/8/2018</u>

Fees are due for the application or document dated 02/8/2018<u>_____</u>.  The payment was not collectable for the reason indicated below.

**Note: If the fee due is for any of the filing fees, the surcharge for late payment of the filing fees is now due as well.**

☑ Insufficient payment by check or money order.

☑ No authorization to charge a deposit account.

☐ Invalid deposit account number.

☐ User name not listed in deposit account _____ at _____:_____ (time).

☐ Insufficient funds in deposit account _____ at _____:_____ (time).

☐ Insufficient payment by credit card.

☐ Declined credit card _____:_____ (time).

Fee code(s) to be applied:          <u>3005</u>          <u>$70</u>

          <u>3005</u>          <u>$ 65 -</u>

          _____          _____

          _____          _____

          _____          _____

Amount in holding fee code:          _____          $_____

          <u>1622/2622</u>          $_____

          <u>1206/2206</u>          $_____

          <u>1999</u>          $_____

Total remaining due from applicant:          <u>$5</u>

RAM Operator____ZJ_____

Rev. 04/10/2013